UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20685-cr-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI
FRIERI, et al.,

    Defendants.
_____/

**DEFENDANT GUSTAVO ADOLFO HERNANDEZ FRIERI FRIERI'S
MOTION FOR RELEASE ON BAIL PENDING TRIAL**

Defendant Gustavo Adolfo Hernandez Frieri ("Mr. Hernandez Frieri"), respectfully requests this Court, pursuant to 18 U.S.C. § 3142, to release the Defendant on appropriate and reasonable conditions pending trial.

**I.    Introduction**

Mr. Hernandez Frieri is a forty-five (45) year old businessman who was born in Cartagena, Colombia.  He is a naturalized United States Citizen.  His parents are passed away. Mr. Hernandez Frieri attended law school at the Universidad del Rosario in Bogota, Colombia and obtained a Master's degree in Political Economy at L'Institut d'Etudes Politiques de Paris in 1999.  Mr. Hernandez Frieri served as a professor and research associate at Universidad de los Andes in Bogota, where he was chair of Political Economy.  In 2001, Mr. Hernandez Frieri joined Latin Advisors, a project focusing on Latin America investments sponsored by a New York investment bank.  He relocated to Miami, Florida, at that time.

Mr. Hernandez Frieri has two sisters, Maria Lucia Hernandez Frieri (a Boston University educated economist) and Maria Helena Hernandez Frieri (who has a degree in business administration). Both live in Bogota, Colombia. He has a brother, Cesar Gabriel Hernandez Frieri who has an engineering degree from Boston University, and who is married with four children and two grandchildren, all living in Miami, Florida.

Mr. Hernandez Frieri and his wife Olympia have lived together since 2002 and they got married in 2007. They have three (3) young children, Gabriel (age 7); Francesca (age 5); and Alexandre (age 3), all of whom attend school in Miami, Florida. Olympia received her undergraduate degree in finance from the University of Miami and her Master's degree in Economic Development from Columbia University. She works in finance, separate from and unrelated to Mr. Hernandez Frieri's businesses, and is a partner in a social finance company in the United States. Mr. Hernandez Frieri and his wife recently re-enrolled their children in school at St. Stephen's Episcopal Day School and paid their tuition for the upcoming academic year 2019 – 2020. The amount was $75,000. Mr. Hernandez Frieri and his wife have been connected to the school since 2014, when their oldest child started pre-kindergarten. They made a $100,000 pledge to their children's school in Miami, which they have been paying over the years.

Mr. Hernandez Frieri has resided in the United States for more than eighteen (18) years. He lives with his family at 597 Hibiscus Lane, Miami, Florida, a property owned by a trust for the benefit of his wife and children. A separate trust of his wife and children also maintains an apartment in New York City, which Mr. Hernandez Frieri and his wife use for work trips.

Mr. Hernandez Frieri is, alongside his brother Cesar Hernandez Frieri and his brother-in-law Juan Carlos Gomez, a co-founder of Global Securities Holdings, LLC ("GSH"), a financial service group of companies headquartered in Miami, Florida, with presence across the primary

2

financial markets in Latin America. GSH was established in 2001, and includes regulated financial service entities throughout their respective jurisdictions, such as Global Strategic Investments, LLC ("GSI"), a Securities and Exchange Commission (SEC) registered and Financial Industry Regulatory Authority (FINRA) member broker dealer, established by Mr. Hernandez Frieri and his brother Cesar in 2001.

After nearly twenty (20) years of work by Mr. Hernandez Frieri and his family and partners, the GSH team grew to over two hundred (200) professionals across ten (10) offices, servicing over 150,000 clients in the Americas, and managing for these clients approximately $2 billion dollars in assets. The GSH entities advise fifteen (15) different investment funds, with ten thousand (10,000) or so clients (as of 12/31/2017).

Mr. Hernandez Frieri served as Director of the Board of Directors of GSH affiliate GS Comisionista de Bolsa S.A. ("GSC"), an SFC registered and AMB member investment bank and broker dealer in Colombia, which he co-founded in 2006. Mr. Hernandez Frieri also chaired the GSC investment committee responsible for the management of the GSC investment funds, which included funds rated AAA (FITCH). In parallel, Mr. Hernandez Frieri served as Executive Director and Chairman of the Board of Directors of another GSH company, Panamerica Capital Group, INC. ("PCG"), an SMV registered broker dealer in Panama, incorporated in 1999.

