UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS

UNITED STATES OF AMERICA

vs.

GUSTAVO HERNANDEZ FRIERI,

Defendant.

## FACTUAL PROFFER

The United States Department of Justice, Criminal Division, Fraud Section, and the United States Attorney's Office for the Southern District of Florida, (collectively, "the government"), and the Defendant, Gustavo Hernandez FRIERI ("the defendant") stipulate and agree that the information stated herein is true and accurate and a sufficient basis for the defendant's plea of guilty to Count 1 of the indictment in this case, which charges him with conspiracy to launder money in violation of Title 18, United States Code, Section 1956(h).

### I. PDVSA Bribery Schemes

1. From August 2004 through March 2016, Abraham Edgardo Ortega ("Ortega") worked in various finance positions within Petroleos de Venezuela S.A. ("PDVSA"), the state-owned and state-controlled oil company of Venezuela. PDVSA was an "instrumentality" of the Venezuelan government, as that term is used in the Foreign Corrupt Practices Act ("FCPA"). From January 2014 through March 2016, Ortega was the Executive Director of Financial Planning at PDVSA. At all times during this conspiracy, Ortega was a "foreign official" as that term is defined in the FCPA and a public official under Venezuelan law.

### A. Ortega Agrees to Accept 5 Million U.S. Dollar Bribe Payment for Corrupt PDVSA Joint-Venture Scheme

2. In or about 2006 to 2007, Venezuela established partnerships called "joint ventures" between PDVSA and foreign companies/foreign banks. In general, forty percent of the joint venture was owned by a private company, referred to as the minority shareholder, and sixty percent of the joint venture was owned by PDVSA. Company A, a European oil company, was a minority shareholder in Joint Venture A. Company B, a Russian financial institution, was a minority shareholder in Joint Venture B.

3. Ortega participated in a bribery scheme (the "Joint-Venture Scheme") in which Ortega received a total of 5 million U.S. Dollars in exchange for acts and decisions in his official capacity to give both Company A and Company B "priority" status in their joint ventures with PDVSA.

### B. Ortega Agrees to Accept 10 Million U.S. Dollar Bribe Payment for Corrupt PDVSA Loan Scheme with Companies C and D

4. In or about 2012, Ortega, Subject 4, Subject 5, and Venezuelan Official 5 (a "foreign official" as that term is defined in the FCPA and a public official under Venezuelan law) executed a corrupt currency exchange scheme involving bribes to PDVSA officials, including Ortega and Venezuelan Official 5, which were paid in exchange for the ability to issue loans to PDVSA (the Companies C-D Loan Scheme).

5. As part of this scheme, Ortega received 10 million U.S. Dollars as a bribe payment from Subject 4 in exchange for certain business advantages and actions by Ortega in his official capacity, which would allow PDVSA to repay the "loan" in U.S. Dollars in accordance with the corrupt contract.

## II. Scheme to Launder the Proceeds of the Corrupt PDVSA Schemes

6.     FRIERI, Ortega, Convit, Gutierrez, and others willfully conspired to launder a total of approximately 12 million U.S. Dollars that were given to Ortega as bribe payments in exchange for Ortega's corrupt acts and decisions in his official capacity as Executive Director of Financial Planning at PDVSA. At all relevant times, FRIERI was aware that there was a high probability that the 12 million U.S. Dollars were criminally derived proceeds.

### A. Scheme to Launder 7 Million U.S. Dollar Bribe Proceeds Related to the Companies C-D Loan Scheme

7.     FRIERI conspired with Ortega to launder 7 million of the 10 million U.S. Dollars that Ortega received as a bribe payment for his participation in the Companies C-D Loan Scheme. At all relevant times, FRIERI was aware that there was a high probability that the 7 million U.S. Dollars were criminally derived proceeds.

8.     Initially, a Confidential Source ("CS") managed Ortega's 7 million U.S. Dollar bribe payment after the funds were deposited into an account at Banca Zarattini & Co. SA ("Banca Zarattini") in Lugano, Switzerland.

9.     During a recorded meeting in Panama on April 2, 2016, Ortega introduced the CS to FRIERI, who explained how he [FRIERI] could invest money using his [FRIERI's] investment advisor firm. Specifically, FRIERI explained that his investment advisory firm, Global Security Advisors ("GSA"), operated from the United States, but primarily did business in Latin America and managed $2 billion. FRIERI was aware that there was a high probability that his investment advisory firm would be used to conceal the source of the money received.

