**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-CR-20685-WILLIAMS/TORRES**

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

      Defendant.
_____/

IN RE:

OLYMPIA DE CASTRO, and
597 HIBISCUS LANE REVOCABLE TRUST,

      Third-Party Petitioners.
_____/

**UNITED STATES' MOTION TO DISMISS OLYMPIA DE CASTRO'S AND**
**597 HIBISCUS LANE REVOCABLE TRUST'S PETITION [ECF NOS. 261, 262]**
**CLAIMING PRELIMINARILY FORFEITED REAL PROPERTY LOCATED AT**
<u>**597 HIBISCUS LANE, MIAMI, FLORIDA 33137**</u>

Pursuant to 21 U.S.C. § 853(n) and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, hereby respectfully moves to dismiss Olympia De Castro's and 597 Hibiscus Lane Revocable Trust's Notice of Claim and Verified Petition and Request for Hearing to Adjudicate the Validity of Their Interest in Real Property (the "Joint Petition"), which claims real property located at 597 Hibiscus Lane, Miami, Florida 33137 ("597 Hibiscus Lane") that was forfeited, subject to third-party interests, in the Second Preliminary Order of Forfeiture entered against Defendant Gustavo Adolfo Hernandez Frieri (the "Defendant"). *See* Joint Petition, ECF Nos. 261 and 262; Hernandez 2nd Preliminary Order of Forfeiture, ECF No. 239.

Petitioners Olympia De Castro ("De Castro") and 597 Hibiscus Lane Revocable Trust ("Revocable Trust") (collectively, the "Petitioners") have not alleged, nor can they establish as a matter of law, either a superior interest in 597 Hibiscus Lane under 21 U.S.C. § 853(n)(6)(A) or an interest as a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B) that would entitle them to relief in these forfeiture ancillary proceedings. Petitioners premise the Joint Petition on De Castro's current position as the Revocable Trust's sole trustee, alleging on that basis that they hold "all legal right, title, and present interest" in 597 Hibiscus Lane. *See* Joint Petition 1-2, 9-10. Thus, in the Joint Petition, Petitioners invite the Court to find, contrary to Florida trust law, that a trustee who exercises custody and control of revocable trust property has a greater interest in such property than the settlor, for whom the trustee performs her duties. *Compare id. with* Fla. Stat. § 736.0603(1) ("When a trust is revocable, the duties of the trustee are owed exclusively to the settlor."). Alternatively, they suggest a settlor can "resign" from a revocable trust, as if being a settlor is a selected role like that of trustee rather than a position created by the establishment of the trust. *See* Joint Petition 10. Regardless, after May 2019, any alienation of the Defendant's interest in 597 Hibiscus Lane would have violated Court-ordered bond conditions, which were imposed at a hearing also attended by De Castro. *See* Hernandez Bond, ECF No. 103; Joint Petition ¶ 6, at 4. The conveyance of 597 Hibiscus Lane would then only constitute a fraudulent transfer under Florida law, and again, Petitioners' claim would fail as a matter of law.

Accordingly, the Court should decline to adopt Petitioners' misguided reading of trust law, dismiss the Joint Petition, and order the final forfeiture of 597 Hibiscus Lane so that the Defendant, who acquired the property for more than $2 million in cash, can make a substantial contribution toward his forfeiture money judgment balance of more than $11 million. In support of this motion, the United States provides the following memorandum of law.

I. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

A. **Criminal Proceedings and Preliminary Forfeiture of 597 Hibiscus Lane**

On August 16, 2018, a federal grand jury returned an Indictment charging the Defendant and others in Count 1 with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B), among other counts. *See* Indictment, ECF No. 19. The Indictment contained forfeiture allegations, which alleged that the United States sought the forfeiture of 597 Hibiscus Lane as substitute property. *Id.* at 7.

On August 17, 2018, a Notice of Lis Pendens was recorded on 597 Hibiscus Lane, providing additional notice of the United States' intent to seek its forfeiture as substitute property. *See* Recorded Notice of Lis Pendens 3-4, ECF No. 36. A Renewal of Lis Pendens was recorded on September 19, 2019, and again on September 18, 2020. Recorded Renewal of Lis Pendens 11, ECF No. 145; Second Renewal of Lis Pendens, ECF No. 238-12; Joint Petition, Exhibit 4, ECF Nos. 261-4 and 262-4.

