**GOVERNMENT
EXHIBIT
22-1
18-cr-20685**

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## 3 Gramercy Park West, LLC

**Effective as of February 1, 2019**

February 1, 2019

ODC00018

**3 Gramercy Park West, LLC**
a New York limited liability company

## LIMITED LIABILITY COMPANY AGREEMENT

**THIS AGREEMENT** is made and entered into as of February 1, 2019 by and between 3 Gramercy Park West, LLC, a New York limited liability company (the "Company") and the DC Trust, a Florida Irrevocable Trust, the member (the "Member").

### RECITALS:

**WHEREAS,** the Company was organized as a New York limited liability company on July 28, 2005, under and pursuant to the New York Limited Liability Company Act, as amended (the "Act");

**WHEREAS,** the Company and Member desire to set forth the Members' rights, powers, interests and obligations with respect to the Company and to operate the Company in accordance with the terms of, and subject to the conditions set forth in, this Agreement;

**NOW, THEREFORE,** in consideration of the mutual promises and agreements made herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

### DEFINITIONS

As used in this Agreement, the following terms shall each have the meaning specified below (unless the context otherwise requires):

"**Act**" means the Delaware Limited Liability Company Act, as amended from time to time and any successor statute.

"**Affiliate**" means, with respect to any Person, any other Person which, at the time of determination, directly or indirectly, through one or more intermediaries Controls, is Controlled by or is under Common Control with such Person.

"**Agreement**" means this Limited Liability Company Agreement, together with all of its Schedules, as originally executed, and as amended, modified, supplemented or restated from time to time.

"**Capital Account**" shall mean, with respect to a Member, the Capital Account pursuant to Section 3.6 hereof with respect to the Units held by such Member.

"**Capital Contribution**" means the cash and fair market value of the other property, including the Initial Contributions and additional contributions, if any, contributed to the capital of the Company by all the Member or any one Member, as the case may be.

"**Carrying Value**" means, with respect to any Company Property, such Company Property's adjusted basis for U.S. federal income tax purposes, except that the Carrying Values of

2

all Company Properties shall be adjusted to equal their respective Agreed Values in accordance with the rules set forth in Treasury Regulations Section 1.704-1(b)(2)(iv)(f), except as otherwise provided herein, immediately prior to: (a) the date of the acquisition of any additional Membership Interest by any new or existing Member in exchange for more than a *de minimis* Capital Contribution, (b) the date of the distribution of more than a *de minimis* amount of Company Property (other than a pro rata distribution) to a Member or (c) any other date specified by Treasury Regulations; provided that adjustments pursuant to clauses (a), (b) or (c) above shall be made only if the Manager determines in good faith that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members. The Carrying Value of any Company Property distributed to any Member shall be adjusted immediately prior to such distribution to equal its fair value. In the case of any Company Property that has a Carrying Value that differs from its adjusted tax basis, such Carrying Value shall be adjusted by the amount of depreciation calculated for purposes of the definition of "Profit or Loss" rather than the amount of depreciation, amortization and other cost recovery deductions determined for U.S. federal income tax purposes.

"**Code**" means the Internal Revenue Code of 1986, as now in effect or as hereafter amended or corresponding provisions of future laws.

"**Company**" shall have the meaning set forth in the preamble.

"**Company Property**" shall have the meaning set forth in Section 7.1.

"**Contributed Property**" means property or other consideration (other than cash) contributed to the Company in exchange for Membership Interests.

"**Control**" means, as to any Person means: (A) the beneficial ownership of fifty percent (50%) or more of the voting interests in such Person, or (b) the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise. The terms "Controlled by," "under Common Control with" and "Controlling" shall have correlative meanings.

"**Guarantee**" means any obligation, contingent or otherwise, of any Person guaranteeing or having the economic effect of guaranteeing any Indebtedness or other obligation of any other Person (the "primary obligor") in any manner, whether directly or indirectly, and including any obligation of any Person, direct or indirect, (a) to purchase or pay (or advance or supply funds for the purchase or payment of) such Indebtedness or other obligation or to purchase (or to advance or supply funds for the purchase of) any security for the payment thereof, (b) to purchase or lease property, securities or services for the purpose of assuring the owner of such Indebtedness or other obligation of the payment thereof, (c) to maintain working capital, equity capital or any other financial statement condition or liquidity of the primary obligor so as to enable the primary obligor to pay such Indebtedness or other obligation or (d) as an account party in respect of any letter of credit or letter of guaranty issued to support such Indebtedness or obligation.

