UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

Defendant.

## UNITED STATES' MOTION FOR FOURTH PRELIMINARY ORDER OF FORFEITURE

Pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853(p) and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, hereby moves for the entry of a Fourth Preliminary Order of Forfeiture against Defendant Gustavo Adolfo Hernandez Frieri (the "Defendant") in the above-captioned matter. The United States seeks to forfeit, as substitute property, real property located at 314 Hicks Street, Brooklyn, New York 11201 (the "314 Hicks Brooklyn Townhouse"), in order to satisfy, in part, the balance of the forfeiture money judgment imposed on the Defendant in the Preliminary Order of Forfeiture, ECF No. 175. In support of this motion, the United States provides the following factual and legal bases and accompanying exhibits.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 16, 2018, a federal grand jury returned an Indictment charging the Defendant and others in Count 1 with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B), among other counts. *See* Indictment, ECF No. 19.

On November 26, 2019, after the Defendant's arrest and extradition from Italy, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Minute Entry, ECF No.

162; Hernandez Plea Agreement, ECF No. 163.  In his Plea Agreement, the Defendant agreed "to liquidate assets, or complete any other tasks which will result in the immediate payment of the forfeiture money judgment in full, or full payment in the shortest amount of time, as requested by the [United States Attorney's] Office."  Hernandez Plea Agreement ¶ 14.  He also agreed that "he will not sell, hide, waste, encumber, destroy, or otherwise devalue any asset without prior approval of this Office, until his forfeiture money judgment is paid in full."  *Id.* ¶ 15.

On February 4, 2020, the Court entered a Preliminary Order of Forfeiture against the Defendant, and imposed a forfeiture money judgment in the amount of $12,330,000 in U.S. currency.  *See* Hernandez Preliminary Order of Forfeiture 2-3, ECF No. 175.

On September 28, 2020, the Court entered the Second Preliminary Order of Forfeiture, which forfeited, as substitute property and subject to third-party interests, real property located at 597 Hibiscus Lane, Miami, Florida 33137 ("597 Hibiscus Lane"), the Defendant's interest as settlor, or "Grantor," of the 597 Hibiscus Lane Revocable Trust, and two checks totaling approximately $6,471.34 in value.  *See* Hernandez 2nd Preliminary Order of Forfeiture ¶ 2, at 5-6, ECF No. 239; *see also* U.S. Mot. for Hernandez 2nd Preliminary Order of Forfeiture, Sept. 22, 2020, ECF No. 237.  In addition, approximately $818,990.01 in U.S. currency seized from City National Bank accounts had previously been forfeited in co-defendant Abraham Edgardo Ortega's case, which the United States credited to the Defendant's forfeiture money judgment.  *See id.*; Ortega Final Order of Forfeiture, ECF No. 146.

On October 1, 2020, the Defendant filed a Motion for Clarification and/or Amendment of the Court's Second Preliminary Order of Forfeiture Dated September 28, 2020 ("Motion for Clarification"), which was referred to U.S. Magistrate Judge Edwin G. Torres on October 5, 2020.  *See* Hernandez Mot. for Clarification, ECF No. 243; Order Referring Hernandez Mot. for

Clarification, ECF No. 244.

On October 13, 2020, the United States filed a Response in Opposition to Defendant Hernandez Motion for Clarification. *See* U.S. Opp'n to Hernandez Mot. for Clarification, ECF No. 247.

On November 18, 2020, Olympia De Castro ("De Castro"), the Defendant's ex-wife, and 597 Hibiscus Lane Revocable Trust ("Revocable Trust") jointly filed a Notice of Claim and Verified Petition and Request for Hearing to Adjudicate the Validity of Their Interest in Real Property ("De Castro and Revocable Trust's 597 Hibiscus Joint Petition"), claiming 597 Hibiscus Lane. *See* De Castro and Revocable Trust's 597 Hibiscus Joint Petition, ECF Nos. 261 and 262.

On December 23, 2020, the Court referred all forfeiture-related motions to U.S. Magistrate Judge Edwin G. Torres. *See* Order, ECF No. 268.

On December 28, 2020, U.S. Magistrate Judge Edwin G. Torres entered an Order denying the Defendant's Motion for Clarification. Order Denying Hernandez Motion for Clarification 6, ECF No. 273.

On December 29, 2020, the United States filed a Bill of Particulars, providing notice of its intent to seek the forfeiture of real property located at 801 East Dania Beach Boulevard, Dania Beach, Florida 33004 (the "Dania Beach Property"). *See* Bill of Particulars, ECF No. 274; *see also* Notice of Lis Pendens, ECF No. 275.

