UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20685-cr-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GUSTAVO ADOLFO HERNANDEZ
FRIERI, et al.,

    Defendants.
_____/

**<u>DEFENDANT GUSTAVO ADOLFO HERNANDEZ FRIERI'S SENTENCING
MEMORANDUM PART A - OBJECTIONS TO THE PRE-SENTENCE REPORT AND
SENTENCING GUIDELINES CALCULATIONS</u>**

Defendant Gustavo Adolfo Hernandez Frieri, ("Mr. Hernandez"), pursuant to U.S.S.G. 6A1.2-3, p.s., Fed. R. Crim. P. 32(d), (e)(2) and (f), and the Fifth Amendment to the United States Constitution, respectfully registers his Objections/Clarifications to the Presentence Investigation Report ("PSR") and submits the instant Memorandum in Aid of Sentence to address the PSR's guidelines calculations. Mr. Hernandez will file a supplemental sentencing memorandum ahead of the April 30, 2021, final sentencing date that addresses Section 3553 and departure/variance.

**I.     INTRODUCTION**

Venezuelan "Boliburgueses" have been plundering their country for years. Thefts and briberies have been identified since the early 2000's. Operation MoneyFlight is a recent iteration of an old crime. MoneyFlight entailed acts beginning in 2012 or earlier, and billions of dollars taken and laundered around the world. None of that involved Mr. Hernandez. Mr. Hernandez did not know or have any relation to the activities in Venezuela, and Mr. Hernandez did not know or have any relation to the Venezuelan co-defendants and co-conspirators identified in the Indictment.

Mr. Hernandez's involvement does not occur until June 2016, it comprises a de minimis aspect of the MoneyFlight Investigation, and Mr. Hernandez did not earn any monies from the activity.

For the past 20 years, Mr. Hernandez was a Miami based partner in Global Securities, the US regulated financial services company which managed investment funds. In June 2016 and March 2017, co-defendant Mr. Abraham Ortega ("Mr. Ortega") and his banker the government's confidential source (the "Confidential Source") made two investments into one of the Global Securities funds, the GS Trade Finance Fund, which totaled $12 million. These monies remain invested in the GS Trade Finance Fund, save for ca. 20% of the monies which the Confidential Source and Mr. Ortega loaned out of the fund. At the time of these investments, and unbeknownst to Mr. Hernandez, Mr. Ortega's banker, the Confidential Source, was already working with Government agents. Simply put, Mr. Hernandez was brought into the orbit of MoneyFlight under the watchful eyes of federal agents and with the urging of their Confidential Source. Mr. Hernandez did not participate in the Venezuela fraud and did not pay or receive any bribes. See attached as **Exhibit A** charts detailing the scope of the Money Flight prosecution and how little Mr. Hernandez was involved.

## II.     PRE-SENTENCE REPORT FACTUAL OBJECTIONS

We adopt and maintain the factual objections set out in the March 3, 2020 letter to the U.S. Probation office.  See **Exhibit B** attached.

## III.    THIS IS NOT SOPHISTICATED MONEY-LAUNDERING

A. Definition of "Sophisticated Laundering" Enhancement under USSG § 2S1.1

Application Note 5 to Section 2S1.1 provides guidance as to what constitutes "sophisticated laundering," stating it is "complex or intricate" conduct that

> "typically involves the use of:
> (i) fictitious entities;
> (ii) shell corporations;
> (iii) two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or offshore financial accounts."

B. <u>Definition of "Sophisticated Means" Enhancement under USSG §2B1.1, Subsection (b)(10)(C)</u>:

"For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

It turns out that only a very marginal percentage of money laundering cases **(<7.5%)** are subject to the Sophisticated Laundering enhancement. The enhancement is highly criticized because it leads to overly severe sentencing, boosting what are already disproportionally high sentences by an **additional 25%**. *See* e.g. U.S. Sentencing Commission Report, 2019.

The following are relevant cases that demonstrate that the sophisticated means enhancement should be narrowly applied.

**1. United States v. Eckstein (10th Circuit, District of New Mexico, 2016)**
This 2016 decision from the U.S. District Court for the District of New Mexico presents another example of a court examining the significant difference between a defendant's words and his actions. The government contended the defendant "bragged about how he could issue checks citing fraudulent work that, in light of his numerous businesses and holdings, would not raise any red flags." While it was true that the defendant had multiple legitimate businesses and was found to have paid money to fictitious entities, he did not own, list or create the fictitious entities as part of the money laundering scheme, the Court sustained the defendant's objection to the "sophisticated laundering" designation, finding no probative value in defendant's "bragging," and determining the actions amounted to only a "garden-variety" money laundering scheme unworthy of the 2-level enhancement. <u>The court concluded that "In the end, if Eckstein's money laundering operation qualifies as "sophisticated," so too does every money laundering operation</u>. Thus, the Court will sustain Eckstein's

3

objection to the PSR's application of a 2-level enhancement under § 2S1.1(b)(3) for "sophisticated laundering."

