UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS

**UNITED STATES OF AMERICA**

vs.

**GUSTAVO ADOLFO HERNANDEZ FRIERI,**

    **Defendant.**
_____/

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Gustavo Adolfo Hernandez Frieri is scheduled to be sentenced Thursday, March 25, 2021, at 1 p.m. The Government respectfully submits this memorandum in connection with that sentencing. The defendant's United States Sentencing Guidelines ("Sentencing Guidelines") objections are unpersuasive, and his Sentencing Guidelines range is calculated properly by the United States Probation Office ("Probation Office"). As for a variance, the Government still has not received any pleading from the defendant and the Government reserves the right to supplement our position based on any relevant filing the defendant may submit.

**PRELIMINARY STATEMENT**

The defendant, a sophisticated, international businessperson with a law degree, repeatedly used his financial advisory firm, Global Security Advisors ("GSA"), and other entities under his control, including Global Securities Trade Finance ("GSTF"), to launder over $12 million obtained, in part, from co-defendant Abraham Ortega ("Ortega"), which were bribe payments in exchange for Ortega's corrupt acts and decisions in his official capacity as Executive Director of Financial Planning at Petróleos de Venezuela, S.A. ("PDVSA"). The defendant's conduct in

laundering such a large amount of bribes paid to a high-ranking PDVSA official warrants substantial punishment.

The defendant's Sentencing Guidelines range reflect his extensive, deliberate, and serious criminal conduct.  For what he did, the defendant faces an advisory Sentencing Guidelines range of 97 to 121 months' imprisonment and $30,000 to $24 million fine, as set forth in the Probation Office's Presentence Investigation Report ("PSI"), in which the Probation Office recommends a sentence of 97 months' imprisonment and a $30,000 fine.  [ECF No. 331-3.]  The Government submits that to serve the legitimate purposes of sentencing, including promotion of respect for the law and deterrence, the Court should impose a more substantial sentence than that recommended by the Probation Office, one that falls in the middle to high end of the Sentencing Guidelines range.

## BACKGROUND

The defendant engaged in an international money laundering conspiracy involving three separate schemes over the course of more than a year between 2016 and 2017, in which he laundered more than $12 million in U.S. currency through accounts in the United States, as more fully described in the defendant's signed Factual Proffer [DE 165].

*First*, the defendant conspired with Ortega to launder $7 million of the $10 million that Ortega received as a bribe payment for his participation in the Companies C-D Loan Scheme involving PDVSA.  The defendant directed that this $7 million bribe payment be transferred to U.S. Financial Institution 1 in New Jersey, GSTF's custodial bank.  On or about May 26, 2016, at the direction of Ortega and the defendant, the Confidential Source ("CS") transferred $7 million to account number xxxx5724 at U.S. Financial Institution 1 in the name of GSTF, a Cayman Islands entity, which was a fund that the defendant controlled as director and through which, in furtherance of the money laundering scheme, he caused shares issued that were exclusively subscribed to by

2

Ortega. This $7 million was used to purchase shares in GSTF, which were then held in account/portfolio number xxxx9020 at Banca Zarattini in Switzerland in the name of Big Green Valley SA (a shell company controlled by Ortega).

*Second*, the defendant conspired with Ortega to launder $5 million that Ortega received as a bribe payment for his participation in a Joint-Venture Scheme involving PDVSA. On February 21, 2017, the defendant emailed the CS subscription instructions and a subscription agreement for a new class of GSTF shares. This class was specifically created by the defendant to receive Ortega's money. On or about February 28, 2017, at the direction of Ortega and the defendant, the CS transferred approximately $5 million from the CS's account/portfolio number xxxx3311-00 at Deltec Bank & Trust Limited in Nassau, Bahamas (which was an account in which the CS held a portion of Ortega's funds) to account number xxxx6054 at U.S. Financial Institution 1 in New Jersey in the name of GSTF. On March 14, 2017, the $5 million was further transferred to account number xxxx2421 at U.S. Financial Institution 1 in the name of GSTF.

