UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,
      Defendant,

and

OLYMPIA DE CASTRO,
      Third-Party Petitioner,

597 HIBISCUS LANE REVOCABLE TRUST,
      Third-Party Petitioner.
_____/

## OLYMPIA DE CASTRO'S AND 597 HIBISCUS LANE REVOCABLE TRUST'S OBJECTIONS TO REPORT AND RECOMMENDATION ON THE GOVERNMENT'S MOTION TO DISMISS

      Petitioners Olympia De Castro and 597 Hibiscus Lane Revocable Trust filed a Verified Claim and Petition pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) requesting an ancillary hearing to prevent the Government from taking Ms. De Castro's and her three small children's home in Miami, Florida. D.E. 261. The Government filed a Motion to Dismiss the Petition on December 18, 2020. D.E. 264. A Response was filed on January 18, 2021 (D.E. 285), followed by a Reply filed on January 19, 2021 (D.E. 286). On March 7, 2021, the Magistrate Court issued a report, recommending that the Government's motion be granted. D.E. 316.

      Olympia De Castro and 597 Hibiscus Lane Revocable Trust ("the Trust") object to the Report and Recommendation ("R&R") granting the Government's motion. In addition to the arguments herein, Petitioners adopt the arguments raised in their Petition and Response to the Government's motion to dismiss. Petitioners respectfully request oral argument on these Objections.

    **I.**    **LEGAL STANDARD FOR A MOTION TO DISMISS**

      As stated by the Magistrate Court, "[t]o overcome a motion to dismiss, a third party petitioner must establish that [s]he is entitled to relief and that [her] 'legal right, title, or interest in

the forfeited property meets the circumstances set forth in either Section 853(n)(6)(A) or Section 853(n)(B), and, [s]he must allege facts sufficient to state a claim under one of the two provisions.'" D.E. 316, at 6 (citing *United States v. Preston*, 123 F. Supp. 3d 108, 115 (N.D. Ill. Aug. 2013)). "[T]he petition need only state[ ] enough facts to state a claim to relief that is plausible on its face." *United States v. Wolf*, 375 F. Supp. 3d 428 (S.D.N.Y. 2019) (internal quotations omitted). In considering the Government's motion, the Court must assume the facts in the Petition to be true, "but need not do the same for legal conclusions." Fed. R. Crim. P. 32.2(c)(1)(A); *United States v. Daugerdas*, 892 F. 3d 545, 552 (2d Cir. 2018). Like a Rule 12(b) motion to dismiss, the Petition must "be liberally construed in favor of [the third-party Petitioner]." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). If there is any possibility of relief, the case should not be dismissed. *Id.* at 422 (emphasis added). "**As granting a motion to dismiss is a harsh remedy, it must be cautiously studied, both to effectuate the spirit of the liberal rules of pleading and to protect the interests of justice**." *Carlson v. U.S. ex rel. U.S. Postal Service*, 248 F. Supp. 2d 1040, 1043 (N.D. Okla. 2003) (emphasis added).

Here, the facts set forth in the Petition confirm that Olympia De Castro has a legal interest in her home – as Settlor; Trustee and title-holder; Beneficiary; resident; and individual who controls, maintains, and pays for all the bills and taxes of the home.[1] Further, Ms. De Castro has sufficiently established that she is "entitled to relief and that [her] legal right, title, or interest in the forfeited property meets the circumstances set forth in … Section 853(n)(6)(A)."[2] D.E. 316, at 6.

## II.    LEGAL PRINCIPLES

Title 21, section 853(n)(6)(A) provides, with regard to third party interests, that if the court finds that "the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section … the court shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6)(A). As pleaded in the Petition, Ms. De Castro has a legal

---

[1] Neither the Government or the Report and Recommendation dispute that Ms. De Castro has a legal interest in her home.
[2] Petitioners do not assert that they are bona fide purchasers for value in the property pursuant to 21 U.S.C. § 853(n)(6)(B).

right, title, and interest in the home which was vested in her, and not the defendant.[3] Thus, she sought to amend the Second Preliminary Order of Forfeiture (D.E. 239).

The law examines property differently in civil forfeiture and criminal forfeiture matters. Civil forfeiture constitutes an *in rem* proceeding against property. *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001). Criminal forfeiture, however, is an *in personam* action designed to punish the defendant. *Id. See also United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007); *United States v. Kennedy,* 201 F.3d 1324, 1329 (11th Cir. 2000). These are firmly-established principles not only in the Eleventh Circuit, but in all courts.