Mr. Hernandez Frieri served as principal for the GSH affiliate Alpha Financial Products, LTD. ("Alpha"), a New York city based financial product arranger that he co-founded, responsible for the issuance of approximately fifty (50) listed Exchange Traded Products. Mr. Hernandez Frieri also served since 2002 as principal for the GSH affiliated United States investment advisor, Global Securities Advisors GP, LLC ("GSA"), an investment advisor specializing in emerging markets fixed income asset management. GSA has managed multiple

3

117945992.1

investment funds such as: GS Market Neutral Fund (starting in 2002); GS Emerging Market Relative Value Fund (starting 2006); and GS Trade Finance Fund ("GSTF") (starting in 2006). GSTF has over twelve (12) years of track record.

Mr. Hernandez Frieri, his brother Cesar and his brother-in-law, Juan Carlos expanded their financial services businesses and have regulated financial services companies operating in Colombia, Panama and Uruguay. Up to the date of Mr. Hernandez Frieri's arrest, GSA, and its sister company GSI, the SEC registered and FINRA member broker dealer, had offices in Miami at 701 Brickell Avenue, Miami, Florida.

In addition to his primary business with GSH, Mr. Hernandez Frieri has had multiple personal investments in United States companies, including the New York based Italian Wine Merchants and Domaine Select Wine and Spirits, for which he served as a director. Mr. Hernandez Frieri is also a co-founder and partner in Vino Management, which operates fine wine and spirits investment funds called the Bottled Asset Fund ("BAF"). Mr. Hernandez Frieri also served as a director for BAF. After his arrest, Mr. Hernandez Frieri has resigned his directorships across all entities and investment funds to avoid conflicts and to dedicate himself exclusively to the preparation of his defense.

Mr. Hernandez Frieri and his wife Olympia are actively involved in philanthropic activities in both Miami and New York and in Latin America. Mr. Hernandez Frieri has served since 2013 as Vice-Chairman of the Board of Directors of Techo US, a youth led non-for-profit dedicated to eradicating poverty in Latin America. At Techo, Mr. Hernandez Frieri and others have built over 120,000 transitional homes for families in need across 19 countries in the Americas and the Caribbean. Amongst the Techo initiatives which Mr. Hernandez Frieri and his wife started and have acted as a driving force is Tinto for Techo, fund-raising galas hosted every

year in both New York City and Miami, which have raised many millions of dollars for this charitable organization across the years. Mr. Hernandez Frieri and his wife have also organized and attended annual Techo family trips to build houses for families in need across multiple countries in the Americas. In their most recent Techo house building trip, in March of 2018, Mr. Hernandez Frieri and his wife brought over one hundred (100) persons to come build houses for families in need in a community in Colombia.

Mr. Hernandez Frieri is a hard-working and well-respected businessman. Letters have poured in from Mr. Hernandez Frieri's friends, family and business associates attesting to his character, his devotion to his family and community and to his honesty and reliability. These letters are attached as **Exhibit A**.

Mr. Hernandez Frieri has no criminal record and no prior involvement with the criminal justice system whatsoever. Mr. Hernandez Frieri is neither a flight risk nor a danger, and he deserves a fair and reasonable bond.

## II.   The Bail Reform Act

The Bail Reform Act, 18 U.S.C. §3142, et. seq., governs the detention of criminal defendants pending trial. As interpreted by the Supreme Court, the statute requires a judicial officer to release "a person charged, pending trial, [unless] the Government has made the necessary showing of dangerousness or risk of flight." *United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990).

In order to obtain detention of a defendant pending trial, the Government must prove by a preponderance of the evidence that a defendant represents a "risk of flight." *See* e.g., *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) ("[A] finding of either danger to the community or risk of flight will be

5

sufficient to detain the defendant pending trial."). If the Government carries this initial burden, next the Government must establish by clear and convincing evidence that no condition or combination of conditions could reasonably assure the defendant's appearance. See *id*.

In assessing whether the Government has met its burden of justifying pretrial detention, the Court must consider a set of four factors established by Congress. *See* 18 U.S.C. 3142(g). These include "the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community." *Id*. The Government's burden is substantial. In most cases, the defendant is presumed to be entitled to pretrial release. In most cases, the defendant is presumed to be entitled to pretrial release. *See* 18 U.S.C. 3142(e)(2), (3) (limited categories of cases have a presumption of detention); *United States v. Salerno*, 481 U.S. 739, 754-55 (1987) ("when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more.") (*citing Stack v. Boyle*, 342 U.S. 1, 5 (1951) ("Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.")). In this case, based on the charges, Mr. Hernandez Frieri is presumed to be entitled to release and this presumption operates as an evidentiary fact which the Government has the burden of overcoming. *See Medina*, 775 F.2d at 1402. The Government cannot meet this presumption.