10.    FRIERI explained that "we'll make the transactions in such a way that the purchase will be legitimate" and that the money can be directed anywhere on the back-end using "cards" or "checks" or even "wire transfers," but as to the latter he [FRIERI] will "always be on the lookout

3

to see the transfer and who's receiving it, because...[l]ike the saying goes, the fish dies by its mouth. ...they have their eyes on everyone." FRIERI went on to explain how he can avoid being tracked by the authorities that track financial transactions. Finally, FRIERI insisted that they use WhatsApp to communicate and avoid emails

11. FRIERI directed that the 7 million U.S. Dollars be transferred to U.S. Financial Institution 1 in New Jersey, the Trade Finance Fund custodial bank. On or about May 26, 2016, at the direction of Ortega and FRIERI, the CS transferred 7 million U.S. Dollars to account number xxxx5724 at U.S. Financial Institution 1 in the name of Global Securities Trade Finance – a Cayman Islands entity, which was a separate company that FRIERI owned and through which he caused to be issued shares to be exclusively subscribed to by Ortega in furtherance of the money laundering scheme. The 7 million U.S. dollars was used to purchase shares in the Global Securities Trade Finance Fund, which were then held in account/portfolio number xxxx9020 at Banca Zarattini in the name of Big Green Valley SA (a shell company controlled by Ortega).

12. To justify the transactions that would allow Ortega access to some of the 7 million U.S. Dollars, FRIERI created contracts between Great Walls FS (a British Virgin Islands shell company controlled by Ortega) and a company affiliated with FRIERI. FRIERI also created contracts with individuals well-known to Ortega in order to justify transactions that would allow Ortega to access some of the 7 million U.S. Dollar funds.

### B. Scheme to Launder 5 Million U.S. Dollar Bribe Proceeds Related to the Joint-Venture Scheme

13. To facilitate disbursement of the bribe payment to Ortega for the Joint-Venture Scheme, Conspirators 1 and 3 instructed the CS to assign to Ortega 5 million U.S. Dollars from their proceeds of a separate currency exchange scheme involving Rantor Capital C.A. and Eaton Global.

4

14. On February 21, 2017, FRIERI emailed the CS subscription instructions and a subscription agreement for the Global Securities Trade Finance Fund. This fund was specifically created to receive Ortega's money. On or about February 28, 2017, at the direction of Ortega and FRIERI, the CS transferred approximately 5 million U.S. Dollars from the CS's account/portfolio number xxxx3311-00 at Deltec Bank & Trust Limited in Nassau, Bahamas (which was an account in which the CS held a portion of Ortega's funds) to account numberxxxx6054 at U.S. Financial Institution 1 in New Jersey in the name of Global Securities Trade Finance. On March 14, 2017, the 5 million U.S. Dollars were further transferred to account number xxxx2421 at U.S. Financial Institution 1 in the name of Global Securities Trade Finance. These transactions were conducted in furtherance of an investment in Global Securities Trade Finance's Fund, and as a means of making the 5 million U.S. Dollars available to FRIERI for distribution to Ortega.

15. Later in April 2017, FRIERI, with Ortega's agreement, transferred 400,000 U.S. Dollars of the 5,000,000 U.S. Dollars back to the CS for the CS's role in facilitating the transfer of Ortega's 5,000,000 U.S. Dollars to FRIERI. On April 24, 2017, FRIERI wired 396,000 U.S. Dollars from U.S. Financial Institution 1 to a bank account located in the Southern District of Florida that was held by a shell company (the "Shell Company Account"). To conceal the transaction, FRIERI created a loan contract between the shell company that held the Shell Company Account and Global Securities Trade Finance. The CS then transferred an additional 4,000 U.S. Dollars to a bank account in Miami, Florida, held by a company associated with FRIERI as a 1-percent structuring "fee," which was intended as a compensation for FRIERI's participation in this particular transaction.

### III. Scheme to Launder Additional Proceeds Unrelated to the PDVSDA Scheme

16. In a November 8, 2016 recorded meeting in Miami, the CS met with FRIERI about an additional transaction unrelated to the PDVSA scheme.

17. On January 10, 2017, the CS wired 300,000 U.S. Dollars from an undercover law enforcement account in the Southern District of Florida to a U.S. Wells Fargo account held by Global Securities Management LLC. From the conversations and interactions with the CS, FRIERI was aware that there was a high probability that the 300,000 U.S. Dollars were criminally derived proceeds and the intent of the financial transactions FRIERI conducted was to conceal the true illegal origin of the money.

### III. CONCLUSION

18. During all relevant times, FRIERI was aware that there was a high probability that he [FRIERI] was conducting financial transactions that involved the proceeds of some unlawful activity and were intended to conceal and disguise the source, the nature, and the control of the unlawful activity. If this matter had proceeded to trial, FRIERI agrees that the United States would be able to prove that such proceeds were the proceeds of foreign bribery and that FRIERI knowingly and willfully joined the charged conspiracy.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 11/26/2019

By: *[signature]*
MICHAEL B. NADLER
ASSISTANT UNITED STATES ATTORNEY

|  |  |
|---|---|
|  | ROBERT ZINK<br>CHIEF, FRAUD SECTION<br>U.S. Department of Justice, Criminal Division |
| Date: 11/26/2019 | By: *[signature]*<br>PAUL A. HAYDEN<br>TRIAL ATTORNEY |
| Date: 26 Nov 2019 | *[signature]*<br>MICHAEL S. PASANO<br>ATTORNEY FOR DEFENDANT |
| Date: 11/26/2019 | *[signature]*<br>GUSTAVO HERNADEZ FRIERI<br>DEFENDANT |