On May 17, 2019, after his initial appearance, the Defendant appeared before U.S. Magistrate Judge Jacqueline Becerra for a detention hearing. *See* Minute Order, ECF No. 98.

On May 21, 2019, the Court authorized the Defendant's release pending trial on bond. Hernandez Bond, ECF No. 103. As part of his bond conditions, the Defendant was ordered to not attempt to encumber his properties or investments, including his residence at 597 Hibiscus Lane. *See id.*; *see also* 5/17/2019 Bond Hr'g Tr. 19:8-19:22, ECF No. 101.

On November 26, 2019, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Minute Entry, ECF No. 162; Hernandez Plea Agreement, ECF No. 163. In his Plea Agreement, the Defendant agreed "to liquidate assets, or complete any other tasks which will result in the immediate payment of the forfeiture money judgment in full, or full payment in the

shortest amount of time, as requested by the [United States Attorney's] Office." Hernandez Plea Agreement ¶ 14. He also agreed that "he will not sell, hide, waste, encumber, destroy, or otherwise devalue any asset without prior approval of this Office, until his forfeiture money judgment is paid in full." *Id.* ¶ 15.

On February 4, 2020, the Court entered a Preliminary Order of Forfeiture against the Defendant, and imposed a forfeiture money judgment in the amount of $12,330,000 in U.S. currency. Hernandez Preliminary Order of Forfeiture 2-3, ECF No. 175. The current forfeiture money judgment balance is approximately $11,511,009.99. U.S. Mot. for 2nd Preliminary Order of Forfeiture 4, ECF No. 238.

On September 25, 2020, the United States filed a Motion for Second Preliminary Order of Forfeiture with several supporting exhibits, seeking the forfeiture of 597 Hibiscus Lane, and other assets, as the Defendant's substitute property. *See id.* As noted in the Motion, according to the Miami-Dade Property Appraiser's website, 597 Hibiscus Lane's 2020 assessed value is $1,783,372. *See id.* at 6 n.1; *see also* Hernandez Presentence Investigation Report ¶ 149, ECF No. 182 (net worth statement indicates value is $2 million, property was purchased for $2.725 million, and Zillow indicates a value earlier this year of $2.5 million) (also noting that the Defendant is discussing the sale of 597 Hibiscus Lane with De Castro to purchase a residence in New York for her and their children).

On September 28, 2020, the Court entered the Second Preliminary Order of Forfeiture, which forfeited, subject to third-party interests, 597 Hibiscus Lane and the Defendant's interest as settlor, or "Grantor," of the Revocable Trust. *See* Hernandez 2nd Preliminary Order of Forfeiture ¶ 2, at 5-6, ECF No. 239.

4

On October 1, 2020, the Defendant filed a Motion for Clarification and/or Amendment of the Court's Second Preliminary Order of Forfeiture Dated September 28, 2020 ("Motion for Clarification"), which was referred to U.S. Magistrate Judge Edwin G. Torres on October 5, 2020. *See* Hernandez Mot. for Clarification, ECF No. 243; Order Referring Mot. for Clarification, ECF No. 244.

On October 13, 2020, the United States filed a response in opposition to the Motion for Clarification. *See* U.S. Opp'n to Mot. for Clarification, ECF No. 247.

The Motion for Clarification remains pending before the Court.

On January 22, 2021, the Defendant is scheduled to appear before the Court for a sentencing hearing. *See* Re-Notice of Video Sentencing Hr'g, ECF No. 249.

### B. Joint Petition Filed by Petitioners

On October 6, 2020, a copy of the Second Preliminary Order of Forfeiture was served on Petitioners, via their counsel. *See* Return of Executed Service, ECF No. 251.

On October 7, 2020, a copy of the Second Preliminary Order of Forfeiture was posted on 597 Hibiscus Lane in an open and conspicuous manner by a law enforcement agent. *See* Return of Executed Service, ECF No. 250.

Notice of the criminal forfeiture was posted on an official government internet site (www.forfeiture.gov) for a period of 30 days. *See* Decl. of Publication, ECF No. 263; 21 U.S.C. § 853(n)(1); Fed. R. Crim. P. 32.2(b)(6).

Direct notice was sent to any person who reasonably appeared to be a potential claimant with standing to contest the forfeiture, or such person was on actual notice of the forfeiture. *See* Fed. R. Crim. P. 32.2(b)(6); *accord* 21 U.S.C. § 853(n)(1).