"**Indebtedness**" means, without duplication, (a) obligations for borrowed money or with respect to deposits or advances of any kind, (b) obligations evidenced by bonds, debentures, notes or similar instruments, (c) obligations upon which interest charges are customarily paid, (d)

3

obligations under conditional sale or other title retention agreements relating to property acquired, (e) obligations in respect of the deferred purchase price of property or services (excluding current accounts payable incurred in the ordinary course of business), (f) all Indebtedness of others secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien on property owned or acquired by the applicable Person, whether or not the Indebtedness secured thereby has been assumed, (g) Guarantees of Indebtedness of others, (h) all Capital Lease Obligations, (i) all obligations, contingent or otherwise, in respect of letters of credit and letters of guaranty and (j) obligations, contingent or otherwise in respect of bankers' acceptances. The Indebtedness of the Company shall include the Indebtedness of any other entity (including any partnership in which the Company is a general partner) to the extent the Company is liable therefor as a result of the Company's ownership interest in or other relationship with such entity, except to the extent the terms of such Indebtedness provide that the Company is not liable therefor.

"**Initial Contribution**" shall mean the initial capital contribution made by each Member that is indicated in Schedule A hereto.

"**Lien**" means any lien, charge, security interest, option, claim, mortgage, pledge, proxy, voting trust or agreement, obligation, understanding or arrangement or other restrictions on title or transfer of any nature whatsoever.

"**Manager**" shall have the meaning set forth in Section 5.1.

"**Members**" shall mean those Persons listed in Schedule A, any Person to whom an Membership Interest is issued and who is admitted as a new Member pursuant to the terms of this Agreement.

"**Membership Interest**" means, with respect to any Member at any time, the entire interest of such Member in the Company at such time. Such interest includes, without limitation, (a) all rights of a Member to receive distributions of revenues, allocations of income and loss and distributions of liquidation proceeds under this Agreement and (b) all management rights, voting rights or rights to consent.

"**Officers**" shall have the meaning set forth in Section 5.9.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or Governmental Body or any other entity or association.

"**Profit or Loss**" for any fiscal year or other period, means the taxable income or loss of the Company, or particular items thereof, determined in accordance with the accounting method used by the Company for U.S. federal income tax purposes with the following adjustments:

(a) any item of income, gain, loss or deduction allocated pursuant to Section 4.2 shall not be taken into account in computing such taxable income or loss;

(b) any income of the Company that is exempt from U.S. federal income taxation and not otherwise taken into account in computing Profits and Losses shall be added to such taxable income or loss;

(c) if the Carrying Value of any Company Property differs from its adjusted tax basis for U.S. federal income tax purposes, any gain or loss resulting from a disposition of such asset shall be calculated with reference to such Carrying Value;

(d) upon an adjustment to the Carrying Value of any Company Property pursuant to the definition of Carrying Value (other than an adjustment in respect of depreciation, amortization or cost recovery deductions), the amount of the adjustment shall be included as gain or loss in computing such taxable income or loss;

(e) if the Carrying Value of any Company Property differs from its adjusted tax basis for U.S. federal income tax purposes the amount of depreciation, amortization or cost recovery deductions with respect to such asset shall for purposes of determining Profits and Losses be an amount which, except as otherwise expressly required by applicable Treasury Regulations, bears the same ratio to such Carrying Value as the U.S. federal income tax depreciation, amortization or other cost recovery deductions bears to such adjusted tax basis (*provided* that if the U.S. federal income tax depreciation, amortization or other cost recovery deduction is zero, the Manager may use any reasonable method for purposes of determining depreciation, amortization or other cost recovery deductions in calculating Profits and Losses); and

(f) except for items in (a) above, any expenditures of the Company not deductible in computing taxable income or loss, not properly capitalizable and not otherwise taken into account in computing Profits and Losses pursuant to this definition shall be treated as deductible items.