On January 9, 2021, the United States filed a Second Bill of Particulars, providing notice of its intent to seek the forfeiture of real property located at 314 Hicks Brooklyn Townhouse. *See* Second Bill of Particulars, ECF No. 278.

On January 11, 2021, the Court entered the Third Preliminary Order of Forfeiture, which forfeited, as substitute property and subject to third-party interests, approximately $900,000 from

the forthcoming sale of the Dania Beach Property, which is currently titled in the name of Mile Marker 55, LLC.  *See* Hernandez 3rd Preliminary Order of Forfeiture, ECF No. 280; see also U.S. Mot. for Hernandez 3rd Preliminary Order of Forfeiture, Jan. 10, 2021, ECF No. 279.

In the Third Preliminary Order of Forfeiture, the Court also restrained, pursuant to 21 U.S.C. § 853(g), the 314 Hicks Brooklyn Townhouse to ensure its availability for criminal forfeiture.  *See id.*

On February 8, 2021, Daniel Holtz and De Castro testified during the first day of Defendant's pre-sentencing hearing on financial matters that was held before U.S. Magistrate Judge Edwin G. Torres.  *See* Minute Entry, ECF No. 295; *see also* 2/8/2021 Pre-Sentencing Hearing Tr., ECF No. 303.

On February 10, 2021, De Castro filed a Notice of Claim and Verified Petition and Request for Hearing To Adjudicate Validity of Her Interest of Approximately $900,000 (Plus Interest) From the Forthcoming Sale of Real Property Located at 801 E. Dania Beach Blvd., Dania Beach, FL ("De Castro's Dania Petition").  *See* De Castro's Dania Petition, ECF No. 296.

Also, on February 10, 2021, Devine Goodman & Rasco ("DGR") filed a Notice of Claim and Verified Petition and Request for Hearing To Adjudicate Validity of Its Interest From the Forthcoming Sale of Real Property Located at 801 E. Dania Beach Blvd., Dania Beach, FL ("DGR's Petition").  *See* DGR's Petition, ECF No. 297.

On February 18, 2021, Allison Domeneghetti testified during the second day of the Defendant's pre-sentencing hearing on financial matters.  *See* Minute Entry, ECF No. 305.

On March 7, 2021, U.S. Magistrate Judge Edwin G. Torres issued a Report and Recommendation on the Government's Motion To Dismiss, and recommended that De Castro and Revocable Trust's 597 Hibiscus Joint Petition be dismissed.  *See* Report and Recommendation,

ECF No. 316; *see also* U.S. Mot. To Dismiss De Castro and Revocable Trust's 597 Hibiscus Joint Petition, Dec. 18, 2020, ECF No. 264; De Castro and Revocable Trust's Response, Jan. 18, 2021, ECF No. 285; U.S. Reply, Jan. 19, 2021, ECF No. 286.

On March 8, 2021, the United States filed an Omnibus Response to De Castro's Dania Petition and DGR's Petition.  U.S. Response to De Castro's Dania Petition and DGR's Petition, ECF No. 323.

On March 15, 2021, DGR filed a Notice of Withdrawal of DGR's Petition, and De Castro filed a Reply, requesting limited discovery ahead of an evidentiary hearing that has not yet been scheduled.  *See* DGR's Notice of Withdrawal, ECF No. 334; De Castro's Reply, ECF No. 335.

Accordingly, third-party claims to 597 Hibiscus Lane and the approximately $900,000 from the forthcoming sale of the Dania Beach Property remain unresolved.

The current balance remaining on the Defendant's forfeiture money judgment is approximately $11,504,538.65.[1]  The value of 597 Hibiscus Lane, the approximately $900,000 from the sale of the Dania Beach Property, and the 314 Hicks Brooklyn Townhouse totals approximately $9 million,[2] but such value is subject to the aforementioned pending third-party claims to be decided in forfeiture ancillary proceedings.

## II. MEMORANDUM OF LAW

If directly forfeitable property is not available, the Court "shall order the forfeiture of any

---

[1] This figure accounts for the forfeited $818,990.01 from City National Bank accounts and the two checks totaling $6,471.34 in value.  Other forfeited assets have unknown value at this time.  *See* Order Denying Hernandez Mot. for Clarification 6, ECF No. 273.