### 2. United States v. Maddux (E.D. Kentucky, 2016)

The U.S. District Court for the Eastern District of Kentucky rejected the government's attempt to apply the "sophisticated laundering" enhancement, though with different reasoning than that of Eckstein. After looking to Note 5's guidance, the Court acknowledged that the scheme employed fictitious entities and involved an "offshore" element, in that the defendant sent some money overseas. The Court also concluded there "was only one level of transfer that was intended to make the money seem like something it was not." Based on these assessments, the Court found the enhancement inappropriate, stating the enhancement would lose meaning if applied to the defendant's relatively unsophisticated activities in this case. The Court concluded that "If what he did amounted to sophisticated money laundering nearly all money laundering would be sophisticated, rendering the enhancement meaningless."

### 3. United States v. Landwer (640 F.3d 769 (7th Cir. 2011))

The court noted that the "application of th[is] adjustment 'is proper when the conduct shows a greater level of planning or concealment than a typical fraud of its kind." 640 F.3d at 771 (quoting United States v. Knox, 624 F.3d 865, 871 (7th Cir. 2010)(Williams, J.)). There must be such a thing as "garden variety" money laundering if § 2S1.1(b)(3) is to retain any meaning. In the end, every money laundering operation cannot qualify as "sophisticated".

### 4. United States v. Jarrett, (N.D. Ind. 2011)

The defendant created a legitimate company, later received drug proceeds and placed them into the company's bank account, and "paid the drug dealers (and the IRS) from that same account." The defendant "prepared false stock purchase agreements and stock certificates to make it appear that the deposited money orders and cash were for legitimate business investments in his corporate account." Additionally, the government presented evidence that the defendant "prepared false investment documents to disguise the nature of his transactions, utilized corporate bank accounts to disguise transactions, made cash deposits in amounts sufficient to avoid various reporting requirements and gradually withdrew funds from the accounts to avoid detection." The District Court concluded that the scheme was not "sophisticated" under § 2S.1.1(b)(3), because it "was typical of all money laundering operations. [The defendant] took in dirty money, cleaned it up, and kept some for himself." In the court's view, the "concealment" was unsophisticated and typical of money laundering operations.

### 5. United States v. Adepoju (4th Circuit, June 2014)

"We conclude that the district court clearly erred in imposing the sophisticated means enhancement of § 2B1.1(b)(10)(C). This result stems not from weighing the evidence but from the absence of factual findings where the district court gives little, if any, to consider. See Llamas, 599 F.3d at 389. Our conclusion by no means requires that the court find the existence of "highly complex schemes" or "exceptional brilliance to

4

justify a sophisticated means enhancement." The enhancement for sophisticated means does require more than just thoughtful or potentially successful planning. Bank fraud requires plans to wrongfully acquire funds and, where § 1344(1) is at issue, misrepresentation. The presence of forgeries or stolen identification, and a plan to use such material to wrongfully acquire moneys, does not necessarily amount to sophistication. If Adepoju's efforts involved something especially more intricate and complex than what is required to violate the bank fraud statute in its simplest form, the court failed to identify those aspects. To affirm in the absence of such proof would permit enhancement where the mere presence of and plan to use fraudulent materials is combined with a defendant's inability to prove a lack of sophistication. We refuse to endorse such an approach."

*See also United States v. Salgado*, 745 F. 3d 1135 (11th Cir. 2014); *United States v. Puche*, 350 F.3d 1137 (11th Cir. 2003). Cf. *United States v. Torres-Velasquez*, 480 F. 3d 100 (1st Cir. 2007).

The facts of this case fall far short of conduct deserving of the enhancement, since they show how Mr. Ortega's investment in the GS Trade Finance Fund was conducted in the same manner as with all other thousands of investors in the GS Funds across the past two decades, and there were no fictitious entities, no shell corporations, no layering of transactions, and no offshore financial accounts. On the contrary, Mr. Hernandez is a U.S. national, that worked for a U.S. regulated financial service institution, and the GSTF Fund bank and administrator are U.S. entities.

The GS Trade Finance Fund was sophisticated in as much as all investment funds vehicles are sophisticated. There was nothing sophisticated, however, in the manner in which Mr. Ortega's investment was handled or in the investments made. The §2S1.1 enhancement should not be applied. See charts attached as **Exhibit C**. See Also **Exhibit D** and Charts describing how the GS Trade Finance Fund operated and where Mr. Ortega's and the government Confidential Source's investments stand.

5

## IV.  CONCLUSION

Mr. Hernandez respectfully urges the Court to grant his factual objections to the PSR. He also urges the Court <u>not</u> apply the "sophisticated means" enhancement under USSG §2S1.1.

Respectfully submitted,

<table>
<tr><td>

*s/ Howard Srebnick*
Howard Srebnick (FBN 919063)
Email: hsrebnick@royblack.com
Black, Srebnick, Kornspan & Stumpf
201 South Biscayne Blvd., Suite 1300
Miami, Florida 33131
Tel: 305-371-6421
*Co-Counsel for Defendant, Gustavo Adolfo Hernandez Frieri.*

</td><td>

*s/ Michael S. Pasano*
Michael S. Pasano (FBN 0475947)
Email:  mpasano@carltonfields.com
CARLTON FIELDS
2 MiamiCentral
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136
Tel:    (305) 530-0050
Fax:    (305) 530-0055
*Counsel for Defendant, Gustavo Adolfo Hernandez Frieri.*

</td></tr>
</table>

Dated: March 19, 2021