*Finally*, the defendant agreed to launder additional funds unrelated to the PDVSA schemes. On January 10, 2017, the CS wired $300,000 from an undercover law enforcement account in the Southern District of Florida to a U.S. Wells Fargo account held by Global Securities Management LLC, another entity associated with the defendant. Based on his conversations and interactions with the CS, the defendant was aware that there was a high probability that the $300,000 constituted criminally derived proceeds, and the defendant conducted the financial transactions at issue intending to conceal the true illegal origin of the money.

### **THE PSI AND THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The Probation Office sets the defendant's base offense level at 28 because the base offense level for the count of conviction is eight and there is a 20-level increase pursuant to the table in

Section 2Bl.l(b)(l) of the Sentencing Guidelines because the value of the laundered funds exceeds $12,000,000. [ECF No. 331 ¶ 93]. The Probation Office then imposes a two-level enhancement because the defendant was convicted under 18 U.S.C. § 1956 pursuant to Section 2S1.1(b)(2)(B) of the Sentencing Guidelines. [*Id*. at ¶ 94]. The defendant also receives a two-level enhancement for sophisticated laundering pursuant to 2S1.1(b)(3) of the Sentencing Guidelines. [*Id*. at ¶ 95]. Because the defendant accepted responsibility for the offense, the offense level is decreased by two levels pursuant to Section 3E1.1(a) of the Sentencing Guidelines. [*Id*. at ¶ 101]. The Probation Office correctly notes that the Government does not intend to file a motion seeking an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines [*Id*. at ¶ 102] because the defendant has failed "to fully assist in the forfeiture of assets as set forth in this plea agreement." [ECF No. 163 at ¶¶ 7 and 14.]

In accordance with the above, the defendant's total offense level is 30. [*Id*. at ¶ 103]. The defendant has no known prior convictions, so his criminal history category is I. [*Id*. at ¶ 106]. Based upon these calculations, the defendant's advisory Sentencing Guidelines range is 97 to 121 months' imprisonment. [*Id*. at ¶ 161]. Taking into account all of the factors set forth in 18 U.S.C. § 3553(a), including the defendant's age and background, the nature and circumstances of his offenses, and the need to avoid unwarranted sentencing disparities, the Probation Office recommends a sentence of 97 months' imprisonment and a $30,000 fine. [ECF No. 331-3].

The Government concurs with the Probation Office's calculation of the Sentencing Guidelines, however, respectfully submits that to serve the legitimate purposes of sentencing, including promotion of respect for the law and deterrence, the Court should impose a more substantial sentence than that recommended by the Probation Office, one that falls in the middle to high end of the Sentencing Guidelines imprisonment range.

### THE DEFENDANT'S UNRESOLVED OBJECTIONS TO THE PSI

According to the Addendum to the PSI [ECF No. 331-1], the following objections by the defendant to the PSI remain unresolved. While incorporating by reference our Response to the Defendant's Objections to the Presentence Investigation Report [ECF No. 293], we respond briefly below to his specific remaining concerns as contained in his Sentencing Memorandum Part A – Objections to the Pre-Sentence Report and Sentencing Guidelines Calculations ("Sentencing Memo") [ECF No. 345]:

First, the Government takes issue with the defendant's characterization in his introduction to his Sentencing Memo that "[the defendant] was brought into the orbit of Money Flight under the watchful eyes of federal agents and with the urging of their Confidential Source." This statement is misleading and in direct contradiction of the defendant's signed Factual Proffer which states, "[d]uring a recorded meeting in Panama on April 2, 2016, *Ortega introduced the CS* to [the defendant]" [ECF No. 164 at ¶ 9 (emphasis added)]. The defendant was brought into the conspiracy by Ortega, not the CS. [*See also* ECF No. 3 at ¶¶ 61-62 and ECF No. 331 at ¶¶ 47-48].