Moreover, this is a critically important distinction which impacts the Court's consideration of Ms. De Castro's home. Criminal forfeiture can reach "only that property, or portion thereof, owned by the defendant." *Gilbert*, 244 F.3d at 919. Because the foundation of criminal forfeiture is based on punishing the guilty defendant, only property <u>belonging to the defendant</u> is subject to forfeiture. 21 U.S.C. § 853(a) and (p). Further, because of the *in personam* nature of the proceeding, <u>the property itself is not forfeited</u>, but only the defendant's <u>interest</u> in property may be forfeited. *Gilbert*, 244 F.3d at 919; *Kennedy*, 201 F.3d at 1329 (if criminal forfeiture reached beyond the defendant's interest in property, such forfeiture would be *in rem*, not *in personam*). Criminal forfeiture seeks to separate only the defendant from his criminal gains "while leaving undisturbed the interests of innocent third parties who are beyond the court's jurisdiction." *Gilbert*, 244 F.3d at 920. Thus, any interest of an innocent third party Petitioner cannot be forfeited.

Another essential component affecting the Court's decision regarding Ms. De Castro's home is that 597 Hibiscus Lane is a substitute asset, not tainted property obtained from proceeds of the defendant's crime or used in committing the crime. *See* D.E. 239, at 4. Like the innocent third party Petitioner, the property is also "innocent."

As there is a crucial difference between civil and criminal forfeiture, there is also a

---

[3] The Report and Recommendation briefly posits that Petitioners did not "assert[] what relief it seeks under Section 853(n) and amended their joint petition in response to the Motion to Dismiss." D.E. 316, at 12-13. Petitioners, however, stated in their original pleading that their Petition was filed pursuant to § 853(n) and Rule 32.2(c); Mr. Hernandez Frieri did not have a current interest in the home; "[b]ecause Ms. De Castro and 597 Hibiscus Lane Revocable Trust ("Trust") hold all legal right, title, and present interest in the real property 597 Hibiscus Lane, Miami, Florida 33137 ("597 Hibiscus Lane"), the property cannot be forfeited;" and the "home should be excluded from any forfeiture order entered against Gustavo Hernandez Frieri." D.E. 261, at 1-2. *See also id.* at 8-11. Petitioners, therefore, requested appropriate relief in its November 2020 Petition under the appropriate statutory and rule provisions.

significant legal difference in how courts consider substitute assets pursuant to 21 U.S.C. § 853(p). When deciding whether to forfeit tainted property, the Court looks to whether the defendant had title to the property or an interest in the property at the time of his offense. *See* 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) [tainted property] vests in the United States upon the commission of the act giving rise to forfeiture under this section."). This is known as the Relation Back Doctrine.

The Court looks to a different time, however, with regard to substitute property. With substitute assets, the Relation Back Doctrine does not apply. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) ("Consistent with its text, the Court has previously acknowledged that § 853(c) applies to tainted property only."). *See also Luis v. United States*, 136 S. Ct. 1083, 1090 (2016). *Accord United States v. Saccoccia*, 354 F.3d 9, 13 (1st Cir. 2003) (the plain language of the substitute property provision of the statute does not allow the government to reach a third party's untainted assets as a substitute for tainted assets and for which the third party had already transferred prior to the date of forfeiture). Instead, here the Court must look to the defendant's interest in the property <u>at the time of forfeiture</u>, once a finding has been made that any of the conditions of section 853(p)(1) have been satisfied. In Mr. Hernandez Frieri's case, that would be upon the entry of the Second Preliminary Order of Forfeiture on September 28, 2020.

In addition, forfeiture of substitute assets again emphasizes the *in personam* nature of criminal forfeiture. *See also infra,* Section III.B. Pursuant to 21 U.S.C. § 853(p), the Court is only permitted to forfeit substitute "property of the defendant." This is the interest that the Government can potentially seize, not the home and not Ms. De Castro's vested interest in her home.

### III.    ANALYSIS

We begin by addressing the two primary issues discussed within the Report and Recommendation. These issues are whether Ms. De Castro had a superior interest in the home over the defendant[4] and whether the defendant resigned as a co-settlor of the trust owning the

---

[4] D.E. 316, at 12 ("The issue, of course, is not whether Ms. De Castro has some interest in the Miami House but whether she had a superior interest at the time of the commission of the acts that gave rise to the forfeiture of the Miami House.").

home.[5]

### A. Because Ms. De Castro Has A Legal Right, Title, Or Interest in Property Vested In Her Rather Than The Defendant, The Order Of Forfeiture Should be Amended.