### III.   Argument

#### A.   Mr. Hernandez Frieri is entitled to pre-trial release.

In cases such as this where a serious risk of flight is what is really at issue under §3142(f)(2), it is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of

flight. *United States v. Friedman*, 837 F.2d 48, 49 (2nd Cir. 1988). A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention. *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (possession of one false form of identification not enough by itself to justify pretrial detention in the absence of evidence that defendant actually intended to flee from prosecution).

### *i. Government's overemphasis on its allegations.*

U.S. prosecutors are fond of saying they have a strong case and that this translates into a risk of flight. These types of claims ignore the well-established principle that "until a defendant has been convicted, the nature of the offense, as well as the evidence guilt, is to be considered only in terms of the likelihood of his making himself unavailable for trial." *United States v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973). Moreover, "[i]t is important to emphasize …that Defendant is presumed to be innocent and the ultimate issue of guilt will be for a jury to decide. This presumption of innocence is inviolate unless and until a jury finds Defendant guilty." *United States v. AgriProcessors, Inc.*, 2009 WL 1853218, at *8 (N.D. Iowa June 25, 2009) (vacating pretrial detention order even though defendant was subject to 2057 years in prison) (citation omitted); 18 U.S.C. §3142(j) (defendants are entitled to the presumption of innocence). Courts agree that "the weight of the evidence is the least important" of the pretrial release factors. *United States v. Winsor*, 785 F.2d 755, 757 (9 Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997); *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009).

More recently, stories have circulated regarding the case of Martin Lustgarten Acherman, who was arrested in April 2015 and detained in part on the basis of a Government proffer asserting a strong money laundering case with wiretaps and emails and other evidence. Mr. Lustgarten was held without bail for nine months, and then the Government dismissed the

charges. No cooperation. Just a dismissal. Government claims about the strength of the case can be exaggerated.

Our position here is that the Government's Indictment is overreaching and the Government's case derives from felons looking to curry favor with the U.S. prosecutors, one of whom contrived to record Mr. Hernandez Frieri and to trick him into conversations that are not what they appear. We submit this so-called evidence is unreliable and should not factor into this Court's bond determination.

### ii. Mr. Hernandez Frieri's financial resources do not make him a flight risk.

The U.S. prosecutors may argue that Mr. Hernandez Frieri has tremendous financial resources. This is disingenuous as best. The U.S. prosecutors have frozen some of Mr. Hernandez Frieri's assets and banks are restricting his access to accounts. This Court has in place a protective order that involves some of Mr. Hernandez Frieri's assets as well. The mere fact that Mr. Hernandez Frieri has been successful financially does not automatically make him flight risk.

In economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated sums of ill-gotten gains. Merely having access to significant funds is not enough to prove a likelihood of flight. Even in cases involving charges of frauds of multimillion dollar proportion and more, defendants are released.[1]

---

[1] *United States v. Richard Scrushy*, charged in 2005 with fraud in excess of $1 billion and other offenses, granted pretrial release with conditions. *United States v. Jeffrey Skilling*, *United States v. Kenneth Lay*, charged in 2004 with fraud involving billions of dollars, granted pretrial release with conditions. *United States v. Bernard Ebbers*, charged in 2003 with fraud involving $11 billion, pretrial release granted with conditions. *United States v. Bernard Madoff*, charged in 2009 with fraud involving $50 billion, pretrial release granted with conditions. *United States v. John Rigas*, charged in 2002 with fraud involving $2.3 billion, pretrial release granted with conditions.

Here, while others are alleged to have received hundreds of millions of dollars or more, the firm Mr. Hernandez Frieri worked for is connected only with having received two subscriptions totaling $12 million into a GSH investment fund. Nothing was received by Mr. Hernandez Frieri personally. These facts militate in favor of bond.

In *United States v. Kaplowitz*, 2014 WL 2155231 (S.D. Fla. May 22, 2014, Altonaga, J.), the defendant was charged with one count conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. §1349, two counts of wire fraud in violation of 18 U.S.C. §1343, and two counts of health care fraud in violation of 18 U.S.C. §1347. Kaplowitz was also charged with making false statements relating to healthcare matters in violation of 18 U.S.C. §1035. Kaplowitz's statutory maximum sentence was 85 years' imprisonment, and his advisory guidelines range was life. Kaplowitz had extensive foreign travel and foreign travel he did not disclose to Pretrial Services, including travel outside the United States at least thirteen times over the last ten years. He had no children and resided alone for the past 15 years. However, he had a strong connection to his extended family located in the United States, so he was given a bond.