Petitioners, via their counsel, received direct notice on October 23, 2020. The notice advised that any person, other than the Defendant in the above-captioned case, asserting a legal interest in the property sought for final forfeiture may petition the Court for a hearing to adjudicate the validity of that person's alleged interest, within 60 days of the first day of publication or within 30 days of receipt of notice, whichever is earlier. Fed. R. Crim. P. 32.2(b)(6); 21 U.S.C. § 853(n)(2).

On November 18, 2020, Petitioners filed the Joint Petition, claiming 597 Hibiscus Lane. *See* Joint Petition, ECF Nos. 261 and 262.

## II. MEMORANDUM OF LAW

### A. Legal Standard for Dismissal

Rule 32.2 of the Federal Rules of Criminal Procedure specifically authorizes the Court, on motion, to dismiss a third-party petition for "for lack of standing, for failure to state a claim, or for any lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). In addition, because ancillary forfeiture proceedings are essentially civil in nature, a petition may be dismissed by a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See United States v. Gilbert*, 244 F.3d 888, 907 (11th Cir. 2001); *United States v. Cohen*, 243 F. App'x 531, 534 (11th Cir. 2007). Prior to discovery or a hearing, a motion to dismiss a petition should be treated like a motion to dismiss a civil complaint under Rule 12(b) of the Federal Rules of Civil Procedure. *United States v. Marion*, 562 F.3d 1330, 1342 (11th Cir. 2009) (citing *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)).

In considering a motion to dismiss, the court presumes the facts set forth in the petition to be true. Fed. R. Crim. P. 32.2(c)(1)(A). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (establishing same standard for a Rule 12(b)(6) motion); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

545 (2007) (same). To survive a motion to dismiss, a petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). Although at the pleading stage a petition's allegations need not be proven, the petition "must do more than simply assert" the petitioner's interest, or "state that interest in a conclusory fashion." *United States v. Kokko,* No. 06–cr–20065, 2007 WL 2209260, at *5 (S.D. Fla. July 30, 2007). "The showing may not be a heavy burden, but it is a burden nonetheless." *Kokko*, 2007 WL 2209260, at *5.

### B. The Joint Petition Fails To State a Claim Upon Which Relief May Be Granted, and De Castro as Trustee of the Revocable Trust Cannot Have Superior Interest in 597 Hibiscus Lane

Based on the United States' Motion for Second Preliminary Order of Forfeiture, the record in this case, and pursuant to 21 U.S.C. § 853(p), the Court ordered the forfeiture of 597 Hibiscus Lane and Defendant's interest as settlor in the Revocable Trust. *See* Hernandez 2nd Preliminary Order of Forfeiture, ECF No. 239. Petitioners cannot relitigate Defendant's forfeiture. *Compare* Joint Petition 8 (arguing 597 Hibiscus Lane is not the Defendant's substitute asset) *with United States v. Davenport,* 668 F.3d 1316, 1321 (11th Cir. 2012) (third-party petitioners "may not relitigate the merits of a forfeitability determination") *and United States v. Cooper*, 679 F. App'x 738, 742 (11th Cir. 2017) (quoting *Davenport*). *See also* Fed. R. Crim. P. 32.2, advisory committee's note (2000 Adoption) ("This [ancillary] proceeding does not involve relitigation of the forfeitability of property; its only purpose is to determine whether any third party has a legal interest in the forfeited property.").[1]

---

[1] In the Second Preliminary Order of Forfeiture, the Court also found that the "Defendant maintains a present interest in 597 Hibiscus Lane and remains the Grantor, or co-settler of" the Revocable Trust. Hernandez 2nd Preliminary Order of Forfeiture 4. In support of such finding, the United States submitted documents obtained from the Defendant that confirmed that (i) he is a settlor of the Revocable Trust; (ii) the Revocable Trust is governed by the laws of the state of Florida; (iii) under its terms, property transferred into the Revocable Trust is not subject to community or forced share laws; and (iv) the Defendant closed on 597 Hibiscus Lane with a cash transfer in the amount of $2,469,970 in U.S. currency. *See* U.S. Mot. for Preliminary Order of Forfeiture 6-8, ECF No. 238; Exhibit 8, ECF No. 238-8