"**Subsidiaries**" of a Person means a corporation, partnership, limited liability company or other business entity of which a majority of the equity capital having ordinary voting power for the election of directors or other governing body (other than equity capital having such power only by reason of the happening of a contingency) are at the time beneficially owned, or the management of which is otherwise controlled, directly, or indirectly through one or more intermediaries, or both, by such Person.

"**Treasury Regulations**" shall mean the United States Treasury Regulations promulgated under the Code.

5

# ARTICLE I

## ORGANIZATION

1.1     Formation. The Company was organized as a limited liability company under and pursuant to the Act by the filing of a Certificate of Formation with the Office of the Secretary of State of New York as required by the Act. In the event of a conflict between the terms of this Agreement and the Certificate of Formation, the terms of the Certificate of Formation shall prevail.

1.2     Name. The name of the Company shall be "3 Gramercy Park West, LLC" or such other name as the Manager may from time to time designate with the approval of holders of a majority of the Membership Interests (measured by the respective Percentage Interests thereof). To the extent permitted by the Act, the Company may conduct its business under one or more assumed names deemed advisable by the Manager.

1.3     Purposes; Powers. The purpose of the Company is to engage in any activity and/or business for which limited liability companies may be formed under the Act. The Company shall have all the powers necessary or convenient to effect any purpose for which it is formed, including all powers granted by the Act.

1.4     Duration. The Company shall continue in existence until the Company shall be dissolved and its affairs wound up in accordance with the Act or this Agreement.

1.5     Registered Office and Registered Agent; Principal Office.

(a)     The registered office of the Company required by the Act to be maintained in the State of New York shall be the initial registered office named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Manager may designate from time to time in the manner provided by the Act.

(b)     The registered agent of the Company in the State of New York shall be the initial registered agent named in the Certificate of Formation or such other Person or entity as the Manager may designate in the manner provided by the Act.

(c)     The principal office of the Company shall initially be located at such place as the Manager may designate from time to time, which need not be in the State of New York, and the Company shall maintain records there for inspection as required by the Act. The Company may have such other offices as the Manager may designate from time to time.

1.6     Qualification in Other Jurisdictions. The Manager shall have authority to cause the Company to be qualified, registered under an assumed or fictitious name, or do business in jurisdictions other than the State of New York if such jurisdiction has enacted a limited liability company statute and the Manager shall have approved the qualification of the Company under such statute to do business as a foreign limited liability company in such jurisdiction.

## ARTICLE II

## RIGHTS, POWERS AND OBLIGATIONS OF THE MEMBER

2.1     Members.  The Member of the Company as of the date of this Agreement is listed on Schedule A hereto and the address of such Member is as set forth on such Schedule A. As of the date hereof, there are no other Member of the Company and no other Person has any right to take part in the ownership of the Company.

2.2     Investment Representations.  The Member hereby represents and warrants as follows:

(a)     Such Member is acquiring Membership Interest for investment solely for such Members' own account and not for distribution, transfer or sale to others in connection with any distribution or public offering.

(b)     Such Member is financially able to bear the economic risk of an investment in the Company and has no need for liquidity in this investment.

(c)     Such Member has such knowledge, experience and skill in financial and business matters in general and with respect to investments of a nature similar to an investment in the Company so as to be capable of evaluating the merits and risks of, and making an informed business decision with regard to, this investment. Such Member acknowledges and understands that the purchase of Membership Interest involves an investment in a speculative investment with no assurance of success.

(d)     Such Member(i) have received all information that such Member deems necessary to make an informed investment decision with respect to an investment in the Company; (ii) has had the unrestricted opportunity to make such investigation as such Member desires pertaining to the Company and an investment therein and to verify any information furnished to such Members; and (iii) have had the opportunity to ask questions of representatives of the Company concerning the Company and such Members' investment.

(e)     Such Member understands that such Member must bear the economic risk of an investment in the Company for an indefinite period of time because (i) the Membership Interests have not been registered under the Securities Act of 1933 or any applicable state securities laws and (ii) the Membership Interests may not be sold, transferred, pledged or otherwise disposed of except in accordance with this Agreement and then only if they are subsequently registered in accordance with the provisions of the Securities Act and applicable state securities laws or registration under the Securities Act or any applicable state securities laws is not required.