[2] *See* Hernandez Presentence Investigation Report ¶ 150, ECF No. 331 (net worth statement indicates value of 597 Hibiscus Lane is $2 million, property was purchased for $2.725 million, and Zillow indicates a value earlier this year of $2.5 million); De Castro's Dania Petition 2, ECF No. 296 (indicating that full amount owed from the sale of the Dania Beach Property is approximately $1 million, which is $900,000 plus interest); Exhibit E, U.S. Motion for 3rd Preliminary Order of Forfeiture, ECF No. 279-6 (in July 2020, the 314 Hicks Brooklyn Townhouse was purchased for approximately $5.9 million).

5

other property of the defendant" to satisfy a money judgment. *See* 21 U.S.C. § 853(p); Fed. R. Crim. P. 32.2(e); *United States v. Fleet*, 498 F.3d 1225, 1227-31 (11th Cir. 2007) (any property of the defendant may be forfeited as a substitute asset); *United States v. Knowles*, No. 19-14309, 2020 WL 3583413, at *1 (11th Cir. July 2, 2020) ("We've held that the word 'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all . . . .'") (citing *Fleet*, 498 F.3d at 1229). Such substitute property is available for forfeiture upon a showing that, due to any act or omission of a defendant, directly forfeitable property:

> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p). The government may establish such unavailability through an agent's declaration. *See United States v. Seher*, 562 F.3d 1344, 1373 (11th Cir. 2009).

As the United States noted in its Motion for Third Preliminary Order of Forfeiture, the Court has already entered orders of forfeiture imposing a forfeiture money judgment against the Defendant and finding that the prerequisites of 21 U.S.C. § 853(p) have been satisfied to authorize the forfeiture of his substitute property. *See* U.S. Mot. for Hernandez 3rd Preliminary Order of Forfeiture, ECF No. 279; *see also* Hernandez Preliminary Order of Forfeiture 2-3, ECF No. 175; Hernandez 2nd Preliminary Order of Forfeiture, ECF No. 239; Order Denying Hernandez Mot. for Clarification, ECF No. 273. At the time the Court entered the Third Preliminary Order of Forfeiture, the United States was still investigating the Defendant's interest in the 314 Hicks Brooklyn Townhouse, and only sought a protective order, pursuant to 21 U.S.C. § 853(g), to restrain the property in order to preserve its availability for forfeiture. *See* U.S. Mot. for Hernandez 3rd Preliminary Order of Forfeiture, ECF No. 279*;* Hernandez 3rd Preliminary Order

of Forfeiture, ECF No. 280.

In support of the restraint, the United States set forth the following facts and exhibits indicating that the 314 Hicks Brooklyn Townhouse was likely purchased with proceeds from the sale of the Defendant's former New York residence, located at 3 Gramercy Park West, Unit 2 (the "Gramercy Apartment"):

> In July 2020, the [314 Hicks] Brooklyn Townhouse was purchased for approximately $5.9 million. *See* [ECF No. 279-6], at 1 (314 Hicks Street's NYC Office of the City Register's Detailed Document Information and Deed). Based on public records, the property was titled to 314 Hicks LLC, a New York limited liability company established in June 2020. *See id.*; [ECF No. 279-7], at 2 (314 Hicks LLC's NYS Entity Information). The purchase of the [314 Hicks] Brooklyn Townhouse was funded by approximately $5,472,721 in cash that was transferred via "Domestic Wire: 2019 Irrovocable [*sic*] Trust." *See* [ECF No. 279-8], at 2 (Transcript of IRS Form 8300 for 2020 Purchase of 314 Hicks Street– Redacted).[] The person identified as involved in the transfer was Allison Domeneghetti ("Domeneghetti"). *See id.* at 1; [ECF No. 279-6], at 11, 13, 17.
>
> Based on the attached exhibits, it appears that the 2020 purchase of the [314 Hicks] Brooklyn Townhouse was likely funded by the 2019 sale of 3 Gramercy Park West, Unit 2 (the "Gramercy Apartment"), the Defendant's former New York residence. In November 2019, the Gramercy Apartment was sold for approximately $5.7 million. *See* [ECF No. 279-9], at 1 (3 Gramercy Park West's NYC Office of the City Register's Detailed Document Information and Deed).[] Domeneghetti, as "Trustee of DC 2019 Irrevocable Trust," authorized the sale of the Gramercy Apartment. *See* [ECF No. 279-10] (3 Gramercy Park West, LLC's Resolution of Sole Member); [ECF No. 279-11] (3 Gramercy Park West's NYC Real Property Transfer Tax Return - Redacted). Sale documents indicate that DC 2019 Irrevocable Trust was the sole member of 3 Gramercy Park West, LLC, the titled owner of the Gramercy Apartment. *See id.* However, when it was established in July 2005, 3 Gramercy Park West, LLC was owned and controlled by the Defendant and/or his family relatives through a series of trusts. *See* [ECF No. 279-12], at 2 (3 Gramercy Park West, LLC's NYS Entity Information); [ECF No. 279-13], at 16 (Gramercy Irrevocable Operating Trust Instrument); [ECF No. 279-14], at 16 (HH Master Settlement Trust Instrument); [ECF No. 279-15], at 1 (Hernandez's Agreement Regarding 3 Gramercy Park West Purchase). [FN: To acquire the property in the name of a domestic limited liability company, the Defendant agreed that the company "shall be formed by [the Defendant], wholly owned by [the Defendant] and/or [his] family, and [the Defendant] and/or [his] family shall retain the exclusive right to use the Unit." *See* [ECF No. 279-15] (executed by the Defendant).]