**1. Objection to Paragraph 11**

The defendant objects to the inclusion that he was under "home confinement" in Italy. According to information provided by the United States Department of Justice, Office of International Affairs, the defendant was arrested in Italy on July 25, 2018, where he was on vacation, and placed on house arrest at his hotel by the Messina court of appeal on July 30, 2018. The Italian court in August 2018 rejected a government request to place him back in custody, but also rejected his request to be authorized to leave the hotel. The Italian Supreme Court of Cassation in March 2019 rejected the defendant's appeal against extradition, and also his appeal against the house arrest orders. The Italian Minister of Justice issued the extradition decree on April 10, 2019

and he was extradited on May 2, 2019. Based on this information, the Government concurs with Probation Office's description as factually accurate and requests the Court to overrule the Defendant's objection.

### 2. Objections to Paragraphs 16-43, 49-50, 55, 56, and 58-76

The defendant makes a series of objections to the Offense Conduct section at the start of the PSI. The defendant does not identify any factual inaccuracies with these paragraphs, and instead argues that it should be explicitly noted that he was not involved in any of the conduct described in paragraphs 16-43, 49-50, 55, 56 and also was not involved in the conduct nor does he know Matthias Krull, described in paragraphs 58-76. The Offense Conduct section – which is only meant to be a summary of the evidence that supports a defendant's plea – accurately identifies the key facts upon which the defendant's plea is based, and is both accurate and concise. The Government's position is that none of these paragraphs allege that the defendant participated in the conduct described nor that he knew Matthias Krull, and the Court should overrule the defendant's objections.

### 3. Objections to Paragraphs 94, 98, and 102 (Sophisticated Laundering Enhancement)

As discussed in the Government's Response to the Defendant's Objections to the PSI [ECF No. 293], the Government submits that the sophisticated money laundering enhancement under Section 2S1.1(b)(3) of the Sentencing Guidelines is both unambiguous and appropriate, and that the Probation Office correctly concluded that it was applicable. Under this section, sophisticated money laundering is defined as a "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." U.S.S.G. § 2S1.1(b)(3) cmt. n. 5(A). It "typically involves the use of" 1) "fictitious entities"; 2) "shell corporations"; 3) "two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving

criminally derived funds that were intended to appear legitimate"; or 4) "offshore financial accounts." *Id*. cmt. n. 5(A)(i)-(iv). Although use of any one of these would justify the enhancement, the defendant used multiple layers, shell corporations, and offshore financial accounts to further the money laundering scheme. *See United States v. Feldman*, 931 F.3d 1245, 1263-64 (11th Cir. 2019) (affirming 2-level enhancement for a single-member, publicly registered limited liability company providing only one layer of insulation); *United States v. Suraneni*, 346 F. App'x 416, 418-19 (11th Cir. 2009) (unpublished) (affirming enhancement for money-laundering scheme that involved two or more layers of transactions and the use of a shell corporation to conceal the source of illicitly derived funds); *United States v. Ellis*, 817 F. App'x 780, 791 (11th Cir. 2020) (unpublished) (affirming enhancement for the use of fictitious transactions, shell corporations, and offshore accounts).

Specifically, the defendant advised codefendant Ortega "how he [] could invest money using his [] investment advisor firm. [ECF No. 164 at ¶ 9]. He "explained that we'll make the transactions in such a way that the purchase will be legitimate" and he "went on to explain how he can avoid being tracked by the authorities that track financial transactions." [*Id.* at ¶ 10]. The defendant directed the transfer of Ortega's $7 million bribe payment to a U.S. bank into an account held by a Cayman Islands entity controlled by the defendant (Transaction 1). The defendant then caused this entity to "issue[] shares to be exclusively subscribed to by Ortega in furtherance of the money laundering scheme." [*Id.* at ¶ 11]. The $7 million was then used to purchase those shares (Transaction 2). [*Id.*]. Those shares "were then held in account/portfolio number xxxx9020 at Banca Zarattini [an offshore account located in Switzerland] in the name of Big Green Valley SA (a shell company controlled by Ortega)" (Transaction 3). The defendant also "created contracts between Great Walls FS (a British Virgin lslands shell company controlled by Ortega) and a