For the first issue, the R&R focused its legal analysis on whether Petitioners had a "superior legal interest" in the home over the defendant.[6] This, however, looks to only a portion of 21 U.S.C. § 853(n)(6)(A). Section (n)(6)(A) provides a petitioner two alternative opportunities of relief. Separate and apart from establishing an interest in property superior to the defendant, a petitioner may instead obtain relief if the right, title, or interest in the property "vested in the petitioner rather than the defendant." *Id.* This is the operative portion of the statute that Petitioners focus on in these Objections, which alone authorizes the Court to amend the Preliminary Order of Forfeiture.

It is undisputed that Olympia De Castro has a vested interest in her home. Since 2013, she was a Co-Settlor, Trustee, title-holder, and Beneficiary of the Trust. Additionally, in accordance with established principles of *in personam* criminal forfeiture and substitute asset forfeiture, there is no question that the Court can only forfeit the defendant's interest in the home. The interest of innocent third party Ms. De Castro cannot be forfeited. Because Ms. De Castro has a vested interest in the home that is not the defendant's interest, the home and her interest cannot be forfeited.

These facts and legal principles were laid out within the initial Petition. Petitioners thus have stated a proper "claim upon which relief can be granted." Fed. R. Civil P. 12(b). This is all that is required to proceed to an ancillary hearing. Consequently, the Motion to Dismiss should have been denied.

---

[5] D.E. 316, at 15 ("[T]he critical issue is whether Defendant's resignation was effective to terminate him as a co-settlor and, if so when that occurred vis-à-vis the acts that gave rise to the forfeiture of the Miami House.").

[6] Although the Report and Recommendation ends by saying "the joint petition has failed to show a superior legal interest under Florida law, or that any right, title, or interest vested in the Petitioners as opposed to Mr. Hernandez-Frieri" (D.E. 316, at 28), the analysis considers only the superior interest portion of the statute. *See, e.g.,* D.E. 316, at 6-7.

      i.      **Mr. Hernandez Frieri's Role As Settlor Does Not Permit Forfeiture Of The Home.**

Secondly, the Magistrate Court spends much of its analysis discussing whether Hernandez Frieri resigned as a co-settlor of the 597 Hibiscus Lane Revocable Trust and comparing a co-settlor with Trustee duties versus a co-settlor without Trustee duties. D.E. 316, at 14-28. The R&R concluded that the defendant did not resign as a co-settlor of the trust. D.E. 316, at 18-19 ("Therefore, given this record, we cannot conclude that Defendant revoked his interest in the Florida Trust as a co-settlor with a one sentence 'resignation' in a marital settlement agreement."). For purposes of these Objections, Petitioners will assume that Hernandez Frieri did not resign as a co-settlor. Therefore, the lengthy discussion on this topic in the R&R need not be addressed.

Whether or not Hernandez Frieri could or did resign as a co-settlor, however, does not affect what the ultimate outcome of this forfeiture matter should be – that 597 Hibiscus Lane should not be forfeited. The critical issue is whether Hernandez Frieri has an interest in the home which the Government can forfeit. 21 U.S.C. § 853(a) and (p); *Gilbert*, 244 F.3d at 919; *Kennedy*, 201 F.3d at 1329 (only defendant's interest in the property may be forfeited, not the property itself).

The R&R concentrates on Hernandez Frieri's role as settlor and what interest in the Trust and Trust asset that role provides. It discusses at length several sections of the Florida Trust Code – namely section 736.0603 (duties of trustee owed exclusively to settlor), section 736.0505 (trust asset of revocable trust subject to claims of settlor's creditors during settlor's lifetime) and section 736.0602 (co-settlor of revocable trust can revoke trust with regard to portion of trust that co-settlor contributed). D.E. 316.

These sections, however, are not controlling in this case and do not support a forfeiture of the home. First, the Florida Trust Code provides for two categories of rules – mandatory rules and default rules. Mandatory rules are not subject to revision. They consist of statutory dictates with which parties must comply. The duty of a trustee to act in good faith (section 736.0105(2)(a)) or the requirement that a trust have a lawful purpose (section 736.0105(2)(b)) are examples of mandatory trust rules. Other rules are default rules and are subject to the terms of the trust agreement. If the terms of a trust provide otherwise, the trust instrument controls over a default rule. Fla. Stat. § 736.0105(1).