Mr. Hernandez Frieri presents an even better case for release than did the defendant in *Kaplowitz*. Mr. Hernandez Frieri has his three young children (ages 3, 5 and 7) and his wife in the United States. His wife, their three young children and Mr. Hernandez Frieri are all United States citizens. Mr. Hernandez Frieri has lived in the United States for nearly twenty (20) years. His family and community ties are in the United States.

*United States v. Soloman Melgen*, 15-80049-KAM (S.D. Fla. July 2, 2015) is also instructive. Melgen is a medical doctor who was charged in the District with a $100 million Medicare fraud. Melgen was simultaneously charged in the District of New Jersey with bribing a United States Senator. In support of a motion that this Court hold Melgen in pretrial detention,

the Government presented the following facts (see 15-80049-CR-Marra at DE 28 and 38): Melgen was in his 60s; his advisory Guideline range if convicted was life. Melgen, his wife had 14 siblings living in the Dominican Republic. Melgen may have held some sort of diplomatic status in the Dominican Republic who could influence or preclude extradition. Melgen owned a private jet which he used to regularly travel to the Dominican Republic (34 times in 2013 and 2014). He also lived in a waterfront home in Palm Beach County with a private yacht that was capable of sailing to the Dominican Republic. He had millions of dollars in domestic assets in the Dominican Republic. Virtually all of his millions of dollars in domestic assets were held in irrevocable trusts, such that these funds were beyond the reach of the Government, but accessible to Melgen's family (and indirectly by Melgen) if he fled. Despite all of this evidence indicating that Melgen had the motive an ability to successfully flee the United States and live comfortably for the rest of his life in Dominican Republic, the Honorable Judge Marra granted Melgen a bond.

### iii. Other Existing Precedents Support Bond in this Case.

By undersigned's tally, there have been twenty-nine (29) individual cases relating to Venezuela crimes and PDVSA during the past six (6) years, in which twenty-eight (28) defendants were granted bond. *See e.g., United States v. Rafael E. Pinto-Franceschi, et al.* S.D. Texas (2019); *United States v. Luis Diaz, Jr.* and *United States v. Luis Javier Diaz,* S.D.N.Y. (2016). Of course, each case depends on its facts and circumstances, but allegations of foreign ties and large amounts of money involved have not led to bail denials based on risk of flight.

During this same time period, undersigned has identified another eleven (11) cases relating to money laundering and bribery crimes involving Venezuela and in which bond was granted. *United States v. Nejad,* S.D.N.Y. (2018) is instructive. In that case an extremely

10

117945992.1

wealthy Iranian national pleaded not guilty and was granted bail, notwithstanding the Government's flight concerns, the allegations of a more than $115 million fraud scheme, and the defendant's possession of multiple non U.S. passports. *See also, United States v. Gordon Coburn and Steven Schwartz,* D.N.J. (2019); *United States v. Ho,* S.D.N.Y. (2017) (Hong Kong nationals); *United States v. Donville Inniss, et al.,* E.D.N.Y. (2018) (Barbados nationals); *United States v. Lambert* D. Md (2018) (Russian ties); *United States v. Joseph Baptiste and Roger Richard Boncy,* D. Mass (2017) (Haitian citizens); and *United States v. Ashe,* S.D.N.Y. (2015) (all foreign nationals). In three (3) cases in the Southern District of Florida relating to Petro Ecuador and allegations of bribery and financial crimes, bonds in amounts as low as $50,000 PSB were ordered. *See, United States v. Chatburn Ripalda and Jose Larrea,* S.D. Fla. (2018) and *United States v. Arturo Escobar Dominguez,* S.D. Fla. (2018).

**B.     The evidence indicates that Mr. Hernandez Frieri is not a flight risk.**

The available evidence overwhelmingly demonstrates that Mr. Hernandez Frieri is an honest businessman whose reliability and integrity is vouched for by all the people who know him well.

Mr. Hernandez Frieri was arrested on July 25, 2018 while on a family vacation in Messina, Italy with his wife and three children. On the same day of his initial appearance to the Italian Court, on July 30, 2018, the Italian Court released him to house arrest in the town of Messina. Mr. Hernandez Frieri was allowed to retain both his passports, and was not subject to any form of electronic monitoring.

Messina is a port city. If Mr. Hernandez Frieri had been so inclined, fleeing Messina Italy would have been a simple thing to arrange. Instead and for over 8 months in house arrest,

knowing extradition was inevitable, Mr. Hernandez Frieri dutifully honored every condition and restraint imposed upon him by the Italian Court.