7

Instead, these ancillary proceedings are confined to determining whether Petitioners can demonstrate, by a preponderance of the evidence, that they are entitled to relief under 21 U.S.C. § 853(n)(6), which "protects only two classes of petitioners, those whose legal interests in the property were superior to the defendant's at the time of the interest of the United States vested through the commission of an act giving rise to forfeiture and bona fide purchasers for value without knowledge of the forfeitability of the defendant's assets." *See United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003) (quoting *United States v. Kennedy*, 201 F.3d 1324, 1328-29 (11th Cir. 2000)) (internal quotations omitted). These are the sole two grounds for Petitioners' recovery. *See Kennedy*, 201 F.3d at 1335. To state a claim upon which relief may be granted, a petition must assert at least one of these grounds. *See id.*; *United States v. Hailey,* 924 F. Supp. 2d 648, 658 (D. Md. 2013) ("The availability of a motion to dismiss indicates that to state a claim, one of the § 853(n)(6) bases must be pled."). Here, Petitioners have failed to allege either, overlooking 21 U.S.C. § 853(n)(6) altogether in the Joint Petition. *See* Joint Petition, ECF Nos. 261 and 262. A third-party petition that fails to satisfy pleading requirements is subject to dismissal without a hearing. *See, e.g.*, *United States v. BCCI Holdings (Luxembourg), S.A.,* 956 F. Supp. 1, 4 (D.D.C. 1996) ("If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismissed the petition without providing a hearing.").

At best, the Joint Petition can be read to assert a claim of superior interest in 597 Hibiscus Lane under 21 U.S.C. § 853(n)(6)(A). Section 853(n)(6)(A) entitles a petitioner to relief if:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the

---

(Revocable Trust Document – Redacted, art. 9); Exhibit 9, ECF No. 238-9 (Letter to Defendant Confirming Cash Closing).

8

       commission of the acts which gave rise to the forfeiture of the property under this section . . . .

21 U.S.C. § 853(n)(6)(A). Petitioners allege that "since 597 Hibiscus Lane Revocable Trust purchased the property [on or about December 18, 2013], the Trustee Olympia De Castro holds legal title to the Trust asset, 597 Hibiscus Lane." Joint Petition 8-9, and Exhibit 3, ECF Nos. 261-3 and 262-3 (warranty deed). They emphasize that more than a year ago, on October 1, 2019, the Defendant resigned as co-trustee, and argue that as a result, "De Castro's interest in the entire property vested well before the Government's could have."[2] *See id.* at 9, and Exhibit 5, ECF No. 261-5 and 262-5 (trustee resignation).

    By premising the Joint Petition on De Castro's position as sole trustee, Petitioners fail to state a claim upon which relief may be granted. A trustee administers the trust for the benefit of others, and in the case of a revocable trust, for the benefit of the settlor. Under the Florida Trust Code,[3] "[w]hen a trust is revocable, the duties of the trustee are owed exclusively to the settlor."

---

[2] Petitioners argue that because 597 Hibiscus Lane was forfeited as a substitute property, the United States' interest would have vested on September 28, 2020, upon entry of the Second Preliminary Order of Forfeiture. *See* Joint Petition 8 & n. 1. They command that the Court "must look to the defendant's interest in the property at the time of forfeiture," as the relation-back doctrine codified in § 21 U.S.C. § 853(c) does not apply to property if not forfeited pursuant to 21 U.S.C. § 853(a), the applicable forfeiture statute for narcotics offenses. *See id.* (emphasis in original). This analysis misstates current federal forfeiture law. First, the procedures of 21 U.S.C. § 853, including the relation-back doctrine § 853(c), apply generally to criminal forfeitures. *See* 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1). Accordingly, the relation-back doctrine applies to forfeitures that arise out of other federal crimes, and not only narcotics-related forfeitures under § 853(a). Second, courts differ on when the Government's interest vests in substitute property, with some vesting interest on the date when the defendant's act or omission occurred that led to the forfeiture of substitute property, and other courts indicating that the interest vests after conviction. *See, e.g., United States v. McHan*, 345 F.3d 262, 271-72 (4th Cir. 2003) (applying relation-back doctrine, and finding Government's interest in substitute property vests on the date of the criminal acts giving rise to the forfeiture); *United States v. Preston*, 123 F. Supp. 3d 117, 128 (D.D.C. 2015) (vests when directly forfeitable property was transferred to third party); *United States v. Erpenbeck*, 682 F.3d 472, 477-78 (6th Cir. 2012) (vests after defendant's conviction); *United States v. Saccoccia*, 165 F. Supp. 2d 103, 109-10 (D.R.I. 2001) (vests upon entry of forfeiture order), *rev'd on other grounds*, 354 F.3d 9 (1st Cir. 2003). Here, regardless of when the Government's interest vests, Petitioners' claim to 597 Hibiscus Lane would still fail because the Defendant has always had a superior interest in such property until its forfeiture to the United States.