(f)     Such Member understand that the Company is not obligated to register the Membership Interests for resale under the Securities Act or any applicable state securities laws and that the Company is not obligated to supply such Member with information or assistance in complying with any exemption under the Securities Act or any applicable state securities laws. Upon the request of the Company, such Member will provide the Company with an opinion of counsel satisfactory to the Company that a proposed resale of the Membership Interests complies with the Securities Act or any applicable state securities laws.

ODC00024

2.3. <u>Admission of New Members</u>. Additional Members of the Company may only be admitted to the Company upon written approval of the existing Member.

2.5. <u>Limitation of Liability</u>. No Members hall have any liability to any third party for any debt or obligation solely by virtue of being a Member.

2.6. <u>Company Debt Liability</u>. No Member will be personally liable for any liabilities, debts or obligations of the Company.

2.7. <u>Rights</u>. Except as otherwise expressly provided in this Agreement, the Member shall be entitled to participate in the control and management of the Company, and shall have the right to sign for or bind the Company.

## ARTICLE III

## FUNDING OF THE COMPANY

3.1 <u>Initial Contribution</u>. The Member have heretofore contributed to the capital of the Company the amount set forth as such Members' Initial Contribution (the "<u>Initial Contribution</u>") on <u>Schedule A</u>.

3.2 <u>Membership Interest</u>. Each Member shall own the percentage of beneficial interests on the Company indicated on <u>Schedule A</u> hereto (collectively the "<u>Percentage Interests</u>" and each a "<u>Percentage Interest</u>").

3.3 <u>Further Capital Contributions</u>.

(a) The Member may make further Capital Contributions.
(b) The Member shall not be obligated to make any Capital Contributions other than the Initial Contributions.

3.4 <u>Return of Capital Contributions</u>. The Member shall have the right to withdraw Capital Contributions to the Company.

3.5 <u>Interest</u>. No interest shall be paid by the Company on Capital Contributions or on balances in Members' Capital Accounts.

3.6 <u>Capital Accounts</u>. A capital account (each a "<u>Capital Account</u>") shall be established and maintained for the Member in a manner reasonably designated by the Manager.

## ARTICLE IV

## ALLOCATIONS AND DISTRIBUTIONS

4.1. <u>General Allocation Rule</u>. Except as otherwise provided in this <u>Article IV</u>, the Profit or Loss of the Company for each fiscal year (or other applicable period) shall be allocated among the Member in proportion to their Percentage Interests.

4.2. <u>Special Allocations</u>. The Manager shall make any special allocations it deems reasonable.

4.3. <u>Fiscal Year</u>. Except as otherwise required by the Code, the fiscal year of the Company for tax and accounting purposes shall be the twelve (12) month (or shorter) period ending on the last day of December of each year.

## ARTICLE V

## MANAGEMENT

5.1 <u>Management of Business</u>. Except as otherwise expressly provided in this Agreement, the powers of the Company shall be exercised by, and the ordinary business and affairs of the Company shall be managed under the direction of, a Manager (the "<u>Manager</u>"). The Manager shall hold office until the election and qualification of his or her successor, or until his earlier death, or resignation or removal pursuant to <u>Section 5.6</u>.

5.2 <u>Appointment</u>. There shall be a Manager at all times that this Agreement remains in effect. The Member shall have right to appoint the Manager. As of the date of this Agreement, the Manager is Olympia De Castro. At any future time when the office of Manager shall be vacant for any reason, the Manager of the Company shall be the existing Manager of the Members.

5.3 <u>General Powers of Manager</u>. Except as may otherwise be expressly provided in this Agreement, the Manager shall have the exclusive power, authority and complete discretion in the management and control of the ordinary business and affairs of the Company, including the right to make and control all ordinary and usual decisions concerning the business and affairs of the Company. The Manager shall possess all power, on behalf of the Company, to do or authorize the Company or to direct the executive officers of the Company, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company. Notwithstanding the foregoing, the Manager shall, at all times, cause the Company to comply with this Agreement and the Certificate.

5.4 <u>Limitations on Powers of Manager</u>. The enumeration of powers in this Agreement shall not limit the general or implied powers of the Manager or any additional powers provided by law.

5.5 <u>Compensation</u>. The Manager's compensation shall be determined by the Members.