In other words, between 2015 and 2020, nominal membership interest in 3 Gramercy Park West, LLC – the then-titled owner of the Gramercy Apartment – was transferred from the Defendant and his family's trusts to DC 2019 Irrevocable Trust. At bond proceedings in 2019, the Defendant, via his counsel, represented that the Gramercy Apartment belonged to the family of his now ex-wife, De Castro:

```
1 [AUSA]: There's a piece of property in New York
2 that's an irrevocable trust for the benefit of the kids that
3 Mr. Hernandez has no interest in. He is not a trustee nor
4 beneficiary.
5 THE COURT: Who is the trustee and the beneficiary of
6 that apartment?
7 [DEFENSE COUNSEL]: It's, as I understand it, one of his
8 wife's sisters and a family friend of the wife.
```

5/17/2019 Bond Hr'g Tr. 10:1-10:8, ECF No. 101. It is unclear when, why, or how this transfer occurred, and whether such transfer was conducted in an arms-length transaction for reasonably equivalent consideration, or constitutes a voidable fraudulent transfer. *See* N.Y. Debt. & Cred. Law § 273; *see also, e.g., In re Crawford*, 172 B.R. 365 (Bankr. M.D. Fla. 1994); *United States v. Key*, No. 20-5231, 2020 WL 6821687, at *1 (6th Cir. Nov. 20, 2020).

U.S. Mot. for 3rd Preliminary Order of Forfeiture 5-7 (seeking restraint of 314 Hicks Brooklyn Townhouse).

Since then, a pre-sentencing hearing on the Defendant's financial matters was held before U.S. Magistrate Judge Edwin G. Torres. *See* Minute Entry, ECF No. 295; Minute Entry, ECF No. 305; 2/8/2021 Pre-Sentencing Hearing Tr., ECF No. 303, *also available at* ECF No. 323-1. The testimony and evidence presented at the hearing, along with the attached exhibits, confirm that (i) the Defendant acquired the Gramercy Apartment prior to his marriage, holding himself out to be its sole beneficial owner; (ii) the transfer of the Gramercy Apartment from the Defendant and his family's trusts to the Defendant's ex-wife and her trust, DC 2019 Irrevocable Trust, did not occur in an arms-length transaction for reasonably equivalent consideration, and (iii) proceeds from the sale of the Gramercy Apartment funded the 2020 purchase of the 314 Hicks Brooklyn Townhouse. Thus, the 314 Hicks Brooklyn Townhouse is other property of the Defendant, subject to forfeiture

pursuant to 21 U.S.C. § 853(p).  *See, e.g.*, *United States v. Gordon*, 710 F.3d 1124, 1167-68 (10th Cir. 2013) (affirming preliminary forfeiture of residence titled to defendant's wife as substitute property under § 853(p)).