7

company affiliated with [the defendant]" to allow Ortega access to some of the funds. (Transaction 4). [*Id.* at ¶12; *see also Id*. at ¶¶ 14-15 (defendant also used much the same layering scheme to launder Ortega's $5 million bribe]. More than $9.2 million of funds traceable to Ortega's bribery proceeds were transferred to foreign accounts, including to accounts in Colombia. (Transaction 5) [ECF No. 239 at 4; ECF No. 243 at 3; ECF No. 273 at 6]. The defendant acknowledged that more than $2 million traceable to Ortega's funds were also invested in or loaned to domestic entities associated with the defendant, including Domaine Select Wine and Spirits, Alpha Financial Products, Ltd., and Global Securities Management LLC, which is the same entity that the defendant used to receive and launder the $300,000 that was not derived from Ortega. [ECF No. 273, at 6; ECF No. 165 at ¶ 17]. At a minimum, the defendant, by his own admission, created at least five layers—if not more—designed to make Ortega's funds and other illicit money appear legitimate.

The defendant disputes the applicability of the two-level sophisticated laundering enhancement in his Sentencing Memo. He begins his argument by providing the definition of sophisticated laundering under Section 2S1.1(b)(3) cmt. n. 5(A), and then providing the definition of sophisticated means under Section 2B1.1, Subsection (b)(10)(C). What the defendant fails to do is note that he pleaded guilty to money laundering, not acts of fraud or other offenses involving theft or counterfeiting and therefore, as discussed above, and not disputed by the defendant, his base offense level under the Sentencing Guidelines falls under Section 2S 1.1(a)(2) [ECF No. 163 at ¶ 11(i)] not Section 2B1.1. As such, any reliance on the definition contained in Section 2B1.1, Subsection (b)(10)(C) would be an incorrect application of the Sentencing Guidelines, as is the defendant's reliance on *United States v. Landwer* (640 F.3d 769 (7th Cir. 2011)) and *United States v. Adepoju*, 756 F.3d 250 (4th Cir. 2014). Both were fraud cases and not money laundering cases.

Further, the defendant fails in his attempt to bring forward persuasive authority supporting his claim that the sophisticated money laundering enhancement should not apply. Neither one of the two Eleventh Circuit cases cited by the defendant, *United States v. Salgado*, 745 F. 3d 1135 (11th Cir. 2014) and *United States v. Puche*, 350 F.3d 1137 (11th Cir. 2003), involve the application of the sophisticated laundering enhancement. Likewise, the defendant's comparison of those Eleventh Circuit cases to a First Circuit case, *United States v. Torres-Velasquez*, 480 F. 3d 100 (1st Cir. 2007), is equally confusing as that case does not involve the application of the sophisticated laundering enhancement either.

Finally, the defendant's reliance on *United States v. Eckstein*, (10th Circuit, District of New Mexico, 2016), *United States v. Jarrett*, (N.D. Ind. 2011), and *United States v. Maddux* (E.D. Kentucky, 2016), all district court cases falling outside of the Eleventh Circuit, is equally unavailing. In Eckstein, the Government conceded that the defendant did not own, list, or create the fictitious entities that he paid with checks from his own legitimate companies. Here, and discussed above, however, the defendant used at least five layers—if not more—designed to make Ortega's funds and other illicit money appear legitimate. In Jarrett, the defendant created false stock purchase agreements and certificates, but the record is void of any other example of sophisticated laundering and as just discussed, the defendant in this case used multiple layers to conceal his transactions. Last, in Maddux, the defendant employed fictitious entities and only one layer which is easily distinguishable from the multiple layers used by the defendant in this matter.

Respectfully, the Court should deny the defendant's argument and apply the two-level sophisticated laundering enhancement for the reasons set forth above.

### 4. Objection to Paragraph 109

The defendant seeks deletion of the traffic offenses contained in this paragraph. The Government concurs with the Probation Office's description as factually accurate and submits that the defendant's conduct as described goes to the characteristics of the defendant under 18 U.S.C. § 3553(a) as it relates to specific deterrence discussed further below. As such, the Government requests the Court to overrule the defendant's objection.