The sections the R&R and Government rely upon fall within the category of default rules. Thus, if the terms of the Trust provide something different, those terms trump the rules regarding the right to revoke and thus the ability of creditors to access a trust asset. If the Trust had not addressed the question of how revocation could occur, then section 736.0602 might allow a single co-settlor to "revoke … the trust with regard to the portion of the trust attributable to that settlor's contribution." This Trust, however, directed something different.

The language of this Trust instrument provides that Hernandez Frieri cannot revoke the Trust unless Ms. De Castro agreed. Pursuant to Article 4, the Trust can only be revoked by the Grantor – defined as Hernandez-Frieri and Olympia De Castro. *See* D.E. 262-1, at 1 and 4. Hernandez Frieri could never on his own force the revocation of the trust. Both settlors have to agree to revoke the trust. Both Hernandez Frieri and Ms. De Castro as Co-Settlors/Co-Grantors would need to act together to terminate the Trust or dispose of the Trust asset. Hernandez-Frieri could not make any decisions about the Trust or the home alone. And Ms. Castro would never agree to a revocation or amendment which would potentially subject her home to being taken away by the Government.[7]

Once it is understood that section 736.0602 is not mandatory, does not apply to this Trust, and Ms. De Castro as Grantor (co-settlor) cannot be forced to revoke the trust, Hernandez Frieri's interest in the Trust as settlor becomes exceedingly limited. The defendant cannot revoke the Trust with regard to the portion of the trust that he contributed. Accordingly, a creditor cannot reach "the portion of the trust attributable to [Hernandez Frieri's] contribution." Fla. Stat. § 736.0602(2). Equally, the Government cannot step into the shoes of the defendant as a creditor and force the revocation of the asset to take back "the portion of the trust attributable to [Hernandez Frieri's] contribution" (Fla. Stat. § 736.0602(2)(b)). The terms of the Trust do not allow it.

Another basic premise of trust law states that a creditor can only reach what a Trustee could have distributed to a settlor pursuant to the terms of the Trust. *In re Lawrence*, 251 B.R. 630, 642 (S.D. Fla. 2000) ("when a person creates a discretionary trust for his own benefit … his creditors

---

[7] This provision mirrors the same control elements that would apply had Hernandez-Frieri and Ms. De Castro owned the home as husband and wife, not in trust. In that event, as tenants by the entireties, under Florida law neither one alone could have encumbered, transferred, or alienated the home without the joinder of the other one of them.

can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit, even though the trustee in the exercise of his discretion wishes to pay nothing to the beneficiary or to his creditors, and even though the beneficiary could not compel the trustee to pay him anything.") (internal citations omitted).  The only way the Government can seize the trust asset, the home, is if the Settlor (De Castro **and** the defendant) revokes the Trust.  Because Hernandez Frieri alone does not have the ability to revoke the Trust as co-settlor to reach the trust asset, the trust asset is not subject to forfeiture.  We then look to the Trust language to determine what other distributions a Trustee could have made to the defendant which a creditor could attach.  What a Trustee could have distributed to Hernandez Frieri as settlor is governed by Article 5 of the Trust, "Trust Administration."  Pursuant to section 5.1, "[d]uring the Grantor's lifetime, the Trustee may pay to or for the benefit of Olympia De Castro and Gustavo Hernandez Frieri so much of the income of the Trust Estate as the Trustee deems necessary" taking into consideration the accustomed and adequate standard of living of De Castro and Hernandez Frieri and any special needs of De Castro and Hernandez Frieri.  D.E. 262-1, at 4.

As this home was the family residence and did not generate income, however, there was nothing the Trustee could distribute to a settlor.  This Trust Estate did not generate income.  All a creditor can reach is what Hernandez Frieri is entitled to – income.  As stated above, Hernandez Frieri could not revoke the Trust and take back a portion of the Trust Estate.  As a settlor under this Trust, Hernandez Frieri is not entitled to distributions of principal or the corpus of the Trust, only income generated by the Trust Estate to the extent it exists.  Here, it does not.  Hernandez Frieri's interest as co-settlor provides him nothing.  Accordingly, a creditor of Hernandez Frieri or the Government assuming the defendant's interest as settlor is entitled to nothing as well, and certainly not the home.

At best, Hernandez Frieri's rights and interest as settlor gave him veto power over the co-settlor's decisions, and a right to reside at the home.  Neither of these things has an economic value that the Government can seize or the Court can forfeit.

### ii. Mr. Hernandez Frieri Reliquished His Rights As Settlor in the Trust Pursuant to the Marital Settlement Agreement.