The Italian Court did not view Mr. Hernandez Frieri as a flight risk and rejected an appeal to his release requested to the Italian Court by U.S. authorities on August 3, 2018.

Further, Mr. Hernandez Frieri, was authorized by the Italian Court to leave his house on a daily basis, at the time of his discretion, without any police escort.  Mr. Hernandez Frieri was even granted permission to travel from Sicily to Rome without supervision to attend a court hearing on the case.

In January 2019, after months of waiting for evidence that substantiated the request for his extradition to the United States, as required per the US-Italy Extradition Treaty and per Italian law, Mr. Hernandez Frieri decided to wait no longer.  He chose to abandon the multiple alternatives of appeals available to him under Italian law and return to the United States.  This was a voluntary act and occurred because Mr. Hernandez Frieri wanted to return to Miami and go to trial and contest the allegations against him, and to come back to his family and friends in Miami.

The only reason this did not happen sooner was on the advice of U.S. and Italian counsel, who unsuccessfully tried to convince the U.S. prosecutors to agree to a fair and reasonable bond, and to tender evidence that supported the request for extradition.  Once it was clear that the U.S. prosecutors would not relent on the choice to pursue his detention and after the court hearing in Rome in mid-January, Mr. Hernandez Frieri directed his attorneys to not submit any appeals and to move forward with the extradition process in Italy, so advising the Italian and United States authorities.  Appeals could have easily extended Mr. Hernandez Frieri's stay in Italy for an indefinite time period.  Simply stated, knowing that the U.S. prosecutors would ask that he be

held in custody and denied a bond, Mr. Hernandez Frieri nevertheless chose to return to the United States. *See* Italian case documents attached hereto as Exhibit B. He had ample opportunity to flee when in Italy. He did not.

The evidence is abundantly clear that Mr. Hernandez Frieri poses no risk of flight.

**C.     There is no evidence that Mr. Hernandez Frieri is a danger to the community.**

There is absolutely no evidence that Mr. Hernandez Frieri is a danger to himself or his community. He is no longer running any businesses. He has resigned as a director of all entities on whose boards he was serving. His entire focus will be assisting in his defense against these charges. He is a respected and well-regarded businessman. He is no danger to anyone.

**D.     Detention will substantially interfere with Mr. Hernandez Frieri's ability to assist in the preparation of his defense.**

The criminal proceedings against Mr. Hernandez Frieri involve complex facts. Preparation of Mr. Hernandez Frieri's defense will involve literally hundreds of hours of meetings with Mr. Hernandez Frieri, financial experts, and other experts. The majority of these meetings will require examination of documents and of tape recordings and videos and we anticipate using computers and databases to navigate the mass of documents and recordings. The materials will be voluminous. If Mr. Hernandez Frieri is detained pending trial, Mr. Hernandez Frieri, his counsel and the experts will be severely handicapped in preparing a meaningful defense.

In determining whether a prospective pretrial detention violates a defendant's Due Process rights, the Court should consider, among other things, the complexity of the case. *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989). Given the complexity of this case, the Court

should find that Mr. Hernandez Frieri' detention would violate Due Process as guaranteed by the Fifth Amendment and would furthermore interfere with Mr. Hernandez Frieri's Sixth Amendment assurance of effective assistance of counsel.

**IV.     Proposed Conditions of Release.**

Mr. Hernandez Frieri proposes the following conditions for bond:

1. Execute unsecured personal surety bonds, co-signed by his wife Olympia De Castro in the amount of $1,000,000.

2. Post corporate surety bonds in the amount of $100,000.

3. Be restricted to travel within Miami-Dade and Broward counties.

4. Be required to reside in Miami-Dade County.

5. Be placed on a curfew from 11:00 p.m. through 6:00 a.m.

6. Surrender his passports and the passports of his three minor children.

7. Comply with all other standard conditions of bond.

## CONCLUSION

WHEREFORE, Defendant, Gustavo Adolfo Hernandez Frieri, moves to order pretrial release pursuant to conditions that reasonably assure Defendant's appearance.

Dated: May 3, 2019

*s/ Michael S. Pasano*
Michael S. Pasano (475947)
Email: mpasano@carltonfields.com
Michael D. Padula (314810)
Email: mpadula@carltonfields.com
CARLTON FIELDS
100 SE Second Street, Suite 4200
Miami, Florida 33131
Tel:    (305) 530-0050
*Counsel for Defendant, Gustavo Adolfo Hernandez Frieri*

117945992.1