[3] "[E]ven though federal law decides what interests are subject to forfeiture under section 853, state property law defines what those interests are in the first instance." *Kennedy*, 201 F.3d at 1334. *See also United States v. Ramunno*, 599 F.3d 1269, 1273-74 (11th Cir. 2010); *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007).

9

Fla. Stat. § 736.0603(1). This is because a revocable trust, as its very name denotes, may be revoked by a settlor, without the trustee's consent. *See* Fla. Stat. § 736.0602(1).[4] The settlor always retains an ownership interest in the revocable trust property:

> A revocable trust is a unique type of transfer. According to E. Carr, *Revocable Trusts,* 5–6 (1980), '[i]t is created when a person, called the settlor, subjects property owned by him to a trust for the benefit of at least one other person, reserving to himself as settlor-beneficiary the income from the trust property for life and the power to revoke the trust in whole or in part at any time. The other person or persons' enjoyment of the trust is postponed until the settlor's death.' *By definition, then, when a settlor sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property.* This retention of control over property distinguishes a revocable trust from the other types of conveyances in which the principle of undue influence is applied, i.e., gifts, deeds, wills, contracts, etc.

*Fla. Nat. Bank of Palm Beach Cty. v. Genova*, 460 So. 2d 895, 897 (Fla. 1984) (holding the right to revoke to be absolute). *See also Siegel v. Novak*, 920 So. 2d 89, 95 (Fla. 4th DCA 2006) (quoting *Genova*); *Schlossberg v. Estate of Kaporovsky*, 303 So. 3d 982, 985 (Fla. 4th DCA 2020) (quoting both *Genova* and *Siegel*, and distinguishing *Aronson v. Aronson*, 930 So. 2d 766 (Fla. 3d DCA 2006)).

In further recognition of a settlor's superior claim to trust property, Florida law specifically provides that "[t]he property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempted by law if owned directly by the settlor." *See* Fla. Stat. § 736.0505(1)(a); *see also In re Nichols*, 434 B.R. 906, 910 (Bankr. M.D. Fla. 2010) (concluding that, as a matter of law, the sole asset of revocable trust is part of bankruptcy estate when debtor was settlor); *cf. In re Brown*, 303 F.3d 1261, 1267–68 (11th Cir. 2002) ("When a settlor creates a trust for her own benefit and inserts a spendthrift

---

[4] "Revocable" is statutorily defined as "revocable by the settlor without the consent of the trustee or a person holding an adverse interest." Fla. Stat. § 736.0103(17); *cf.* Fla. Stat. § 736.0602(7) (limiting liability for a trust "who does not know that a trust has been revoked or amended").

clause, the entire spendthrift clause is void as to her creditors.").

In the Joint Petition, Petitioners ignore these applicable provisions of the Florida Trust Code and repeatedly mischaracterize trust law. *See* Joint Petition 9, 11. First, they cite to Florida court decisions in support of their proposition that a trustee holds legal title to trust property, but fail to disclose that such nominal title is always held for the benefit of others. *See* Joint Petition 9. Petitioners cite the following three decisions without providing the underlined context: *O'Brien v. McMahon*, 44 So. 3d 1273, 1280 (Fla. 1st DCA 2010) (a trustee holds legal title to the trust property "for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee" and distinguishing between guardians and trustees); *Hansen v. Bothe*, 10 So. 3d 213, 216 (Fla. 2d DCA 2009) (legal title in trust assets is held by the trustee but "equitable title rests with the beneficiary" and finding no merger requiring dissolution of trust when there were still intended remainder beneficiaries despite sole trustee/beneficiary); *Buerki v. Lochner*, 570 So. 2d 1061, 1063 (Fla. 2d DCA 1990) (trustee, the legal title holder to the trust property, is the real party in interest to a lawsuit but beneficiary may be necessary party in suit).