5.6 <u>Officers</u>. The Manager shall have the right to appoint officers (the "<u>Officers</u>") of the Company, including a President, one or more Vice Presidents, a Chief Financial Officer, a Chief Operating Officer and/or a Secretary, to assist with the day-to-day management of the business and affairs of the Company and may delegate to such officers such powers and

responsibilities as the Manager deems appropriate. Each officer shall, at all times, be subject to the direction of the Manager and, except as the Manager may otherwise specify shall have such powers and duties as would customarily be assigned to officers holding comparable positions in a corporation organized under the Delaware General Corporation Law.

  5.7 Standard of Care; Liability. The Manager shall discharge his duties as a manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he reasonably believes to be in the best interests of the Company.

  5.8 Limitation on Liability of the Managers. The doing of any act or the failure to do any act by the Manager, the effect of which may cause or result in loss or damage to the Company or any Member, shall not subject the Manager to any liability to the Company or any Member unless the act or omission to act (i) constitutes gross negligence, bad faith or willful misconduct, (ii) constitutes a breach of such Manager's duty of loyalty to the Company or the Members, (iii) resulted in such Manager or a Related Person of such Manager deriving a personal benefit not approved in accordance with this Agreement, to the extent applicable, or (iv) constitutes a breach of this Agreement, the Act, the Certificate, or employment agreement, if applicable.

## ARTICLE VI

## POWERS RESERVED BY THE MEMBERS; MEETINGS OF MEMBERS

  6.1 Powers reserved by the Members. The Members have the authority and power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company. No Member shall be liable for the debts, obligations or liabilities of the Company.

  6.2. Place of Meetings. Neither regular nor special meetings of the Members shall be required in order to conduct the business and affairs of the Company or to take any action with respect thereto.

  6.3. Call of Meetings. A Meeting of the Members for any proper purpose or purposes may be called at any time by the Manager or Members.

  6.4. Notice. A written notice stating the place, day, hour and purposes for which a meeting is being called shall be delivered not less than two (2) nor more than thirty (30) days before the date of the meeting to each Member entitled to vote.

  6.5. Waiver of Notice. Attendance of the Members at a meeting shall constitute a waiver of notice of the meeting. Notice of a meeting may also be waived in writing.

  6.6. Quorum. The presence, either in person or by proxy, of the Members is required to constitute a quorum at any meeting.

  6.7. Voting. The Members hall be entitled to vote on any matter submitted to a vote of the Members.

6.8. <u>Conduct of Meetings</u>. The Members shall serve as chairperson of any meeting and shall further designate a Person to take minutes of any meeting. The chairperson shall have the power to adjourn the meeting from time to time, without notice, other than announcement of the time and place of the adjourned meeting. Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

6.9. <u>Action by Written Consent</u>. Any action that may be taken at a meeting of the Membermay be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed and dated by the Members.

6.10. <u>Conference Telephone Meetings</u>. Meetings of the Member may be held by means of conference telephone or similar communications equipment so long as all Persons participating in the meeting can hear and communicate with each other. Participation in a meeting by means of conference telephone shall constitute presence in person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business there at on the ground that the meeting is not lawfully called or convened.

6.11. <u>Record Date</u>. For all purposes, the date on which notice of the meeting is mailed shall be the record date.

## ARTICLE VII

## OWNERSHIP OF COMPANY PROPERTY

7.1 All interests, properties, whether real or personal, rights of any type owned or held by the Company, whether owned or held by the Company at the date of its formation or thereafter acquired (collectively, "<u>Company Property</u>"), shall be deemed to be owned by the Company as an entity, and no Member or Manager, individually or collectively, shall have any ownership interest in such Company Property or any portion thereof. Title to any or all Company Property may be held in the name of the Company or one or more nominees, as the Manager may determine. All Company Property shall be recorded as the property of the Company on its books and records, irrespective of the name in which legal title to such Company Property is held.

## ARTICLE VIII

## FISCAL MATTERS; BOOKS AND RECORDS

8.1. <u>Bank Accounts; Investments</u>. Capital Contributions, revenues and any other Company funds shall be deposited by the Company in a bank account established in the name of the Company, or shall be invested by the Company, at the direction of the Manager, in furtherance of the purposes of the Company. No other funds shall be deposited into Company bank accounts or commingled with Company investments. Funds deposited in the Company's bank accounts may be withdrawn only to be invested in furtherance of the Company's purposes, to pay Company debts or obligations or to be distributed to the Member pursuant to this Agreement.