The Gramercy Apartment was acquired by the Defendant in 2005, prior to the Defendant's marriage in 2007 to De Castro.  *See* Pre-sentencing Hearing Tr. 36:9-36:11 (De Castro); *attached* Exhibit A (2005 Gramercy NYC Deed Detail).  Until the Defendant's arrest, the Gramercy Apartment was held through a domestic entity and a series of foreign trusts that the Defendant directed or otherwise managed and controlled.  *See id.*; Gov't Exs. 10, 11, 12, ECF Nos. 294-10, 294-11, 294-12; *see also* Pre-sentencing Hearing Tr. 38:15-38:17 (De Castro). In his 2004 application to purchase the Gramercy Apartment, the Defendant represented that he intended to "purchase ALL CASH and plans to be the sole occupant of the property.  He would like to purchase in a corporate name 3 Gramercy Park West L.L.C. for real estate planning purposes." *See attached* Exhibit B, at 1, 97 (Purchase Application for Gramercy Apartment).  In support of his application, the Defendant submitted a financial statement prepared by a certified public accountant that represented that he had a net worth of over $28 million, of which nearly $24 million was attributed to his 50 percent beneficial interest in the Hernandez Frieri family trust.  *See id.* at 1, 31, 35-36, 55-68.  His assets included an extensive art collection, with works from Kai Althoff and others. *See id*. at 50, 52.  The Defendant secured approval from the sellers to purchase the Gramercy Apartment through a family-owned domestic company, and then titled the property in the name of 3 Gramercy Park West, LLC, a New York limited liability company established on July 29, 2005. *See* Gov't Exs. 9 and 12, ECF No. 294-9 and 294-12; *see also* Pre-sentencing Hearing Tr. 71:10-73:11; 76:22-76:24, 77:19-78:7 (De Castro).  As part of the closing for the Gramercy Apartment, the Defendant executed, on or about August 16, 2005, an occupancy agreement that stated that 3

Gramercy Park West, LLC is "a limited liability company wholly owned by [Defendant] Gustavo Adolfo Hernandez Frieri." *See* Exhibit C (Occupancy Agreement).

The company was managed by the Defendant until after his arrest, and its sole member (or title owner) was a foreign trust held by the Defendant's family (Gramercy Irrevocable Operating Trust), which, in turn, was held by another foreign trust held by his family (HH Master Settlement Trust), for which the Defendant was the director of the appointed protector, a foreign company (H&H Protector Ltd.). *See id.*; Gov't Exs. 10, 11, 12, 13, ECF Nos. 294-10, 294-11, 294-12, 294-13; *see also* 2/8/2021 Pre-sentencing Hearing Tr. 46:10-46:14, 73:12-77:14.  HH Master Settlement Trust is the same umbrella trust that owned the Defendant's financial firm, Global Security Advisors ("GSA").  GSA is the entity that managed Global Securities Trade Finance, which is the fund that was used in the Defendant's conspiracy to launder Ortega's illicit bribery proceeds and other monies.  *See* Hernandez Revised Presentence Investigation Report ¶¶ 48, 87, 127, ECF No. 331; *attached* Exhibit D (GSA Ownership Structure, 2017 E-mail Attachment).

The Defendant resided at the Gramercy Apartment until in or about 2014 before moving to Miami, and continued to maintain and otherwise control the property until his arrest on money laundering charges in Italy. *See* 2/8/2021 Pre-sentencing Hearing Tr. 33:12-33:19, 39:22-40:2 (De Castro).  It was only after his arrest and indictment that paper ownership interests in the Gramercy Apartment changed, first with De Castro taking over management of 3 Gramercy Park West, LLC, and then management of HH Master Settlement Trust, after the Defendant appointed De Castro as authorized signatory for that trust's protector.  *See attached* Exhibit E (Timeline of Government Exhibits); *see also* Gov't Ex. 13, ECF No. 294-13; Pre-sentencing Hearing Tr. 78:18-79:17; 83:2-83:17, 84:1-85:8 (De Castro).

De Castro testified that Maria Lucia Hernandez, one of two purported beneficiaries of HH

Master Settlement Trust, authorized and transferred the management and ownership of the Gramercy Apartment to her. *See* Pre-sentencing Hearing Tr. 79:18-80:4, 86:9-86:17 (De Castro). On or about February 1, 2019, Maria Lucia Hernandez, the Defendant's sister, assigned ownership of 3 Gramercy Park West, LLC to DC 2019 Irrevocable Trust. *See* Gov't Ex. 22, ECF No. 304-22. De Castro testified that this transfer was part of the "unwinding the H.H. Trust and distributing the assets, as was written by the Trust, to the grandchildren of her father." *See* Pre-sentencing Hearing Tr. 86:9-86:17 (De Castro). However, the Amended and Restated HH Master Settlement Declaration Trust was made in November 2006, prior to the marriage of the Defendant and De Castro and there is no mention of their children. *See* Gov't Ex. 10, ECF No. 294-10.