### 5. Objection to Paragraph 171

The defendant objects to the Probation Office's conclusion that there is no identifiable basis for a variance. The Government's position is that the Court is free under the law to identify a basis for a variance from the Sentencing Guidelines.

### GOVERNMENT'S ARGUMENT UNDER 18 U.S.C. § 3553(a)

Every one of the relevant factors set forth in 18 U.S.C. § 3553(a) strongly weighs in favor of a substantial term of imprisonment.

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

First, the nature and circumstances of the offense warrant a sentence in the middle to high end of the Sentencing Guidelines range. The defendant willfully conspired to launder a total of approximately $12 million that were given to Ortega as bribe payments in exchange for Ortega's corrupt acts and decisions in his official capacity as Executive Director of Financial Planning at PDVSA. In addition, the defendant agreed to launder an additional $300,000 apart from Ortega's monies.

The defendant calculatingly used his businesses and his financial knowledge so that financial transactions involving Ortega's funds would appear legitimate and the bribe proceeds would be available to be directed anywhere for his and Ortega's benefit. Further, the defendant's

criminal activity in this case was not isolated; on the contrary, it extended for more than the course of one year during the conspiracy. During that time, the defendant continued to engage in unlawful conduct, participating in three separate money laundering schemes between 2016 and 2017. A sophisticated, international businessperson with a law degree, like the defendant, should have rejected Ortega's business and the CS's business; instead the defendant placed himself in a pervasive corrupt money laundering conspiracy, triggering his liability. Further, the defendant appears to have laundered Ortega's funds for his own benefit, bolstering a company in which he had made other investments. For example, in 2016 and 2017, the defendant used approximately $2 million of Ortega's money to acquire now-forfeited Series A convertible notes in Domaine Select Wine and Spirits ("DSWS"), investing approximately $1 million in the defendant's own name. [ECF No. 146, at 2; ECF No. 165 at ¶ 17]. Among his current assets, the defendant states that he invested a total of approximately $437,000 in February and April 2017 in DSWS, but "[t]o date the value of the DSWS Series A convertible debt remains uncertain." [ECF No. 238-4.]

Second, as to the defendant's personal history and characteristics, there is nothing remarkable about the defendant's age, education, physical or mental capacity, or family circumstances that suggests that he cannot be imprisoned for a term appropriate to his crime. He may argue that he is entitled to leniency because he has no criminal history. While it is true that the defendant has no prior criminal record, he admitted to participating in three separate money laundering schemes over a greater than one year span; his conduct was not an isolated act. Without knowing the defendant's argument, the Government reserves the right to supplement our position based on any relevant filing the defendant may submit.

Simply put, the defendant's personal history and characteristics do not justify a substantial deviation from his Guidelines range, a range that is consistent with the nature and circumstances of his offense.

**2. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The defendant's offense was extremely serious. As the U.S. Department of State explained in 2001:

> Money laundering has devastating social consequences and is a threat to national security. It provides the fuel for drug dealers, terrorists, illegal arms dealers, corrupt public officials and other criminals to operate and expand their criminal enterprises. Crime has become increasingly international in scope, and the financial aspects of crime have become more complex, due to rapid advances in technology and the globalization of the financial services industry. Modern financial systems, in addition to facilitating legitimate commerce, permit criminals to order the transfer of millions of dollars instantly, using personal computers and satellite dishes. The criminal's choice of money laundering vehicles is limited only by his or her creativity. Money is laundered through currency exchange houses, stock brokerage houses, gold dealers, casinos, automobile dealerships, insurance companies, and trading companies. Private banking facilities, offshore banking, shell corporations, free trade zones, wire systems, and trade financing all have the ability to mask illegal activities. In doing so, criminals manipulate financial systems in the United States and abroad.
>
> Unchecked, money laundering can erode the integrity of a nation's financial institutions. Due to the high integration of capital markets, money laundering could also adversely affect currencies and interest rates as launderers reinvest funds where their schemes are less likely to be detected, rather than where rates of return are higher.
>
> Ultimately, this laundered money flows into global financial systems where it could undermine national economies and currencies. Money laundering is thus not only a law enforcement problem but poses a serious national and international security threat as well.