Moreover, upon the execution of the marital settlement agreement, Hernandez Frieri renounced his rights as co-settlor and his right to occupy the home except as a guest.  On January

24, 2020, as the couple was divorcing, Ms. De Castro and Mr. Hernandez Frieri executed a marital settlement agreement.  D.E. 262-6.  The marital settlement agreement provided that "[t]he Husband commits to resign as co-settlor.  During the minority of the Children, the Wife shall be entitled to have sole possession of the Primary Residence …."  *Id.* at 10.  This language within the marital settlement agreement served to amend the terms of the original Trust, and was formalized as authorized under the Florida Trust Code upon acceptance by the divorce court.  The intention of section 16.1 of the divorce agreement is clear.  By signing and consenting to the marital settlement agreement, Hernandez Frieri relinquished his rights as settlor and his right to reside at the home (unless given consent).  The actions of the defendant with respect to the Trust were accepted by the divorce court, which as a division of the Circuit Court had jurisdiction over all matters concerning the Trust.

Florida trust law and the Trust itself allows the grantor (settlor) to amend the Trust.  Fla. Stat. § 736.0602(1); D.E. 262-1, at 4 ("[t]he Grantor has the power to alter [or] amend … any Trust provision or interest, whether under this Trust or under any statute or other rule of law.").  *See also Demircan v. Mikhaylov*, 306 So. 3d 142, 147-48 (Fla. 3d DCA 2020) (settlor and beneficiaries together can modify the terms of the trust and direct trustee to hold property on different terms); *Preston v. City Nat'l Bank of Miami*, 294 So. 2d 11, 14 (Fla. 3d DCA 1974) ("The terms of a trust may be modified if the settlor and all the beneficiaries consent.  Having the power to terminate, they obviously have the power to create a new trust or to modify or change the old.").  Amendment can occur by any written instrument which evidences the joint agreement of the settlor and the beneficiaries.  *Demircan*, 306 So. 3d at 147. *See also* Fla. Stat. 736.0602(3).

Here, the co-settlors and co-beneficiaries expressed an intent and consent to amend the Trust.  All the requirements of creation or amendment of a trust were followed.  Fla. Stat. § 736.0402.  Like the original Trust instrument, the divorce instrument was signed by Ms. De Castro, Mr. Hernandez Frieri, and two witnesses.  The agreement between the co-settlors and co-beneficiaries was approved by the Circuit Court.  In addition, the Trust continued to have a Trustee and beneficiaries.  Consequently, the Trust continued, excluding any rights of Hernandez Frieri as co-settlor.

Florida law allows settlors to relinquish their rights to a trust.  *Hansen v. Bothe*, 10 So. 3d 213 (Fla. 2d DCA 2009).  A settlor is simply the person who creates and contributes property to a

trust. Fla. Stat. § 736.0103(18). In some circumstances, a settlor also has certain rights or powers, such as the right to amend a trust. A settlor, though, can give up any rights or powers s/he carries. *Hansen*, 10 So. 3d at 216 (wife, who had been co-settlor and co-trustee with her husband, conceded that after divorce from husband "she relinquished any rights under the trust.… To the extent that [the husband] became the sole grantor/trustee upon divorce, he held sole legal title."). Like the husband and wife in *Hansen*, Ms. De Castro and Mr. Hernandez Frieri had been co-settlors and co-trustees of the Trust, but upon both parties consenting and signing the marital settlement agreement, Hernandez Frieri relinquished his rights as settlor.

After amendment, the Trust was modified from previously allowing two people who were in agreement to revoke the Trust to, after the marital settlement agreement, permitting one person, Olympia De Castro, on her own to revoke the Trust.

The result is the same, however, as the finding above in Section III.A.i. If Hernandez Frieri no longer has the rights and powers of a settlor, he has nothing to give his creditors. Similarly, the Government can receive nothing. Thus, the Government has the same outcome – whether the defendant is a settlor or renounced his rights as a settlor. The defendant's renunciation of his settlor rights following the marital settlement agreement did not diminish what Hernandez Frieri would have been entitled to on the day after the Trust was originally signed – nothing.

The R&R's focus on Hernandez Frieri's role as settlor, therefore, does not justify a forfeiture of the home.

### iii. After The Marital Settlement Agreement, Ms. De Castro's Interest In Her Home Renders the Forfeiture Order Invalid In Whole Because Her Exclusive Interest Is Vested In Her Rather Than The Defendant.