Then, Petitioners cite to a trustee's general powers under the Florida Trust Code, which encompasses the exercise of "[a]ll powers over the trust property that an unmarried competent owner has over individually owned property," but ignore that the same provision later states that "[t]he exercise of a power is subject to the fiduciary duties prescribed by this code." *Compare id.* at 9 (quoting Fla. Stat. § 736.0815(1)) *with* Fla. Stat. § 736.0815(2). As previously noted, "[w]hen a trust is revocable, the duties of the trustee are *owed exclusively* to the settlor." *See* Fla. Stat. § 736.0603(1) (emphasis added).[5]

---

[5] Petitioners also reference the Restatement (Third) of Trusts § 5 cmt. c (2003), which section addresses "Trusts and Other Relationships" and which comment discusses "Trusts compared to decedents' estates and guardianships." *See* Restatement (Third) of Trusts § 5 cmt. c (2003). Neither decedent estates or guardianships are at issue here.

11

Petitioners also allege that De Castro "is the individual who has custody and control of" 597 Hibiscus Lane, noting that the Defendant's arrest in Italy meant that he was not present in the property for approximately 10 months. Joint Petition 9. They acknowledge that the Defendant currently resides at 597 Hibiscus Lane,[6] but claim that he does so only with De Castro's "express prior permission" pursuant to terms of the divorce agreement between De Castro and the Defendant. *See id.* at 9-10. However, a trustee is obliged to administer trust property, and De Castro's purported custody, maintenance, and general care of 597 Hibiscus Lane is consistent with her trustee duties that are "*owed exclusively* to the settlor." *Compare id. with* Fla. Stat. § 736.0603(1) (emphasis added). Moreover, Petitioners cite to a section of the divorce agreement that lays out general terms of separation, not property interests in 597 Hibiscus Lane. *See* Joint Petition, Exhibit 6, ECF Nos. 261-6 and 262-6 (divorce settlement), *also filed at* ECF No. 238-11. The cited section allows either party to leave "immediately upon request" from any "home," indicating that De Castro and the Defendant equally have custody of 597 Hibiscus Lane under their terms of separation.[7] *See id.* § 2, at 3.

### C. Petitioners' Allegations that Defendant "Resigned" His Interest in 597 Hibiscus Lane Only Serve To Further Undermine Their Claim, as any Resulting Conveyance Would Have Been a Voidable Fraudulent Transfer

In the alternative, the Joint Petition goes on to allege that the Defendant "has also resigned as a settlor of the Trust pursuant to the final divorce agreement [dated January 24, 2020] . . . and, therefore, no longer has power to revoke or amend the Trust." *See* Joint Petition 10, and Exhibit 6, at 1, 9-10, ECF Nos. 261-6 and 262-6 (divorce settlement, § 16.1). Petitioners then declare that

---

[6] The Defendant has resided at 597 Hibiscus Lane since it was acquired in December 2013. *See* Hernandez Presentence Investigation Report ¶ 116, ECF No. 182.

[7] The Defendant has been restricted to 597 Hibiscus Lane since May 2019, and, in reality, cannot leave "immediately upon request." *See* Hernandez Bond 1, ECF No. 103 (Defendant may not change present address without prior written permission from Court); Order on Conditions of Release and Electronic Monitoring, ECF No. 116.

De Castro "is presently the sole settlor (or grantor)" of the Revocable Trust. *Id.* However, a settlor's role is terminated by revocation or withdrawal of trust property, rather than resignation. *See* Fla. Stat. § 736.0103(18) (defining "settlor"); Fla. Stat. § 736.0602. According to the terms of the Revocable Trust, De Castro and the Defendant are "Grantor," or co-settlors, and trust property is not community property. Joint Petition, Exhibit 1, at 1, 7 (trust instrument, art. 9), ECF Nos. 261-1 and 262-1 (trust instrument, art. 4), *also filed at* ECF No. 239-8. Consequently, De Castro and the Defendant would only be entitled to their respective contributions upon its revocation:

> Revocation or amendment of revocable trust-- .
>
> (2) If a revocable trust is created or funded by more than one settlor: . . .
>
> (b) To the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust attributable to that settlor's contribution.

*See* Fla. Stat. § 736.0602(2)(b); *but see* Joint Petition 11 (erroneously declaring that settlors must act together in revocation).