8.2. <u>Records Required by Act; Right of Inspection</u>. (a) During the term of the Company's existence and for a period of four (4) years thereafter, there shall be maintained in the Company's principal office all records required to be kept pursuant to the Act, including, without limitation, a current list of the names, addresses and Membership Interests held by each of the Member(including the dates on which each of the Member became a Member), copies of U.S. federal, state and local information or income tax returns for each of the Company's tax years, copies of this Agreement and the Certificate of Formation, including all amendments or restatements, and correct and complete books and records of account of the Company.

8.3. <u>Books and Records of Account</u>. The Company shall maintain adequate books and records of account that shall be maintained on the accrual method of accounting and on a basis consistent with appropriate provisions of the Code, containing, among other entries, a Capital Account for each class of Membership Interests held by each Member.

8.4. <u>Tax Returns and Information</u>. The Member intends for the Company to be treated as a partnership for tax purposes. The Company shall prepare or cause there to be prepared all U.S. federal, state and local income and other tax returns that the Company is required to file. As soon as practicable after the end of each year, the Company shall send or deliver to each Person who was a Member at any time during such year such tax information as shall be reasonably necessary for the preparation by such Person of such Person's U.S. federal income tax return and state income and other tax returns.

8.5. <u>Delivery of Financial Statements to Members</u>. As to each fiscal year of the Company, the Manager shall send to each Member a copy of (i) the balance sheet of the Company as of the end of such fiscal year, (ii) an income statement of the Company for such fiscal year and (iii) a statement showing any distributions made by the Company to Member during such fiscal year. Such financial statements shall be delivered no later than ninety (90) days following the end of each fiscal year.

8.7. <u>Tax Elections</u>. The Company shall make the appropriate elections on the appropriate tax returns.

8.8. <u>Tax Matters Member</u>. The Member shall be the "tax matters partner" (the "Tax Matters Member") of the Company pursuant to Section 6231(a)(7) of the Code. Such Member shall take such action as may be necessary to cause each other Member to become a "notice partner" within the meaning of Section 6223 of the Code. Such Member shall inform each other Member of all significant matters that may come to its attention in its capacity as "Tax Matters Member" by giving notice thereof within a reasonable time after becoming aware thereof. Such Member may not take any action contemplated by Sections 6222 through 6232 of the Code without the consent of all the Members.

8.9 <u>Code Section 83 Safe Harbor Election</u>. By executing this Agreement, the Members authorize and direct the Company to elect to have the "Safe Harbor" described in the proposed Revenue Procedure set forth in Internal Revenue Service Notice 2005-43 (the "IRS Notice") apply to any interest in the Company transferred to a service provider by the Company on or after the effective date of such Revenue Procedure (or any substantially similar Revenue

Procedure or other guidance issued by the Internal Revenue Service) in connection with services provided to the Company.

8.10 <u>Taxes and Taxing Jurisdiction</u>. To the extent that the laws of the United States or any state, local or non-United States government requires so, the Company may withhold and pay over to such Taxing Jurisdiction the amount of any tax, penalty, or interest required to be withhold and paid under such laws with respect to items of income, gains, and other amounts allocable to any Member hereunder. Any such payment shall be treated as a distribution to the Members.

## ARTICLE IX

## INDEMNIFICATION; LIMITATION OF LIABILITY

9.1 <u>Indemnification and Advancement of Expenses.</u>

(a) The Company shall indemnify any Person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Company), by reason of the fact that he, she or it is or was (i) a Manager, Member, officer, employee, representative or agent of the Company or the Members, or is or was serving at the request of the Company as a director, officer, manager, employee, representative or agent of another corporation, limited liability company, general partnership, limited partnership, joint venture, trust, business trust or other enterprise or entity, or (ii) a party to a guarantee or any other agreement at the request of the Company, in each case against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him, her or it in connection with such action, suit or proceeding if he, she or it acted in good faith and in a manner he, she or it reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his, her or its conduct was unlawful.