In the transfer, De Castro received no authorization from Gramercy Irrevocable Operating Trust, which had been the sole member of 3 Gramercy Park West, LLC. *See* Exhibit F (De Castro's Supplemental Affidavit); *cf.* Gov't Exs. 14 and 15, ECF Nos. 294-14 and 294-15; Pre-sentencing Hearing Tr. 84:1-84:23, 85:15-86:17 (De Castro). Maria Lucia Hernandez did not provide additional authority to assign ownership of the Gramercy Apartment, as she only relied on her position as beneficiary of HH Master Settlement Trust. *See* Gov't Ex. 22, ECF No. 304-22. The trust documents also do not support Maria Lucia Hernandez's authority to act on behalf of HH Master Settlement Trust. The Defendant and Maria Lucia Hernandez's father passed away in 2006, and by the trust's own terms, distribution of the estate of the HH Master Settlement Trust was to be conducted upon his death and by the trustee, which is identified as Americas Fiduciary Limited, a Nevis corporation, and not Maria Lucia Hernandez. *See* Gov't Ex. 10, at 2, 17, ECF No. 294-10. Still, the Gramercy Apartment remained in the hands of the Defendant for more than a decade. *See* Pre-sentencing Hearing Tr. 46:10-46:14 (De Castro).

Furthermore, when the Gramercy Apartment was transferred into the DC 2019 Irrevocable

Trust, De Castro alone was identified as "grantor" on trust documents, even though she testified that the proceeds were gifted and ". . . contributed by Maria Lucia [the Defendant's sister] and her husband, . . . to an irrevocable trust in the benefit of the children [of the Defendant and De Castro]." *Compare* Gov't Exs. 22-3, ECF Nos. 304-4 and 304-5 *with* Gov't Pre-sentencing Hearing Tr. 87:1-87:7 (De Castro). No financial consideration was provided by De Castro or the DC 2019 Irrevocable Trust for the transfer. *See* Pre-sentencing Hearing Tr. 87:1-87:7 (De Castro).

Thus, although paper ownership of the Gramercy Apartment had been carefully structured in a limited liability company with at least two layers of trust ownership, when 3 Gramercy Park West, LLC was transferred from the Defendant and his family's trusts, one layer – that of Gramercy Irrevocable Operating Trust – was wholly ignored, no trustees were involved, and ultimately De Castro, individually, contributed the Gramercy Apartment to the estate of the DC 2019 Irrevocable Trust. Subsequently, the proceeds from the sale of the Gramercy Apartment, along with other funds from the sale of artwork by Kai Althoff attributed to the Defendant's family, funded the purchase of the 314 Hicks Brooklyn Townhouse for $5.9 million in July 2020. *See* Pre-sentencing Hearing Tr. 89:2-91:8, 92:5-92:10, 94:5-94:11 (De Castro); Gov't Ex. 31, ECF No. 304-13.

Accordingly, the Court should issue the attached proposed order, which provides for the forfeiture of 314 Hicks Brooklyn Townhouse, and the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case. To the extent that the Defendant's ex-wife, a trust, or any other third party has an interest in any property sought through forfeiture proceedings, such interest will be addressed after the property is preliminarily forfeited, in third-party ancillary proceedings. *See* 21 U.S.C. § 853(k), (n); Fed. R. Crim. P. 32.2; *United States v. Couch*, 906 F.3d 1223, 1228 (11th Cir. 2018) (recognizing that § 853(k) "expressly bars third parties from

intervening in forfeiture proceedings to claim an interest in property subject to forfeiture"). The issue of third-party ownership, if any, is deferred to those ancillary proceedings. *See, e.g.*, Fed. R. Crim. P. 32.2(b)(2)(A); *Gordon*, 710 F.3d at 1167-68; *United States v. Frey*, 517 F. App'x 512, 513 (6th Cir. 2013).

WHEREFORE, pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States respectfully requests the entry of the attached order.

## LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that the undersigned counsel has conferred with defense counsel via e-mail regarding the Defendant's position on the relief sought. On March 19, 2021, the Defendant, through his defense counsel, indicated the same position as provided when the United States sought the protective order restraining the 314 Hicks Brooklyn Townhouse. *See* ECF No. 279. The Defendant stated that he does not own and did not own at the time of his plea any interest in the Hicks Street property but nonetheless, understanding this issue will be litigated by the real owner, and consistent with his plea agreement, he does not object to the Government's filing.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   */s/ Nalina Sombuntham*
      Nalina Sombuntham
      Assistant United States Attorney
      Deputy Chief, Asset Forfeiture Division
      Fla. Bar No. 96139
      99 N.E. 4th Street, 7th Floor
      Miami, Florida 33132-2111
      Telephone: (305) 961-9224
      Facsimile: (305) 536-408
      nalina.sombuntham@usdoj.gov