U.S. Department of State, Money Laundering and Financial Crimes Report, *available at* https://2009-2017.state.gov/j/inl/rls/nrcrpt/2000/959.htm.

Imposing a below-Guidelines sentence would fail to reflect the seriousness of the defendant's offense as well as the threat posed by money laundering more generally, provide

inadequate punishment for the defendant's crime, and send completely the wrong message about respect for our money laundering laws.

### 3. The Need for Adequate Deterrence

This factor also weighs in favor of a substantial sentence. It is particularly challenging to investigate and prosecute successfully international money laundering and corruption schemes, especially where, as here, the scheme involves individuals and actions in multiple countries, foreign bank accounts, and other evidence that is located abroad. This means that when such a scheme is uncovered, and a defendant convicted, a substantial sentence is warranted. *See, e.g., United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks omitted)); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress").

Thus, the Court should impose a sentence significant enough to deter others from using the U.S. financial system to launder illicit funds. The Court cannot leave the impression that money laundering merits only a few years in jail, or can be outweighed by a defendant's good conduct in other respects.

### 4. To Protect the Public From Further Crimes of the Defendant

This is not a situation where the defendant, because of age or health, is no longer capable of carrying out his criminal activity. What he did could be carried out by anyone with his

13

background and experience at any age or condition with access to a phone, a computer, and a bank account. As noted in the U.S. Department of State Report above, "[t]he criminal's choice of money laundering vehicles is limited only by his or her creativity." In addition, while not relevant for criminal history calculation purposes, the defendant has been issued 31 traffic citations since 2001 with multiple citations for the same offenses. [ECF No. 331, at ¶ 110]. Based on his record, the defendant is not an individual who shows respect for the law and is someone who is not easily deterred from committing the same offense more than once. He should be made to understand that the crime of money laundering is a serious federal offense with serious consequences.

Moreover, the defendant has previously failed to heed the orders of this Court in this case. In two instances, when the defendant engaged in conduct that, at a minimum, was inconsistent with the spirt of Court orders, he failed to acknowledge his transgressions and instead focused on his ultimate lack of success in accomplishing his objective. First, after his arrest on a detailed Criminal Complaint, the defendant sought, as director of GSTF and GSA, to access GSTF's account number xxxx6054. This account had been used to launder Ortega's money, as set forth above, and, accordingly, had been restrained for forfeiture by this Court. [ECF No. 32; ECF No. 51; *see also supra* 2]. The United States provided notice to the Court of this incident, and the defendant responded in the following manner: "Accounts have <u>not</u> been touched. <u>Nothing</u> has occurred to cause any 'selling, transferring, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the dissipation, disposal . . . or removal form the jurisdiction of the Court' of these assets." [ECF No. 52 (underline in original)].

Later, at his bond proceedings, the defendant was ordered to pledge his interest in his Miami residence at 597 Hibiscus Lane, and not to "attempt to encumber properties or investments." [ECF No. 101, at 19; ECF No. 103]. After he was released on bond, and without

leave of the Court or advance notice to the Government, the defendant resigned as co-trustee of the revocable trust that held title to the Miami residence, and committed "to resign as co-settlor" as part of his marital settlement with his now ex-wife. [ECF No. 238; ECF No. 238-10; ECF No. 238-11]. The defendant, via his counsel, recently addressed this potential bond violation, stating "[t]he fact that on October 1, 2019, Mr. Hernandez resigned as co-trustee <u>in no way</u> affected Mr. Hernandez's interest in the Miami property. . . . no transfer of interest occurred, and Mr. Hernandez's action in resigning <u>in no way</u> encumbered or alienated the property contrary to his bond restrictions." [ECF No. 332 (underline in original)].

While the Government agrees that the defendant was unsuccessful in both instances, the defendant still acted in a manner inconsistent with the Court's orders. Rather than take responsibility for his conduct, the defendant has sought to recast his actions and explain them away.