In contrast, because of the Marital Settlement Agreement and modification of the Trust, Olympia De Castro has complete control over the Trust and Trust asset. Hernandez Frieri never had a right to unilaterally revoke the Trust. After signing the divorce agreement, he now also no longer has veto power over Ms. De Castro's decisions regarding the Trust, a beneficial interest, or a right to reside at the home unless he is given permission.[8] The defendant had previously

---

[8] The settlement agreement modified the Trust as follows: "The trust is exclusively for the benefit of the Children. The Husband commits to resign as co-settlor. During the minority of the Children, the Wife

resigned as a Trustee to the Trust.[9]

As the defendant no longer has title in the home or an interest in the home, the legal right, title and interest in the home is vested in whole in a third party. As the remaining Settlor with rights and powers, the remaining Trustee and title-holder, and Beneficiary, Ms. De Castro has legal right, title, and interest in her home that is vested in her rather than the defendant that renders forfeiture of any portion of her home invalid. She alone now controls the Trust and the Trust asset. As a result, the order of forfeiture should be amended prohibiting forfeiture of her home.

### B. Whether Or Not The Defendant Gave Up His Rights As a Settlor or Beneficiary, Ms. De Castro Holds An Interest in Her Home That Is Not Vested In The Defendant; Thus, The Home Cannot Be Forfeited.

Yet whether the Court finds that Hernandez Frieri continues as a co-settlor or beneficiary or whether he gave up his rights as a co-settlor or beneficiary, this does not affect the undisputed fact that Olympia De Castro has an interest in the Trust and in her home. None of the R&R's discussion of settlor's rights and present interest changes that. No matter what the Court decides with regards to the defendant, Olympia De Castro is a Settlor, Trustee, and Beneficiary of the Trust. She has title and a legal and equitable interest in her home. These interests were vested in her dating back to 2013. Therefore, she may legally petition the Court to adjudicate her interest in her home, request an ancillary hearing, and request the Court to amend the forfeiture order. 21 U.S.C. § 853(n)(2). Further, her interests are vested in her rather than her former husband. Thus, the motion to dismiss should be denied and "the Court [should] amend the order of forfeiture

---

shall be entitled to have sole possession of the Primary Residence …." *Id.* Following the marital settlement agreement and its acceptance by the divorce court, the trust existed for the benefit of Olympia De Castro and her three children.

Like Hernandez-Frieri's previously-held settlor rights – the right to veto co-settlor Trust decisions and reside at the home - his beneficial interest had no monetary value which could be forfeited. Because Ms. De Castro would never agree to revoke the Trust allowing the Government the ability to seize her and her children's home, the most Hernandez Frieri could receive as a beneficiary is income from the Trust asset. Because the Trust asset is used as a family residence, however, there is no income to distribute.

[9] The Report and Recommendation does not dispute or take issue with the fact that Gustavo Hernandez Frieri resigned as Trustee of 597 Hibiscus Lane Revocable Trust on October 1, 2019. It notes that "[n]either party takes issue with that resignation." D.E. 316, at 17, fn. 5.

It adds that the Government argued that if the defendant resigned as a co-trustee, this would have resulted in a fraudulent transfer because there was no consideration for the resignation and the transfer would have left Hernandez Frieri insolvent. Petitioner strongly disagrees with this argument. However, since the Magistrate Court did not address or rule whether resignation as a co-trustee resulted in a fraudulent transfer, Petitioners also will not address that argument here.

in accordance with [this] determination." 21 U.S.C. § 853(n)(6).

Even if the Court finds that Hernandez Frieri maintains an interest in the home in some fashion, section 853(p) (Forfeiture of Substitute Property) does not permit forfeiture of Ms. De Castro's home. Courts have found that the Government's far reaching forfeiture power has limits. Because criminal forfeiture is an *in personam* proceeding, the property itself is not forfeited, but only the defendant's <u>interest</u> in property may be forfeited. *Gilbert*, 244 F.3d at 919; *Kennedy*, 201 F.3d at 1329.

Ms. De Castro also has an interest. The extent of Ms. De Castro's interest is left to be determined at an ancillary hearing. At a minimum, Ms. De Castro has a vested one-half interest in the home which is not the defendant's interest. The Magistrate Court agrees "that the interests between [the defendant] and [Ms. De Castro] are, in material respects, equal." D.E. 316, at 28. *See also* D.E. 316, at 14 ("Defendant's resignation as a co-settlor is a significant question because – if that never took effect – *the Government may be right that the interests between him and Ms. De Castro are equal*.") (emphasis added). This is where the difference between forfeiture of tainted property and forfeiture of substitute property becomes absolutely crucial. While section 853(n) speaks only to forfeiture of the "property,"[10] section 853(p) specifically describes substitute property as "property *of the defendant*." This is the potential interest that is forfeitable, not the home and not Ms. De Castro's interest in her home.