Here, the Defendant contributed 597 Hibiscus Lane to the Revocable Trust. *See* U.S. Mot. for 2nd Preliminary Order of Forfeiture, Exhibit 9, ECF No. 238-9 (letter addressed to Defendant confirming receipt of "a wire on *your behalf* for cash to close in the amount of $2,469,970.00"); *but see* Joint Petition 2, 8 (De Castro vaguely asserting she also contributed to the purchase of 597 Hibiscus Lane).[8] If the Revocable Trust had been revoked or amended, De Castro, as trustee,

---

[8] Specifically, Petitioners allege that "both Ms. De Castro and [Defendant] Hernandez-Frieri signed the HUD-1 and contributed funds toward the purchase [of 597 Hibiscus Lane], paying for the home in full," and that "[t]he proceeds used to buy the property were clean, untainted, and came from both individuals." Joint Petition 2, 8. Petitioners have not asserted an interest based on contribution, but if they had, these vague allegations would warrant dismissal of the Joint Petition. In filing a petition, a petitioner must satisfy 21 U.S.C. § 853(n)(3), which requires the pleading of the nature and extent of petitioner's right, title, or interest, as well as the time and circumstances of acquisition of the property in question. *See* 21 U.S.C. § 853(n)(3). Petitions that fail to meet such pleading requirements are subject to dismissal for lack of statutory standing. *See, e.g.*, *Kokko*, 2007 WL 2209260, at *4-*5. A petitioner "must do more

13

would have been required "to deliver the trust property as the [Defendant] directs," and the trust would have terminated without its only asset. *See* Fla. Stat. § 736.0602(4); *see also* Joint Petition, Exhibit 1, art. 6 (termination of trust occurs on "the date of the distribution of the entire Trust Estate"). With the Revocable Trust terminated, De Castro could not be a "sole settlor" as claimed by Petitioners.

Even if the Court were to accept that the Defendant could resign from the Revocable Trust to leave De Castro as "sole settlor," the Joint Petition would still be subject to dismissal. Any transfer of the Defendant's interest in 597 Hibiscus Lane would have violated his bond conditions and only resulted in a fraudulent transfer. Under the Florida Uniform Fraudulent Transfer Act, an actual fraudulent transfer occurs when a transfer is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a); *see also generally* Fla. Stat. §§ 726.101-.201. Actual intent can be inferred from the circumstances, including 11 "statutory 'badges of fraud,' such as whether, for example, the transfer was to an insider, the debtor retained control of the property after the transfer, the transfer was of substantially all the debtor's assets, or the debtor was insolvent or became insolvent shortly after the transfer was made." *Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014) (citing Fla. Stat. § 726.105(2)(a)-(k)). "The existence of badges of fraud creates a prima facie case and raises a rebuttable presumption that the transaction is void." *Id.* (quoting *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. 3d DCA 2013)).

During bond proceedings, the Defendant's interest in 597 Hibiscus Lane and the United States' intent to forfeit the property were discussed at length:

```
18          [AUSA]: We are also asking for home confinement
19     with electronic monitoring to be paid for by the Defendant. We
20     already have the Defendant's passports, but we've also agreed to
21     surrender the passports for Mr. Hernandez's children. We'd ask
```

---

than state [its] interest in a conclusory fashion," especially when other evidence directly contradicts those allegations. *Id.* at *5 (noting that petitioner's allegations conflicted with defendant's statements).

14

```
22    that the co-signers, as well as Mr. Hernandez, not encumber any
23    property or assets or investments. Mr. Hernandez has also
24    agreed to pledge his share of the Homestead here in Miami.
25            THE COURT: Anything else?
 1            [AUSA]: I believe that is it, Your Honor.
 2            THE COURT: So why is the wife not pledging the
 3    Homestead?
 4            [DEFENSE COUNSEL]: Your Honor, she's present in court.
 5    Mr. Hernandez was arrested almost nine months ago in Italy. The
 6    businesses have pretty much crumpled in the face of his
 7    indictment, and the wife has been particularly adversely
 8    affected both in her job and in her ability to pay and care for
 9    the children and it's likely going to be a divorce. And on the
10    advice of her divorce counsel, she's not available to execute.
11             THE COURT: So the wife is refusing to pledge the
12    property?
13            [AUSA]: Her share.
14            [DEFENSE COUNSEL]: Her share, her half.
15            THE COURT: I thought the property was held in some
16    sort of trust?
17            [AUSA]: It is.
18            THE COURT: So does he have an interest in that trust
19    or no?
20            [AUSA]: He does. He is the trustee.
21            THE COURT: All right. That doesn't mean he has an
22    interest in the trust. So do you know what his interest in the
23    house is?
24            [DEFENSE COUNSEL]: The three children are the beneficiaries
25    of the trust, Your Honor. But prior to the trust, Your Honor,
 1    and this is simply to point out the legal issue, the Government
 2    would have a stake, they may or may not win it, they filed a lis
 3    pendens to protect it with regard to his share of the property
 4    so it does have value and it is, I believe, a reasonable
 5    property to sit behind the bond in addition to these other
 6    terms.
 7            THE COURT: Where is he going to reside?
 8            [DEFENSE COUNSEL]: At the house. The wife – we've had
 9    discussions late into the night. It's on Hibiscus, it's not
10    actually that far from here, and he will live there and remain
11    there with his children and his wife as they go through this
12    process. Now that he's back, I hope things will change, but I
13    can't tell the Court it will.
```