(b) Expenses (including attorneys' fees) incurred by the Manager, or a Member in defending any civil, criminal, administrative or investigative action, suit or proceeding shall be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Manager, or Member to repay such amount if it shall ultimately be determined that such Member is not entitled to be indemnified by the Company pursuant to this <u>Section 9.1</u>. Such expenses (including attorneys' fees) incurred by other officers, employees, representatives and agents shall be so paid upon such terms and conditions, if any, as the Manager deems appropriate.

(c) The indemnification and advancement of expenses provided by, or granted pursuant to, this <u>Section 9.1</u> shall continue as to a Person who has ceased to be a Manager, Member, officer, employee, representative, agent or party to the guarantees or agreements set forth in <u>Section 9.1</u> and shall inure to the benefit of the heirs, executors and administrators of such Person.

(d) Notwithstanding anything in this Article to the contrary, the Company will not have the obligation of indemnifying any Person with respect to proceedings, claims or actions initiated or brought voluntarily by such Person and not by way of defense.

February 1, 2019      ODC00030

9.2. <u>Insurance</u>. The Company may purchase and maintain insurance or make another arrangement on behalf of any Person who is or was a Manager, Member, officer, employee, agent or other Person identified in <u>Section 9.1</u> against any liability asserted against such Person or incurred by such Person in such a capacity or arising out of the status of such a Person, whether or not the Company would have the power to indemnify such Person against that liability under <u>Section 9.1</u> or otherwise.

9.3 <u>Limit on Liability of Members</u>. The indemnification set forth in this <u>Article IX</u> shall in no event cause the Member to incur any personal liability, nor shall it result in any liability of the Member to any third party.

## ARTICLE X

## DISSOLUTION AND WINDING UP

10.1 <u>Events Causing Dissolution</u>. The Company shall be dissolved upon the first of the following events to occur:

(a) The written consent of the Members; and

(b) The occurrence of any other event that causes the dissolution of a limited liability company under the Act.

10.2 <u>Winding Up</u>. If the Company is dissolved pursuant to <u>Section 10.1</u>, the Company's affairs shall be wound up as soon as reasonably.

## ARTICLE XI

## TRANSFERS OR ASSIGNMENTS OF MEMBERSHIP INTERESTS

11.1. <u>Prohibited Transfers</u>. The Member agrees with the Company that such Members shall not transfer or assign any Membership Interest or part thereof (directly or indirectly, by operation of law or otherwise) without first complying with the requirements set forth in this <u>Article XI</u>.

11.2. <u>Transfer to Subsidiaries and Affiliates</u>. The rules of this <u>Article XI</u> shall not apply to the assignment or transfer of any Membership Interest to a wholly-owned Subsidiary of the transferring Member; <u>provided, however</u>, that prior to causing or permitting such transferee to cease being a wholly-owned Subsidiary of the transferor, the transferor shall first cause the transferee to transfer such Membership Interest to the transferor or another wholly-owned Subsidiary of the transferor.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1 <u>General Representations</u>. The Member hereby represent and warrant to the Company that: (i) he has the full right and authority to enter into this Agreement and perform his

14

ODC00031

obligations hereunder; (ii) execution of this Agreement and his performance hereunder will not violate any obligations or agreements of such Member to any third parties; and (iii) has not granted, nor will grant, any right, do any act or enter into any agreement whatsoever that may or will prevent or hinder the full performance of obligations hereunder.

12.2 Counterparts. This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same agreement.

12.3 Entire Agreement. This Agreement constitutes the entire agreement among the parties hereto and contains all of the agreements among such parties with respect to the subject matter hereof. This Agreement supersedes any and all other agreements, either oral or written, between such parties with respect to the subject matter hereof.

12.4 Partial Invalidity. Wherever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions hereof, unless such a construction would be unreasonable.

12.5 Amendment. This Agreement may be amended, supplemented or modified only with the favorable vote of the Member holding at least 66.67% of the aggregate Percentage Interests in the Company.

12.6 Assignments. The Member may assign in whole or in part its Membership Interest as provided in Article XI. If the Member transfer all interest in the Company pursuant to this Section and Article XI, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

12.7 Binding Effect; Benefit. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and shall inure to the benefit of the parties, and their respective distributees, heirs, successors and permitted assigns.