As discussed above, the defendant has also failed to properly assist the Government in identifying his actual financial condition, as required by the defendant's plea agreement. The Government has attempted to gather documents and information from the defendant concerning his financial condition, but he has failed to meaningfully "assist" the Government in that process, as he agreed to do in his plea agreement, instead forcing the Government to issue subpoenas and call witnesses to determine whether the family trusts that the defendant claims own and control the property are/were legitimate or actually just a veil hiding the fact that the defendant ultimately owned and controlled the property. [DE 163 at ¶ 14.] In fact, the Government recently learned that the defendant entered into a Joint Defense Agreement with his ex-wife because they have a common legal interest and strategy as it relates to certain disputed property and have apparently worked together to oppose forfeiture with respect to that property. This lack of cooperation as to

financial disclosure and substitute assets indicates that the defendant has not learned from his past criminal conduct to which he pleaded guilty, highlighting the importance of considering specific deterrence in the determination of his sentence.

**5. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

While reserving the right to supplement our position based on any relevant filing the defendant may submit, the Government submits that these factors are not a central basis for sentencing in this case.

**6. The Kinds of Sentences Available**

While reserving the right to supplement our position based on any relevant filing the defendant may submit, the Government submits that this factor does not affect the analysis. There can be no serious argument for any sentence other than imprisonment for this defendant who pleaded guilty to conspiracy to commit money laundering.

**7. The Kinds of Sentence and the Sentencing Range**

As discussed above, the defendant's Sentencing Guidelines range is 97 to 121 months' imprisonment. The Government submits that to serve the legitimate purposes of sentencing, including promotion of respect for the law and general deterrence, the Court should impose a substantial sentence of imprisonment, one that falls in the middle to high end of the Sentencing Guidelines range.

**8. Any Pertinent Policy Statement Issued by the Sentencing Commission**

There are no policy statements in the Sentencing Guidelines that justify a substantial variance for the defendant. If anything, the only relevant policy statement referenced by the defendant cuts against undue leniency. As discussed above, the defendant specifically objected to paragraph 171 of the PSI, positing that there were ample grounds for a departure or variance. In

his filing, the defendant specifically included reference to his significant charitable activities. [ECF No. 290-1]. The Sentencing Guidelines, however, say, as a matter of policy, that there are limits to a sentencing court's consideration of a defendant's prior good deeds. U.S.S.G. § 5H1.11 ("Civic, charitable . . . and similar prior good works are not ordinarily relevant in determining whether a departure is warranted"). The Government reserves the right to supplement our position based on any relevant filing the defendant may submit implicating other policy statements.

**9. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

The purpose of the Sentencing Guidelines is to ensure "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1.3. Application of a within-Guidelines sentence preserves uniformity among sentences. The Government is unaware of any unwarranted disparity between the defendant's proposed sentence and others, however, we reserve the right to supplement our position based on any relevant filing the defendant may submit.

**10. The Need to Provide Restitution to Any Victims of the Offense**

There is no issue of restitution in this case, § 3553(a)(7), so that factor is not addressed here.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court (1) adopt the factual findings in the PSI and its calculation of the defendant's advisory Sentencing Guidelines range, (2) deny the defendant's objections to the PSI, and (3) impose a substantial term of imprisonment at the middle or high end of the applicable Guidelines range of 97 to 121 months' imprisonment, along with a substantial fine, which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully Submitted,

| DANIEL S. KAHN | ARIANA FAJARDO ORSHAN |
| ACTING CHIEF, FRAUD SECTION | UNITED STATES ATTORNEY |

By: */s/ Paul A. Hayden*
PAUL A. HAYDEN
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-353-9370
Email: paul.hayden2@usdoj.gov

By: */s/ Kurt K. Lunkenheimer*
KURT K. LUNKENHEIMER
Assistant United States Attorney
Court ID No. A5501535
U.S. Attorney's Office - SDFL
99 N.E. 4th Street, Suite 600
Miami, FL 33132-2111
Telephone: (305) 961-9008
Facsimile: (305) 536-4699
Email: Kurt.Lunkenheimer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

                                              */s/ Paul A. Hayden*
                                              PAUL A. HAYDEN
                                              Trial Attorney