The case of *United States v. Lester*, 85 F.3d 1409, 1412-13 (9th Cir. 1996) speaks directly to this important distinction. Like the facts before the Court for Mr. Hernandez Frieri and Ms. De Castro, the husband in *Lester* was indicted and later convicted of a federal offense. *Id.* at 1410. The wife was not indicted and there was no allegation that she was involved in any criminal wrongdoing. At sentencing, the Government sought to forfeit substitute property. The trial court entered a preliminary order of forfeiture of various properties, including a piece of real property owned by the husband and the innocent wife. *Id*. The wife filed a petition seeking her interest in the real property. The Government argued that the interests of both spouses could be forfeited and the district court agreed. On appeal, the Ninth Circuit considered "whether the

---

[10] All the subparts of section 853(n) refer to property. *See, e.g.* 21 U.S.C. § 853(n)(2) ("Any person, other than the defendant asserting a legal interest in property which has been ordered forfeited to the United States ….").

Government can use the 'substitute property' provision in the criminal forfeiture statute, 21 U.S.C. § 853(p), to seize an innocent spouse's interest in community property to satisfy the forfeiture obligations of the guilty spouse." *Id.* at 1411. The *Lester* court noted again that the Government was not seeking forfeiture of property "which is directly or indirectly linked to the criminal activity of the guilty spouse." *Id.*, fn. 3. Instead of tainted assets, the "appeal involves 'substitute property,' which by its very nature is 'not connected to the underlying crime.'" *Id.* After performing a state law analysis regarding whether the wife had an interest in the real property, the appellate court concluded that the wife had an undivided one-half ownership interest in the real property.

The appellate court then looked to federal law to determine whether the wife's interest could be forfeited pursuant to section 853(p). The court first looked directly to the statute: "The plain language of section 853 provides instructive guidance. Section 853(p) states that only the substitute '*property of the defendant*' may be forfeited to the Government. Moreover, section 853(n)(6)(A) provides that a third party claiming an interest in the property may 'render [ ] the order of forfeiture invalid in whole or in part [if] the right, title, or interest [in the forfeited property] was vested in the [third party] rather than the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section….'" *Id.* at 1412-13 (internal citations omitted). Because the husband only owned an undivided one-half interest in the real property, the wife owned a vested one-half interest in the property which was not the defendant's and not subject to forfeiture. *Id.* at 1413. This conclusion "not only comports with the plain language of section 853, but it also is consistent with the underlying legal proposition that a criminal forfeiture is an *in personam* judgment *against a person convicted of a crime*." *Id.* (emphasis in original) (internal citations omitted). "Our decision also heeds the Supreme Court's recent admonition that 'improperly used, forfeiture could become more like a roulette wheel employed to raise revenues from innocent but hapless owners …, or a tool wielded to punish those who associate with criminals, [rather] than a component of a system of justice.'" *Id.* (citing *Bennis v. Michigan*, 516 U.S. 442, 456 (1996) (Thomas, J., concurring)). Lastly, the court concluded "**where the property subject to forfeiture is not connected in any way to the guilty spouse's criminal activities, but rather is 'substitute property,' it is even clearer that only the property of the defendant … is subject to forfeiture**." *Id.* at 1415 (emphasis added). Thus, the

court held that the innocent wife's vested property interest was not subject to criminal forfeiture as substitute property. *Id.*

The Eleventh Circuit and Florida District Courts have also determined that an innocent wife's interest in property cannot be criminally forfeited.

- *United States v. Jimerson*, 5 F.3d 1453 (11th Cir. 1993): The court did not perform the in depth analysis as the *Lester* court did, but still concluded that the innocent spouse's one-half interest in property was not criminally forfeitable. In that case, the husband and wife owned a home. The husband used the home to facilitate the commission of the federal offense, rendering it tainted property. The court held that the wife could not take back the entire home. The court stated, however, that "[t]he judgment of forfeiture did not affect [the innocent spouse's] *interest* in the residence. Rather, she continues to hold an indivisible one-half interest in the entire residence property. Thus, the only property interest taken by the Government is the interest held by [the defendant husband]." *Id.* at 1454 (emphasis added).