5/17/2019 Bond Hr'g Tr. 3:18-5:13; *see also id.* at 9:14-10:8 (referencing *lis pendens* recorded on

597 Hibiscus Lane), 17:5-17:25 (sidebar discussions on the Defendant's interest in the Revocable

15

Trust and how De Castro could not sell or encumber 597 Hibiscus Lane). After this inquiry, U.S. Magistrate Judge Becerra ordered the Defendant "to execute whatever is necessary with the bond paperwork to make sure that his interest in that property [597 Hibiscus Lane] is also pledged as part of the bond." *Id.* at 19:8-19:22 (emphasis added). On May 21, 2019, the Defendant's Court-ordered bond explicitly stated that there be "no attempt to encumber properties or investments." Hernandez Bond 1-2, ECF No. 103 (emphasis in original).

De Castro admits that she was present at the Defendant's bond hearing. *See* Joint Petition ¶ 6, at 4. Both De Castro and the Defendant were, therefore, well aware that the Defendant pledged his interest in 597 Hibiscus Lane as part of his bond, and that the United States intended to forfeit it as his substitute property. Despite such awareness, Petitioners now claim that the Defendant transferred his interest to De Castro after May 2019, either by resigning as co-trustee on October 1, 2019, or by agreeing to resign as co-settlor in the divorce settlement on January 24, 2020. *See* Joint Petition 9-10, Exhibit 5, and Exhibit 6. No consideration was paid for these resignations. *See id.* Also, the alleged resulting transfer would have left the Defendant insolvent, as he has reported a negative net worth and no other significant assets. *See* Hernandez Presentence Investigation Report ¶ 149, ECF No. 182.

Based on these circumstances, the Defendant's resignations could have only resulted in a fraudulent transfer of 597 Hibiscus Lane. *See, e.g., In re Crawford*, 172 B.R. 365 (Bankr. M.D. Fla. 1994) (voiding amendment that changed trust from revocable to irrevocable as a fraudulent transfer when no reasonable equivalent value was exchanged, settlor became insolvent as a result of transfer, and amendment was executed after notice of suit); *United States v. Key*, No. 20-5231, 2020 WL 6821687, at *1 (6th Cir. Nov. 20, 2020) (affirming finding of fraudulent transfer under 28 U.S.C. § 3304, which lists same 11 intent factors as Fla. Stat. § 726.105(2)(a)-(k), when transfer

was made to insider without exchange of reasonably equivalent value, after defendant, who was insolvent, learned of criminal indictment and shortly before defendant incurred a substantial restitution debt). Therefore, Petitioners would still not have a superior interest as the United States would be entitled to "[a]voidance of the transfer or obligation to the extent necessary to satisfy [its] claim." *See* Fla. Stat. § 726.108. Moreover, in relying on the Defendant's resignations, Petitioners concede that without a transfer of his interest, Petitioners would not have a superior claim to 597 Hibiscus Lane. Accordingly, the Joint Petition should be dismissed as a matter of law.

### III. CONCLUSION

WHEREFORE, pursuant to 21 U.S.C. § 853(n), Rule 32.2 of the Federal Rules of Criminal Procedure, and Rule 12 of the Federal Rules of Civil Procedure, the United States respectfully requests that the Court dismiss the Joint Petition.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: */s/ Nalina Sombuntham*
Nalina Sombuntham
Assistant United States Attorney
Deputy Chief, Asset Forfeiture Division
Fla. Bar No. 96139
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9224
Facsimile: (305) 536-4089
nalina.sombuntham@usdoj.gov