12.8 Governing Law; Jurisdiction. (a) This Agreement shall be governed by and construed in accordance with the local, internal laws of the State of New York (without regard to conflict of laws principals). In particular, this Agreement is intended to comply with the requirements of the Act and the Certificate of Formation of the Company. In the event of a direct conflict between the provisions of this Agreement and the mandatory provisions of the Act or any provision of the Certificate of Formation of the Company, the Act and the Certificate of Formation of the Company, in that order of priority, will control.

(b) The parties to this Agreement, acting for themselves and for their respective successors and assigns, without regard to domicile, citizenship or residence, hereby expressly and irrevocably submit to, as the exclusive forum for the determination of all disputes arising under or

15

in connection with this Agreement, the jurisdiction of the United States District Court for the Southern District of New York and the jurisdiction of any court of the State of New York sitting in the County of New York. Each of the parties hereto hereby waives any claims of inconvenient form or venue. Service of process, notices and demands of such arbitration board, and any other notices or other communications required or permitted under this Agreement, shall be deemed given if in writing and delivered personally or mailed as required by Section 12.13 below.

12.9 Terms Generally. The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined. The term "and/or" is used herein to mean both "and" as well as "or." The use of "and/or" in certain contexts in no respects qualifies or modifies the use of the terms "and" or "or" in others. "Or" shall not be interpreted to be exclusive unless the context otherwise requires; and "and" shall not be interpreted to require the conjunctive, in each case unless the context otherwise requires. The terms "include" and "including" are to be construed as non-exclusive (so that, by way of example and for the avoidance of doubt, "including" shall mean "including without limitation"), in each case unless the context otherwise requires.

12.10 Offset. Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

12.11 Effect of Waiver or Consent. A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute-of-limitations period has run.

12.12 Further Assurances. In connection with this Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement and such transactions.

12.13 Notices. Any notice, demand, consent, election, offer, approval, request, or other communication required or permitted under this Agreement (collectively, "Notices") must be in writing (except where telephonic notice is specifically permitted hereunder) and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested or by facsimile transmission with receipt confirmed. A Notice must be addressed to a Member at the Member's address as listed on Schedule A. A notice that is sent by mail will be deemed given three (3) business days after it is mailed while a Notice that is delivered personally shall be deemed given upon receipt. Any party to this Agreement may, by Notice to all of the other parties: (x) designate one or more additional Persons to receive copies of any Notices given to such party and/or (y) substitute address(es) for receipt of Notices by such party or any Person referred to in clause (x).

ODC00033

12.14  **Creditors**. None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any creditor of the Member or of the Company. No creditor who makes a loan to the Member or to the Company may have or acquire, solely as a result of making such loan, any membership interest or interest in the profits or property of the Company, other than such membership interest or interest in the profits or property of the Company that may be expressly granted to such creditor, with the written consent of the Member, pursuant to the terms of such loan.

12.15  **Interpretation**. Each definition in this Agreement includes the singular and the plural, and reference to the neuter gender includes the masculine and feminine where appropriate. References to any statute or Treasury Regulations means such statute or regulations as amended at the time and include any successor legislation or regulations. The headings to the Articles and Sections are for convenience of reference and shall not affect the meaning or interpretation of this Agreement. Except as otherwise stated, reference to Articles, Sections and Schedules mean the Articles, Sections and Schedules of this Agreement. The Schedules to this Agreement are hereby incorporated by reference into and shall be deemed a part of this Agreement.

*[Remainder of page intentionally left blank. Signatures follow.]*

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement to be effective as of the date first above written.

**3 Gramercy Park West, LLC**

By: _____
Name: Olympia De Castro
Title: Manager

**MEMBER:**

_____
Name: DC Irrevocable Trust
Title: Trustee

February 1, 2019

18

ODC00035

## Schedule A

| Member | Initial Contribution | Percentage Interest | Address |
|---|---|---|---|
| DC Irrevocable Trust | A contribution of the assets and liabilities. | 100% | 597 Hibiscus Lane<br>Miami, FL 33137<br><br>with a copy to:<br>Trenam Law<br>Atte.: Tate Taylor, Esq.<br>101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602 |

19

ODC00036