- *United States v. Fleet*, 498 F.3d 1225 (11th Cir. 2007): The Eleventh Circuit assumed without elaboration that an innocent wife's one-half interest in property was not forfeitable. In *Fleet*, the husband was convicted of federal offenses, including money laundering. The government sought substitute property to satisfy part of the forfeiture judgment since the defendant did not have enough tainted assets to cover the full money judgment. The government sought the guilty husband's interest in cars and a house he owned with his wife. The Eleventh Circuit noted "[t]he order did not propose to forfeit the interest of [the defendant's] wife in any of that property, only his own interest." *Id.* at 1227.

- *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000): Even though the case involved tainted property, the court emphasized that the government had only a right to seek forfeiture of the husband's *interest* in the home, not the home itself. *Id.* "All parties agree that the government's interest, if any, is limited to [the defendant's] one-half interest in the property. [**The innocent wife's] one-half interest was never subject to forfeiture**…." *Id.* (emphasis added). The Eleventh Circuit held, though the innocent wife could not establish a claim to the husband's forfeited interest, *her* interest "remain[ed] unaffected by the [the appellate court's] decision." *Id.*

- *United States v. Morris*, 2020 WL 2515965 (M.D. Fla. April 15, 2020): Magistrate Judge found that an innocent wife's one-half interest in a home could not be forfeited. The husband in *Morris* pleaded guilty to conspiracy to commit money laundering. Following the husband's change of plea, the Government sought to forfeit the family's home as a substitute asset. *Id.* at *2. The defendant's innocent wife filed a Petition asserting her claim to a one-half interest in her home. The Magistrate Judge performed an analysis and concluded that the innocent wife had a valid one-half interest in her home. The Report and Recommendation found that while the Government could seize the husband's interest,

the innocent wife's claim was valid as to *her interest* and it could not be forfeited.  *Id.* at *7.  The district court subsequently adopted the Report and Recommendation.  *United States v. Morris*, 6:18-cr-159-LRH (M.D. Fla. May 15, 2020).

Here, like in *Jimerson* and *Kennedy*, the Eleventh Circuit directs that only a defendant's *interest* in property may be forfeited; an innocent wife's interest in property cannot be taken.  Further, as in *Lester, Fleet*, and *Morris,* "where the property subject to forfeiture is not connected in any way to the guilty spouse's criminal activities, but rather is 'substitute property,' it is even clearer that only the property of the defendant … is subject to forfeiture." *Lester*, 85 F.3d at 1415.  Olympia De Castro is an innocent ex-wife with at least a clear one-half interest in the property.  While the Court may rightfully punish the guilty defendant and seek to separate him from any assets in which he has an interest, it should leave undisturbed the rights and interests of innocent third party Ms. De Castro and exclude her "innocent" home from a future forfeiture order.  *Gilbert*, 244 F.3d at 920.   As "a component of a system of justice," criminal forfeiture should not punish the innocent.  *Bennis*, 516 U.S. at 456.

Olympia De Castro is an undisputed innocent owner with an interest in substitute property.  She should not be treated like a criminal.   She should not be attacked and divested of her legal, innocent interest in property.  Her interest in her home is not her former husband's interest.  Thus, her interest should not be forfeited.

*\*\**

"A court shall not grant a motion to dismiss unless it appears beyond doubt that a [Petitioner] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Bensch*, 855 F. Supp. at 352.   If there is any possibility of relief, the Petition cannot be dismissed.  *Jenkins*, 395 U.S. at 422.

Petitioners have provided a multitude of facts establishing Ms. De Castro's interest and have demonstrated that they have a possibility of relief and a lawful claim.  Therefore, the Government's motion to dismiss the Petition should be denied and Petitioners Objections to the Report and Recommendation should be sustained.   Ms. De Castro should be permitted to continue her fight for her home.   This is the only appropriate ruling which will "effectuate the spirit of the liberal rules of pleading and [ ] protect the interests of justice."   *Carlson*, 248 F.Supp.2d at 1043.

WHEREFORE, Olympia De Castro and the 597 Hibiscus Lane Revocable Trust respectfully moves this Court to sustain their Objections to the Report and Recommendation.

> Respectfully submitted,
> MARKUS/MOSS PLLC
> 40 N.W. Third Street
> Penthouse One
> Miami, Florida   33128
> Tel: (305) 379-6667
> Fax: (305) 379-6668
> markuslaw.com
>
> By:   /s/ A. Margot Moss
>       A. Margot Moss
>       Florida Bar Number 091870
>       mmoss@markuslaw.com
>
>       /s/ David Oscar Markus
>       David Oscar Markus
>       Florida Bar Number 119318
>       dmarkus@markuslaw.com