# EXHIBIT 1



 **❄ UBS**

**UBS Switzerland AG**
Investment Products & Services –
Client Flow Management and Platform
FUNDS CIM
PEZH NORD 1 EUR-158
Postfach
8098 Zurich
Switzerland

Tel. +41 44 239 19 10
Fax +41 44 239 02 65
SH-FUNDS-CIM@ubs.com

www.ubs.com

May 25, 2016

Pinnacle Fund Administration LLC
15720 John J. Delaney Drive, Suite 206
Charlotte, NC 28277

United States

001 704 752 8996
richcourt@pinnacleadmin.com

---

**Initial Subscription**

Dear Sir or Madam,
We would like to place the following order for **next official Trade Date available for all clients:**

- **Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-**
  Fund Identifier: **XD0325969505**
  Amount: **USD 7'000'000.00**
  In words: seven million

- **Registration / Settlement**
  Please subscribe for account:

| UBS Switzerland AG / YY8811503 |
|---|

**Payment**
Please confirm when you require the cleared funds at latest.

**Notes**
**Order rejects are only accepted by phone and NOT by fax!**
Please confirm receipt of this order and send the contract note if available quoting our reference
**271772119** by fax or by email to:

**Fax +41 44 239 02 65**
**SH-FUNDS-CIM@ubs.com**

Yours sincerely
UBS Switzerland AG

Marc Aschwanden
Director

Fabian Brunner
Associate Director

## GLOBAL SECURITIES TRADE FINANCE

### SUBSCRIPTION INSTRUCTIONS
### <u>FOR NON-U.S. PERSONS</u>

Any person desiring to subscribe for Shares of Global Securities Trade Finance (the "Fund") should:

(a) complete and execute one copy of the attached Subscription Agreement (the "Agreement"), offering to purchase a specified dollar amount of Shares on a specified date (the "Purchase Date") at their Offering Price (as described in the Fund's Confidential Explanatory Memorandum, as amended from time to time);

(b) complete and execute a U.S. Internal Revenue Service Form W-8BEN, W-8ECI, W-8IMY, or W-8EXP (as applicable);

(c) complete the attached anti-money laundering documentation as required per Schedule B, and

(d) send the completed and executed copy of the originals referred to above by facsimile to the Fund Administrator at least 3 business days in advance of subscription date at +704 752 8997 with the completed and executed originals to follow by mail or courier to: Global Securities Trade Finance, c/o Apex Fund Services (Charlotte) LLC, 15720 Brixham Hill Avenue, Suite 206 Charlotte, NC 28277, email address: charlotteir@apexfunds.us.

The Fund will advise each subscriber promptly of its provisional acceptance of any offer to subscribe for Shares of the Fund, but the Fund reserves the right to rescind its provisional acceptance if for any reason the Fund determines not to issue Shares.

Payment in United States currency by bank-to-bank wire transfer in the full amount of the subscription must be received by the Fund at least one business day prior to the Purchase Date pursuant to the payment instructions below. Please instruct your bank to charge any applicable wire fees separately.

Payment by wire transfer referencing the subscriber's name should be sent to:

| | |
|---|---|
| Bank Name: | City National Bank |
| | 900 Broad Street, Newark, NJ 07102 |
| Swift Code: | CNNJUS33 |
| ABA No.: | 021201639 |
| Account Name: | Global Securities Trade Finance |
| Account No.: | 1465724 |
| REFERENCE: | Investor's Name |

In order to comply with Cayman Islands anti-money laundering regulations applicable to the Fund and the Fund's administrator, the letter contained in Schedule A is required to be sent from the financial institution responsible for remitting subscription monies on behalf of the person desiring to subscribe for Shares.

UBS SWITZERLAND AG IS ACTING AS
NOMINEE FOR ITS UNDERLYING CLIENT

### SUBSCRIPTION AGREEMENT
### FOR NON-U.S. PERSONS

Global Securities Trade Finance
c/o Apex Fund Services (Charlotte) LLC
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277
(Tel: +1 704 752 8996)
(Fax: +1 704 752 8997)

\* USD 7'000'000.00

seven million

Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Dear Sirs:

The undersigned (the "Subscriber") hereby acknowledges receipt of the Confidential Explanatory Memorandum, as amended from time to time (the "Memorandum") of Global Securities Trade Finance, an exempted company incorporated under the laws of the Cayman Islands (the "Fund"). Terms not defined herein will be as defined in the Memorandum.

1.    Having reviewed the Memorandum, the Subscriber hereby agrees with the Fund, subject to the Fund's provisional acceptance, to subscribe for as many of the Fund's non-voting participating shares (the "Shares"), as may be purchased for U.S.$_  \* Next official Trade Date available for all clients "Purchase Date") at the Offering Price (as described in the Memorandum) as of the opening of business on the Purchase Date.

2.    The Subscriber agrees that it will make full payment in the amount of its subscription in accordance with the payment instructions attached hereto in time sufficient to be received by the Fund at least one business day prior to the Purchase Date. The Subscriber agrees that any Shares of the Fund hereby subscribed for will be held subject to the terms and conditions of the Memorandum, the Memorandum and Articles of Association of the Fund, as amended from time to time, and this Agreement and recognizes that the Fund will protect and indemnify its officers, directors and other representatives against liability to the extent set forth in the Articles of Association.

3.    The Subscriber agrees to indemnify and hold harmless the Fund, Global Securities Advisors LLC (the "Investment Manager"), Global Securities Advisors GP, LLC, Apex Fund Services (Charlotte) LLC (the "Administrator") and their respective directors, members, partners, shareholders, officers, employees, agents and affiliates from and against any and all losses, liabilities, damages, penalties, costs, fees and expenses (including legal fees and disbursements) that may result, directly or indirectly, from any inaccuracy in or breach of any representation, warranty, covenant or agreement set forth in this Subscription Agreement or in any other document delivered by the Subscriber to the Fund, or from the Subscriber's assertion of its proper authorization to act.

4.    (a) In consideration of the Fund's acceptance of the aforesaid offer and recognizing its reliance thereon, the Subscriber agrees, represents and warrants to the Fund that the Subscriber:

(i)    is not (or, if the Shares purchased under this Subscription Agreement (the "Agreement") are being acquired by the Subscriber as nominee or custodian for another person or entity, such person or entity is not) a natural person resident in, or a corporation or partnership or other entity organized or incorporated in or under the laws of, the United States of America, its territories or possessions (hereinafter collectively referred to as a "United States person");

(ii)    is not an entity 50% or more of the beneficial interests in which are owned, directly or indirectly, by United States persons;

(iii)    in the case of an entity which has less than 50% of its beneficial interest owned by U.S. persons, was not formed for the purpose of investing in the Fund (e.g., in the case of a Subscriber which is an investment fund, the investment in the Fund does not constitute more than 40% of the Subscriber's net assets) and it will promptly notify the Fund if this is not the case;

1

(iv)      in the case of a trust, does not have any beneficiaries or trustees that are United States persons;

(v)      will not transfer directly or indirectly any of the Subscriber's Shares or any interest therein (including without limitation any right to receive dividends or other distributions) to a United States person or to any other person or entity unless (A) the proposed transferee has made representations and warranties similar to those contained herein (including without limitation those relating to the U.S. Securities Act of 1933, as amended (the "Act")) and such representations and warranties have been approved by the Fund, (B) such Shares are registered pursuant to the provisions of the Act or an exemption from registration is available, and (C) the Fund has consented to such transfer;

(vi)      will not, if the Shares purchased under this Agreement are being acquired by the Subscriber as nominee or custodian for another person or entity, permit the beneficial owners of such Shares to transfer any beneficial interest in the Shares, directly or indirectly, to any person or entity unless the representations made by the Subscriber in this Agreement will continue to be true;

(vii)      did not acquire (except as specifically authorized by the Fund) and will not transfer any of its Shares within the United States of America, its territories or possessions (hereinafter collectively referred to as the "United States");

(viii)      did not engage (except as specifically authorized by the Fund) and will not engage in any activity relating to the sale of the Shares of the Fund in the United States;

(ix)      is acquiring the Shares solely for its own account for investment (or, if the Subscriber is acting as a nominee or custodian for another person or entity, the Shares are being acquired for that person or entity) and not with a view to distribution or resale;

(x)      the Subscriber (i) has the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund; (ii) is aware of the risks inherent in investing in securities and the method by which the assets of the Fund are held and/or traded, and (iii) can bear the risk of loss of its entire investment; and

(xi)      is not a member of the public in the Cayman Islands.

(b)    The Subscriber agrees to supply the Fund with such other facts, including the nationality and residence of relatives, as from time to time are deemed necessary or desirable in order to avoid the loss of a contemplated tax benefit to the Fund or any of its respective shareholders and in order to ascertain that no violation by the Fund shall occur of any securities laws of the United States or any other relevant jurisdiction, including the Act, the U.S. Investment Company Act of 1940, as amended (the "1940 Act"), and the U.S. Investment Advisers Act of 1940, as amended.

5.   **Benefit Plan Investor Status**      | DECLARATIONS REFER TO THE UNDERLYING CLIENT |

In order for the Fund to accurately monitor its Benefit Plan Investor participation, please review the following definitions and make the appropriate representations by checking all applicable boxes following the definition.

A "Benefit Plan Investor" is (i) any employee benefit plan subject to the fiduciary responsibility provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) any individual retirement plan or account subject to the prohibited transaction rules of Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") or (iii) any entity whose underlying assets include "plan assets" (as defined by ERISA and the regulations thereunder) by reason of a plan's investment in the entity.

2

The Subscriber represents that it is (please check all applicable boxes):

A.  ☑   not a Benefit Plan Investor; or

B.  ☐   a Benefit Plan Investor that is:

    1.   ☐   subject to Part 4 of Title I of ERISA;

    2.   ☐   subject to Section 4975 of the Code (that has not checked B1);

    3.   ☐   an entity whose underlying assets include "plan assets". The Subscriber also represents that the percentage of its "plan assets" compared to the value of its total assets or included in its general account is not more than:

☐ 10% *  ☐ 20% *  ☐ 30%  ☐ 40%
☐ 50%    ☐ 60%    ☐ 70%  ☐ 80%
☐ 90%    ☐ 100%;

(* applicable to entities with multiple classes, one of which exceeds the 25% threshold for Benefit Plan Investors and to U.S. insurance company general accounts)

    4.   ☐   a group trust, a bank common or collective trust or an insurance company separate account.

       The Subscriber further agrees (i) to notify the Investment Manager 30 days prior to this representation (or any part thereof) no longer being true or likely to become untrue and (ii) to provide the Investment Manager upon request such information as may be required to confirm and/or refine the representations provided above.

       6.   Any Subscriber that is investing the assets of a benefit plan or account and the person executing this Agreement on behalf of such Subscriber acknowledge that it is intended that the Fund will not hold "plan assets" subject to Title I of ERISA or Section 4975 of the Code (i.e., less than 25% of each class of the Fund's equity interests will be held by Benefit Plan Investors). Accordingly, the Subscriber acknowledges that the Fund and Global Securities Trade Finance Master Fund Ltd. (the "Master Fund") have the authority to require the retirement or redemption of all or some of the Shares held by any Benefit Plan Investor if the continued holding of such Shares, in the opinion of the Board of Directors, could result in the Fund or the Master Fund being subject to Title I of ERISA or Section 4975 of the Code. Further, the Subscriber and the person executing this Agreement represent and warrant to the Fund and the Investment Manager that:

       (a)  With respect to the investment in the Fund and thereby in the Master Fund, it has been determined that the purchase of Shares is consistent with the fiduciary responsibilities under applicable law, including ERISA and the Code, and that (i) the investment in the Fund is prudent, (ii) the structure, operation and incentives of the fee arrangements have been adequately disclosed, further the interests of the Subscriber and provide reasonable compensation to the Investment Manager, (iii) the Subscriber's current and anticipated liquidity needs will be met, given the limited rights to redeem or transfer the Shares, (iv) the investment will permit the Subscriber's overall portfolio to remain adequately diversified and (v) the investment and investment program described in the Offering Memorandum are permitted under the laws, rules and documents governing the Subscriber.

       (b)  The persons executing this Agreement (i) are solely responsible for the decision to invest in the Fund, (ii) in making the decision to invest in the Fund, have not relied on any advice or recommendation from the Fund, the Investment Manager, any placement agent associated with the Fund, or any of their affiliates with respect to the investment in the Fund and (iii) are qualified to make such investment decision and, to the extent deemed necessary, have consulted their own investment advisors and legal counsel regarding the investment in the Fund.

       7.   (a)  If the Subscriber is an entity, the person executing this Agreement for the Subscriber represents that it has the full power and authority under the Subscriber's governing

instruments to do so and the Subscriber has the full power and authority under its governing instruments to acquire Shares of the Fund.  If the Subscriber is acting as trustee, agent, representative or nominee for another person or entity, the Subscriber understands and acknowledges that the representations, warranties and agreements made in this Agreement are made by the Subscriber (A) with respect to the Subscriber, and (B) with respect to such other person or entity.  Furthermore, the Subscriber represents and agrees that (X) it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, (Y) the execution, delivery and performance by it of this Agreement are within its powers, have been duly authorized by all necessary action on its behalf, require no action by or in respect of, or filing with, any governmental body, agency or official (except as disclosed in writing to the Fund) in order to make this investment, and does not contravene, or constitute a breach of or default under any provision of applicable law or governmental rule, regulation or policy statement or of its certificate of incorporation or other comparable organizational documents or any agreement, judgment, injunction, order, decree or other instrument binding upon it, and (Z) this Agreement constitutes a valid and binding agreement of the Subscriber and is enforceable against the Subscriber in accordance with its terms.

(b) If the Subscriber is an individual, the Subscriber agrees that this Agreement constitutes a valid and binding agreement of the Subscriber and is enforceable against the Subscriber in accordance with its terms, and the Subscriber has legal competence and capacity to execute the same.

8.   (a) The Subscriber agrees that on the complete or at least 90% partial redemption of its Shares in the Fund, the Subscriber will, subject to the terms of the Memorandum, (unless share certificates, if any, have not been delivered) receive 90% of the estimated Redemption Price (as defined in the Memorandum) generally within 30 days following the date of redemption.  The Subscriber acknowledges that, promptly after the Fund has determined the Net Asset Value of the Shares as of the redemption date (which in the Fund's discretion may be after the Fund's annual audit), the Fund will pay to the Subscriber the balance, if any, of the amount to which it is entitled, or the Subscriber will repay to the Fund the excess, if any, of the amount previously paid over the amount to which the Subscriber is entitled, in each case without interest thereon.

(b) The Subscriber agrees that its obligation to make the repayment in the event of an overpayment as described in Section 12 of the Memorandum will endure notwithstanding the performance by it of all other obligations under this Agreement.

9.   The Subscriber agrees that a legend reading substantially as follows may be placed on each share certificate issued to the Subscriber pursuant to this Agreement and that the Fund may take all steps it may deem necessary or desirable to see that the restrictions contained herein are complied with:

"The Common Shares represented by this certificate are subject to certain restrictions which limit the transfer of these shares or any interest therein (including without limitation the right to receive dividends or other distributions) and such shares have not been registered under the U.S. Securities Act of 1933, as amended, and may be offered and sold only if an exemption from registration is available, in accordance with a Subscription Agreement dated between the shareholder and Global Securities Trade Finance, a copy of which is on file at the registered office of the Fund."

10. Set forth below are the names of persons authorized by the Subscriber to give and receive instructions between the Fund (or its Administrator) and the Subscriber, together with their respective signatures.  Such persons are the only persons so authorized until further written notice to the Administrator signed by one or more of such persons.

(please attach additional pages if needed)

(continued on next page)

4

| Names | Signatures |
|---|---|
| | |
| PLEASE REFER TO UBS SWITZERLAND AG SIGNATURE LIST | |
| | |
| | |
| | |

11. The Subscriber agrees that all or any funds payable to the Subscriber (including redemption proceeds) may be wire transferred to the Subscriber in accordance with the following instructions (which is the same account from which the Subscriber's investment was first remitted, unless the Fund agrees otherwise), until further written notice, signed by one or more of the individuals authorized to act on behalf of the Subscriber under Section 10 above, to the Administrator.

> **USD**
> INTERMEDIARY: UBS AG, STAMFORD BRANCH (UBSWUS33)
> BENEFICIARY BANK: UBS SWITZERLAND AG (UBSWCHZH80A)
> BENEFICIARY NAME: UBS SWITZERLAND AG FUNDS EXECUTION
> BENEFICIARY ACCOUNT: CH180023023000051002K

12. The Subscriber hereby authorizes and instructs the Administrator and the Fund to accept and execute any instructions in respect of the Shares to which this Agreement relates given by the Subscriber in written form or by facsimile. If instructions are given by the Subscriber by facsimile, the Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund and agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

13. The Fund and the Administrator reserve the right to request such evidence as is necessary to verify the identity and source of funds of a prospective investor. The Subscriber acknowledges that the Administrator and the Fund shall be held harmless and indemnified against any loss arising as a result of a delay or failure to process this application or a redemption request if any evidence required by such parties, in order to satisfy applicable anti-money laundering rules, has not been provided by the Subscriber. In order to comply with the anti-money laundering regulations applicable to the Fund and the Administrator, the letter annexed hereto as Schedule A MUST be completed by the financial institution that will be remitting the subscription monies on behalf of the Subscriber.

14. (a) The Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any U.S. or international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by

---

[1]   The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]   Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

the Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(b)  The Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with the Subscriber, a Prohibited Person, and (ii) to the extent the Subscriber has any beneficial owners[4], (A) it has carried out thorough due diligence to establish the identities of such beneficial owners, (B) based on such due diligence, the Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (C) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of the Subscriber's complete redemption from the Fund, and (D) it will make available such information and any additional information that the Fund may require upon request in accordance with applicable regulations.

(c)  If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, be obligated to freeze the Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or the Subscriber's investment may immediately be involuntarily redeemed by the Fund, and the Fund may also be required to report such action and to disclose the Subscriber's identity to OFAC or other authority.  In the event that the Fund is required to take any of the foregoing actions, the Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(d)  The Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

15.  The Subscriber acknowledges and understands that if, as a result of any information or other matter which comes to his attention, any person resident in the Cayman Islands (including the Fund, its Directors and the Administrator) knows or suspects that another person is engaged in money laundering, such person is required to report such information or other matter pursuant to the Proceeds of Criminal Conduct Law (2007 Revision) of the Cayman Islands, and such report will not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

16.  The Subscriber recognizes that the Fund is restricted by law as to the number of U.S. persons that can hold Shares in the Fund, and, that in determining the number of U.S. persons holding Shares, if the Subscriber is an investment company (an "Investment Company") as defined in Section 3(a) of the 1940 Act or an Investment Company that is exempt from registration pursuant to Section 3(c)(1) or Section 3(c)(7) of the 1940 Act (a "3(c)(1) or 3(c)(7) Company"), it will be necessary to count the beneficial owners of the Subscriber that are U.S. persons if it owns 10% or more of the Shares in the Fund.  Accordingly, the Subscriber agrees (A) to notify the Fund prior to subscribing for Shares if it is an Investment Company, a 3(c)(1) Company or a 3(c)(7) Company, (B) to take whatever action, if any, is requested by the Fund to have its holdings of Shares be less than 10% of the total issued Shares in the Fund and (C) that the Fund may at any time require the Subscriber to redeem so many of its Shares as is necessary to keep such interest below 10%.

---

[3]  Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate.  A post office box or electronic address would not be considered a physical presence.  A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]  Beneficial owners will include, but not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund-of-funds; (v) the grantor of a revocable or grantor trust; (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity.  If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners.  If the Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

17. The Subscriber recognizes that non-public information concerning the Subscriber set forth in this Agreement or otherwise disclosed by the Subscriber to the Fund, or other agents of the Fund (such as the Subscriber's name, address, social security number, assets and income) (collectively, the "Information") (i) may be disclosed to the Fund's Administrator, Investment Manager, attorneys, accountants and auditors in furtherance of the Fund's business and to other service providers such as brokers who may have a need for the Information in connection with providing services to the Fund, (ii) to third party service providers or financial institutions who may be providing marketing services to the Fund provided that such persons must agree to protect the confidentiality of the Information and use the Information only for the purposes of providing services to the Fund and (iii) as otherwise required or permitted by law.  The Fund and Investment Manager restrict access to the Information to their employees who need to know the Information to provide services to the Fund, and maintain physical, electronic and procedural safeguards that comply with U.S. federal standards to guard the Information.

18. By executing this Agreement, the Subscriber specifically agrees that it will keep confidential and will not disclose to third parties (other than its tax or other financial advisors under like conditions of confidentiality) any and all information regarding the Fund, including Fund performance.

19. The Subscriber hereby acknowledges and agrees that the Administrator may relocate any documentation, records or other property of the Fund in the custody of the Administrator (including, without limitation, the statutory records and registers of the Fund and records verifying the identity of Shareholders and transactions effected) from the Cayman Islands to another offshore jurisdiction without seeking the prior approval of the Fund, the Investment Manager or any Shareholder if, in the opinion of the Administrator, such relocation is necessary in order to prevent or mitigate loss or damage to such documentation, records or other property of the Fund or to enable the continuation of any of the services provided by the Administrator to the Fund.

20. The Subscriber agrees that (a) the statements, representations, warranties or covenants made hereunder will be deemed to be reaffirmed by it at any time it purchases or otherwise acquires additional Shares of the Fund and such purchase or acquisition will be evidence of such reaffirmation and (b) if any of the statements, representations, warranties or covenants made herein become untrue or inaccurate, the undersigned shall immediately notify the Fund.

21. (a)      This Agreement shall be binding upon the Subscriber and its successors and permitted assigns and shall inure to the benefit of the Fund's successors and assigns.  This Agreement shall survive the acceptance of the subscription and if the Subscriber consists of more than one person, shall be the joint and several obligation of each person.

(b)      If any provision hereof shall be found invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent and its invalidity or in-operability shall not affect any other provision hereof.

22. Electronic Delivery of Reports and Other Communications.   The Fund, the Investment Manager and/or the Administrator acting on their behalf, may provide investors (and/or their designated agents) statements, reports and other communications relating to the Fund and/or the investor's investment in the Fund, including NAV information, subscription and redemption activity, annual and other updates of the Fund's consumer privacy policies and procedures ("Fund Information"), in electronic form, such as E-mail, in lieu of or in addition to sending such communications as hard copies via fax or mail.  E-mail messages are not secure and may contain computer viruses or other defects, may not be accurately replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient.  The Fund, the Investment Manager and the Administrator make no warranties in relation to these matters.  The Administrator reserves the right to intercept, monitor and retain E-mail messages to and from its systems as permitted by applicable law.  If an investor has any doubts about the authenticity of an E-mail purportedly sent by the Fund, the Investment Manager or the Administrator, the investor is required to contact the purported sender immediately.

Please check the appropriate box:

☑ Subscriber hereby agrees to receive Fund Information in electronic form in lieu of or in addition to separate mailing of paper copies.

☐ Subscriber declines to receive Fund Information in electronic form in lieu of or in addition to separate mailing of paper copies.

    23. At least 48 hours prior to executing this Agreement, the Subscriber received a current copy of Part II of the Form ADV of the Investment Manager.

    24. This Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands.

Dated: _____, _____
May 25, 2016

Very truly yours,

**UBS Switzerland AG / YY8811503**
_____
Print Subscriber's Name

☐ Subscriber is a Controlled Person[5]

_____
Signature of Subscriber or Authorized Signatory

Markus-F Fischer                    Fabian Brunner
Authorized Officer                  Associate Director
_____
Print name of Subscriber or Authorized Signatory

Address of Subscriber:

Contacts

> REGISTERED ADDRESS:
> UBS SWITZERLAND AG
> BAHNHOFSTRASSE 45
> 8001 ZURICH
> SWITZERLAND
>
> PHONE +41 44 239 19 10
> FAX +41 44 239 02 65
> SH-FUNDS-CIM@ubs.com

Tel

Fa

E-n

Name and Address of Bank
Wiring Instructions:

Bank

> **USD**
> INTERMEDIARY: UBS AG, STAMFORD BRANCH (UBSWUS33)
> BENEFICIARY BANK: UBS SWITZERLAND AG (UBSWCHZH80A)
> BENEFICIARY NAME: UBS SWITZERLAND AG FUNDS EXECUTION
> BENEFICIARY ACCOUNT: CH180023023000051002K

The foregoing offer is hereby accepted
subject to the Memorandum, the conditions set
forth and the decision of the Directors of the
Fund to issue the Shares

Additional copies of correspondence from
The Fund should be sent to:

Global Securities Trade Finance

By: _____
      Name:
      Title:

_____
[5]      A "Controlled Person" is (i) any person (including an entity) with investment authority or responsibility over the Fund's
assets or (ii) any person controlling, controlled by or under common control with a person described in (i).

## SCHEDULE A

**PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE REMITTED. FAILURE TO PROVIDE SCHEDULE A TO THE ADMINISTRATOR MAY RESULT IN A DELAY IN PROCESSING YOUR SUBSCRIPTION**

[to be placed on letterhead of the financial institution remitting payment]

Date:

Via mail and facsimile:
Global Securities Trade Finance
c/o Apex Fund Services (Charlotte) LLC
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277
Tel:  +1 704 752 8996
Fax: +1 704 752 8997

Dear Sirs:

**RE:    GLOBAL SECURITIES TRADE FINANCE**

1.      Name of Remitting Financial Institution:
2.      Address of Remitting Financial Institution:
3.      Name of Customer:
4.      Address of Customer:
5.      Name of Customer Account Being Debited:
6.      Account number Being Debited:
7.      We have credited your account at, Account Number: for [amount] by order of [customer] on [date].

The above information is given in the strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

Yours faithfully,

Signed:          _____

Full name:      _____

Position:        _____

10

## PLEASE REFER TO UBS SWITZERLAND AG AML LETTER

### SCHEDULE B

ANTI-MONEY LAUNDERING REQUIREMENTS BY INVESTOR TYPE

PLEASE ATTACH REQUIRED DOCUMENTATION DEPENDING ON INVESTOR TYPE AND RETURN TO ADMINISTRATOR WITH SUBSCRIPTION DOCUMENTATION

| Individual | |
|---|---|
| AML ID Required | Comments/Notes |
| Certified Photo ID | • Either Passport, National Identity Card or Driver's License<br>• Needed for account holder and those authorized to sign (e.g. those who have a power of attorney) |
| A statement of the individual's street address | • Always obtain a street address and not just a PO Box<br>• For example utility bill, bank statements. |
| **Other Pooled Vehicle:**<br>**Pension Fund, Hedge Fund, Private Equity Fund, Fund of Funds, Venture Capital Funds (whether organized as a Limited Liability Company, Limited Partnership or Unit Trust)** | |
| Certified copy of Memorandum and Articles of Assoc. or Articles of Incorporation or Partnership Agreement or Trust Deed | • As applicable based on the structure of the fund |
| Certified copy of Certificate of Incorporation or Equivalent | |
| Certified Identification of Directors, those authorized to sign and shareholders with 20% investment in the fund | |
| Obtain confirmation that AML ID has been carried out on the investors in the PV | |
| List of authorized signatories | |
| Certificate of Incumbency | |
| Copy of Prospectus or equivalent | |
| **Corporation (Listed)** | |
| Confirmation of Listing | |
| [Audited Financial Statements] | |
| List of all Directors of the corporation | |
| List of authorized signatories | |
| **Corporation (Unquoted)** | |
| Certified copy of Memorandum and Articles of Assoc. or Articles of incorporation | • Obtain address verification of entity as set out above for Individual |
| Certified copy of certificate of incorporation or equivalent | |

11

| Certified identification of Directors, those authorized to sign and shareholders with 20% investment in the Corporation | |
| --- | --- |
| List of authorized signatories | |
| Certificate of Incumbency | |
| List of Directors | |

## AML IDENTIFICATION = CDD

| Trust (Personal) | |
| --- | --- |
| Certified copy of Declaration of Trust Deed or redacted sections as applicable | • Should include a list of all Settlors and Beneficiaries |
| Certified identity verification of Trustee | |
| Certified identity verification of Settlor and Beneficiaries | |
| | |

| Limited Partnership [General Partnership]–where the GP makes an investment on behalf of the LP | |
| --- | --- |
| Confirmation from the GP that AML ID has been carried out on each Limited Partner | |
| Certified copy of Partnership Agreement or redacted sections as applicable | |
| Certified copy of Certificate of Registration as applicable | |
| Certified identity of Partners and others who are empowered to give instructions | |
| Evidence of authority of general partner to subscribe in the Fund on behalf of the partnership | |
| List of authorized signatories | |
| Certificate of Incumbency | |
| Most recent audited financial statements | |

If the investor is not wiring its subscription money via a first class FATF bank, the Administrator may request a notarized copy of the ID document.

SAS/ 638862/7497562v1

<u>SCHEDULE C</u>

## The Source of Funds Declaration

To:     (Institution's name and location)

UBS Switzerland AG / YY8811503

Time: _____

Date: May 25, 2016

1)      I, UBS Switzerland AG / YY8811503 understand that I am making this declaration for my own protection as well as for the protection of the investment institution and the administrator.                                    seven million

2)      I declare that the funds totaling ___USD 7'000'000.00___, which are used to purchase shares / units / interest in _____ (name of investment institution) represent funds obtained by the undersigned from the following source:

client's money

3)      Consent is hereby given to this investment institution or administrator to disclose this transaction to those institutions which are legally entitled to receive the information contained here in.

Cust

UBS SWITZERLAND AG IS ACTING AS NOMINEE FOR ITS UNDERLYING CLIENT

Customer's address

Signature       Markus-F Fischer
                Authorized Officer                Marc Aschwanden
                                                  Director

13



UBS Switzerland AG
Investment Products & Services –
Client Flow Management and Platform
FUNDS CIM
PEZH NORD 1 EUR-158
Postfach
8098 Zurich
Switzerland

Tel. +41 44 239 19 10
Fax +41 44 239 02 65
SH-FUNDS-CIM@ubs.com

www.ubs.com

# Anti-Money Laundering Compliance

May 25, 2016

**to** Pinnacle Fund Administration LLC
15720 John J. Delaney Drive, Suite 206
Charlotte, NC 28277
United States

**pages** 2 (including this page)

**subject** **Anti-Money Laundering Compliance**   for UBS Switzerland AG / YY8811503

Dear Sir or Madam,

We, **UBS Switzerland AG** ("**UBS**"), have our registered address at Bahnhofstrasse 45, CH-8001 Zurich, Switzerland and are regulated by the Swiss Financial Market Supervisory Authority (FINMA).

We hereby confirm that:

1. In Switzerland, UBS - as well as its parent company UBS AG - is subject to the provisions of the Anti Money Laundering Act, FINMA's Money Laundering Ordinance and the Agreement on the Swiss Banks' Code of Conduct with regard to the Exercise of Due Diligence Agreement (CDB 2016). Outside Switzerland, all UBS entities are subject to regulation by relevant local regulators and to all applicable local laws and regulations in respect of anti-money laundering and combating terrorist financing (all together "**AML Regulations**").

2. UBS has in place an anti-money laundering program including policies and procedures designed to comply with the Recommendations of the Financial Action Task Force on Money Laundering and Terrorism Financing (FATF) and all AML Regulations and "Know your Customer" requirements applicable to the relevant UBS locations (the "**UBS Policies**"). UBS AG is a founding member of the Wolfsberg Group of Banks and the substance of the UBS Policies reflect the Wolfsberg Standards.

3. In accordance with the applicable AML Regulations and UBS Policies, UBS conducts thorough due diligence in respect to all clients for whom we invest into products ("**Fund Investor**"). This includes verifying the identity and address of the Fund Investor as well as of the source of the funds and where the Fund Investor is an entity, verifying the identity of the persons establishing the business relationship, obtaining statutory documents and evidence that the persons executing any documents on behalf of the Fund Investor are properly authorized. Where the beneficial owner differs from the Fund Investor, this includes establishing the identity of the beneficial owner(s).

4. UBS has implemented and maintains risk management systems, controls and processes to identify politically exposed persons (PEP). In addition to performing normal due diligence, UBS has performed and will continue to perform enhanced due diligence on clients who have been identified as PEP.

5. In accordance with the applicable AML Regulations and UBS Policies, UBS retains all relevant verification documentary evidence of the identity of clients for a period of at least five (5) years following the termination of the relationship with the client.

6. UBS has in place (1) separate systems to perform ongoing automated monitoring and ongoing automated screening of transactions and (2) procedures to ensure compliance with economic sanctions and embargoes laws, including the sanctions regimes promulgated by the United Nations (UN), the European Union (EU), the Swiss State Secretariat for Economic Affairs (SECO) and Directorate of Public International Law (DV), the U.S. Office of Foreign Asset Control (OFAC) as well as those pursuant to Section 311 of the U.S. Patriot Act.

7. With reference to Section 312 of the U.S. Patriot Act, UBS Policies (1) require clients operating under an offshore banking license to be rated "higher risk" and to be subject to enhanced due diligence and (2) prohibit the opening and maintaining of a business relationship with a shell bank.

8. Relevant UBS personnel regularly undergo anti-money laundering, sanctions compliance, and combating terrorist financing training.

9. UBS conducts independent testing to ensure that the programs required by the applicable AML Regulations and the UBS Policies have been implemented and continue to be appropriately maintained.

10. Should there be any significant issue in the aforementioned AML procedures, we will inform the relevant competent authorities in the relevant jurisdictions as required by applicable law.

11. Upon request and to the extent permitted by applicable law, UBS will furnish you with any documentary evidence related to anti-money laundering compliance retained by UBS that you may require in order to comply with any request from any regulatory authority, law enforcement agency or court of competent jurisdiction. In the event that local laws prevent the supply of such documents, the information will only be released on the request of a competent authority.

We are aware that the receiver of this AML letter is placing reliance on this letter for customer due diligence purposes other than monitoring.

Yours sincerely,

UBS Switzerland AG

Marc Aschwanden
Director

Fabian Brunner
Associate Director

# EXHIBIT 2

| From: | Komal Ramkirath |
|---|---|
| To: | Gustavo Hernandez |
| Subject: | Fw: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C- |
| Date: | Wednesday, May 25, 2016 3:01:25 PM |
| Attachments: | 01_UBS_Fund_Order.pdf |
| | 02_UBS_Glb Secs C_USD_MI_USD_7"000"000.00.pdf |
| | 03_UBS_AML.PDF |
| | UBS AG and Switzerland Signature List.pdf |

Gustavo,

FYI, it looks like the Class C investment is moving along, UBS has submitted the Subscription Agreement and the Admin is going through their due diligence process.

Only thing is that UBS has not confirmed that the subscriber (their client) is Banca Zarattini as yet. And the investment will be $7MM, not $8MM.

I have told the Admin that the subscription/trade date should be June 1st.

---

**From:** Assa Ulli <assau@apexfunds.us>
**Sent:** Wednesday, May 25, 2016 12:47 PM
**To:** Komal Ramkirath
**Cc:** Christian Lyles
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi Komal,

I ran through our due-diligence of the investor, all looks good to receive funds. The only exception is confirming that the origins of the funds did come from their bank account. I can not confirm that until the money moves. I believe UBS the investor is waiting on us to confirm that they should wire the money. In addition to this they have a few more points (listed below) they need us to confirm, I believe you would have more information on these items since this is a new class. Below are the points to be confirmed back to UBS:

- **receipt of our subscription for next official Trade Date available for all clients**
- What is the subscription/dealing date for this Investor? (requested in the sub docs)
- **the latest day you require the cleared funds**
- **the Swift Message Type for cleared funds (MT103/MT202)**
- **if you require original forms by courier**

Thanks,

**Assa Ulli**
**Apex Fund Services**
15720 Brixham Hill Avenue, Suite 206,
Charlotte, NC 28277

Tel:       +1 704 752 8996
Direct:   +1 704 927 5411
Fax:       +1 704 752 8997

Follow us on Twitter:



**www.apexfundservices.com**



Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman Islands | China | Dubai | Guernsey | Hong Kong | India | Ireland | Isle of Man | Japan | Jersey | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | USA

This e-mail and any files transmitted with it are confidential and may be privileged; they are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the individual responsible for delivering the e-mail to the intended recipient, then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify us. The views or opinions expressed in this e-mail are solely those of the author and do not necessarily represent those of the company or its associated companies.

**WARNING: From time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of those instructions.**

**Please consider the environment before printing this email**

**From:** Christian Lyles
**Sent:** Wednesday, May 25, 2016 11:04 AM
**To:** Assa Ulli
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Handing it off from here.  If you could confirm the things mentioned below to UBS.

**Christian Lyles**
**Senior Account Manager**
**Apex Fund Services (Charlotte) LLC**
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277

Email:    christianl@apexfunds.us
Tel:      +1 704 752 8996
Direct:   +1 704 927 5416
Fax:      +1 704 752 8997

Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman | China | Cyprus | Dubai | Guernsey | Hong Kong | Ireland | India | Isle of Man | Jersey | Japan | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | **USA** |

This e-mail and any files transmitted with it are confidential and may be privileged; they are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the individual responsible for delivering the e-mail to the intended recipient, then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify us. The views or opinions expressed in this e-mail are solely those of the author and do not necessarily represent those of the company or its associated companies.

**WARNING: From time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of those instructions.**

🖨 **Please consider the environment before printing this email**

**From:** shkumbin.salihu@ubs.com [mailto:shkumbin.salihu@ubs.com] **On Behalf Of** sh-funds-cim@ubs.com
**Sent:** Wednesday, May 25, 2016 11:02 AM
**To:** Christian Lyles
**Cc:** stephanie.diethelm@ubs.com; sh-funds-ta-information@ubs.com; sh-funds-execution@ubs.com
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Dear Christian,

Please find attached our initial subscription for **USD 7'000'000.00** in **Glb Secs C_USD_MI** for UBS Switzerland AG / YY8811503.

Please confirm:

- **receipt of our subscription for next official Trade Date available for all clients**
- **the forms are in good order**
- **the latest day you require the cleared funds**
- **the Swift Message Type for cleared funds (MT103/MT202)**
- **if you require original forms by courier**

If further details are required do not hesitate to contact us.


Kind regards
Shkumbin Salihu

------------------------------------------------------------
**UBS Switzerland AG**
Investment Products & Services - Client Flow Management and Platform Funds Execution

Europastrasse 1, CH-8152 Opfikon
Mail address: P.O. Box, CH-8098 Zürich

Phone: +41 44 239 19 10
Fax: +41 44 239 02 65
Email: SH-FUNDS-CIM@ubs.com

**From:** Bleuler, Sandra **On Behalf Of** SH-Funds-TA-Information
**Sent:** Mittwoch, 25. Mai 2016 16:44
**To:** Diethelm, Stephanie; Salihu, Shkumbin
**Cc:** Christian Lyles; SH-Funds-TA-Information
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Dear All

can you please act on this urgently?

Thanks
Sandra

**From:** Christian Lyles [mailto:christianl@apexfunds.us]
**Sent:** Mittwoch, 25. Mai 2016 16:42
**To:** SH-Funds-TA-Information
**Cc:** 'kramkirath@gsadvisors.net'; Assa Ulli
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi Sandra,

If you could please fill out the attach form and return to us.  Once we have this we can do our due diligence and get the instructions over to you once we have completed the checks.

Regards,

**Christian Lyles**
**Senior Account Manager**
**Apex Fund Services (Charlotte) LLC**
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277

Email:   christianl@apexfunds.us
Tel:      +1 704 752 8996
Direct:  +1 704 927 5416
Fax:      +1 704 752 8997

Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman | China | Cyprus | Dubai | Guernsey | Hong Kong | Ireland | India | Isle of Man | Jersey | Japan | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | **USA** |

This e-mail and any files transmitted with it are confidential and may be privileged; they are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the individual responsible for delivering the e-mail to the intended recipient, then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify us. The

views or opinions expressed in this e-mail are solely those of the author and do not necessarily represent those of the company or its associated companies.

**WARNING: From time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of those instructions.**

🖨 **Please consider the environment before printing this email**

**From:** sandra.bleuler@ubs.com [mailto:sandra.bleuler@ubs.com] **On Behalf Of** sh-funds-ta-information@ubs.com
**Sent:** Wednesday, May 25, 2016 10:20 AM
**To:** Christian Lyles; sh-funds-ta-information@ubs.com
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi Christian

UBS Switzerland AG or an underlying client will be the investor for the below mentioned fund. According to Swiss Law, we cannot provide you any name of clients. To have all our systems ready to make a prepayment if the fund accepts the subscription, we need
to set up a "predefine" in our payment tool with your payment instruction.

Thanks for checking urgently.

Best Regards
Sandra

**From:** Christian Lyles [mailto:christianl@apexfunds.us]
**Sent:** Mittwoch, 25. Mai 2016 16:13
**To:** SH-Funds-TA-Information
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Sandra,

Can you tell me the name of the person wiring the funds in?

**Christian Lyles**
**Senior Account Manager**
**Apex Fund Services (Charlotte) LLC**
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277

Email:   christianl@apexfunds.us
Tel:      +1 704 752 8996
Direct:  +1 704 927 5416
Fax:     +1 704 752 8997

Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman | China | Cyprus | Dubai | Guernsey | Hong Kong | Ireland | India | Isle of Man | Jersey | Japan | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | **USA** |

This e-mail and any files transmitted with it are confidential and may be privileged; they are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or the individual responsible for delivering the e-mail to the

intended recipient, then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify us. The views or opinions expressed in this e-mail are solely those of the author and do not necessarily represent those of the company or its associated companies.

**WARNING: From time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of those instructions.**

🖶 **Please consider the environment before printing this email**

**From:** sandra.bleuler@ubs.com [mailto:sandra.bleuler@ubs.com] **On Behalf Of** sh-funds-ta-information@ubs.com
**Sent:** Wednesday, May 25, 2016 10:03 AM
**To:** Christian Lyles
**Cc:** sh-funds-ta-information@ubs.com
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi Christian

as just discussed I would much appreciate it if you can get the payment instructions to us.

Thanks

Sandra Bleuler
Specialist Trade Date Services Offshore Funds Processing, Securities, UBS Group Operations
Internal Tel: 1923 92607 I External Tel: +41 44 239 2607 I Fax: +41 44 239 9528
Personal e-mail: sandra.bleuler@ubs.com I Group e-mail: sh-Offshore_Funds@ubs.com
**Securities: Delivering operational & service excellence.**

goto/funds-primary *The one stop shop for WM client advisors, to address the most commonly asked Fund Order related questions.*

Sandra

**From:** Bleuler, Sandra **On Behalf Of** SH-Funds-TA-Information
**Sent:** Mittwoch, 25. Mai 2016 15:47
**To:** GSTFinvestorservices@pinnacleadmin.com
**Cc:** SH-Funds-TA-Information
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Dear All

can you please provide us with the Wire instructions for above mentioned Fund?

We have a pending subscription of 7 mio usd for Value DATE TODAY.

Thanks

Sandra Bleuler
Specialist Trade Date Services Offshore Funds Processing, Securities, UBS Group Operations
Internal Tel: 1923 92607 I External Tel: +41 44 239 2607 I Fax: +41 44 239 9528
Personal e-mail: sandra.bleuler@ubs.com I Group e-mail: sh-Offshore_Funds@ubs.com
**Securities: Delivering operational & service excellence.**

goto/funds-primary *The one stop shop for WM client advisors, to address the most commonly asked Fund Order related questions.*

**From:** Sonnbichler, Eveline-Martina **On Behalf Of** SH-Funds-TA-Information
**Sent:** Montag, 23. Mai 2016 10:29
**To:** richcourt@pinnacleadmin.com
**Cc:** SH-Funds-TA-Information
**Subject:** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Dear Sir or Madam

We kindly request that you provide us with the latest payment instructions, including the necessary SWIFT format (MT202 'bank transfer' / MT103 'customer transfer'), in order to enable us to send you orders for the below fund(s).
Please either send the Payment Instruction or the relevant fund documents containing this information.

**Fund Name:** Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-
**ISIN:** XD0325969505
**CCY:** USD
**Shortname:** Glb Secs C/USD/MI

This e-mail is not indicative that we have an order to place, we have simply opened the instrument in systems.
In order to comply with audit requirements, we require confirmation that the payment instructions you send us match the instructions we have on record from the fund's subscription document.
This request is to confirm our systems contain the correct, up-to-date payment instructions for the fund, thus enabling UBS to process payments to the fund as soon as a subscription has been placed and accepted by the fund.

Many thanks and kind regards
Eveline-Martina Sonnbichler
----------------------------------------------------------

**UBS Switzerland AG**
Investment Products & Services - Client Flow Management and Platform
Funds Execution

Europastrasse 1, CH-8152 Opfikon
Mail address: P.O. Box, CH-8098 Zürich

Phone: +41 44 239 19 10
Fax: +41 44 239 02 65
Email: SH-FUNDS-CIM@ubs.com

# EXHIBIT 3

| | |
|---|---|
| **From:** | Pedro Binaggia |
| **To:** | Gustavo Hernandez |
| **Subject:** | Fwd: I: Ref.: New fund/share class GSTF Class C |
| **Date:** | Wednesday, May 11, 2016 9:27:06 AM |
| **Attachments:** | GSTF Subscription Agreement (Non US).pdf |
| | Apex Group-FATCA-CRS-Entity-Form.pdf |
| | Docs da fare firmare a Ortega A..pdf |
| | W8BEN-E (DEVE FIRMARE DIRECTOR).pdf |

Hola Gustavo. Aqui está la repuesta del Banco.

Saludos

Pedro

P:D: Recuérdale porfa a tu hermano el draft de mi contrato

**Oggetto: I: Ref.: New fund/share class GSTF Class C**

Mi sono confrontata con il compliance e Gadda ed ecco il riepilogo.

Per quanto riguarda le copie dei documenti societari che bisognerà fornire, possiamo fare la copia degli statuti che abbiamo nel nostro dossier.

1. Il cliente deve firmare l'ultima pagina del Form Apex Entity form, per la compilazione ci possiamo pensare noi.

2. Il cliente deve firmare i nostri docs interni che ti ho allegato (W8ben + Qualified Investor LICOL)

3. Il cliente deve compilare il Form. GSTF Subscription Instr. a partire dalla pagina nr. 10 e firmare (fino alla pagina nr. 9 faremo noi)

4. Per quanto riguarda il W8ben-E deve firmarlo il Director (tra l'altro l'avevo già inviato a Laura/Alessandro 10 giorni fa).

**Da:** mdmsecurities@yahoo.com [mailto:mdmsecurities@yahoo.com]
**Inviato:** venerdì, 6. maggio 2016 16:09
**A:** Anna Ozmen
**Oggetto:** Fwd: Ref.: New fund/share class GSTF Class C

Inviato da iPhone

(Inizio messaggio inoltrato)

> **Da:** "Roberto Malnati" <r.malnati@tensigma.ch>
> **Data:** 6 maggio 2016 15:31:15 CEST
> **A:** <mdmsecurities@yahoo.com>
> **Oggetto: Ref.: New fund/share class GSTF Class C**

Sentiamoci per questo

Ciao !

R

# EXHIBIT 4



July 27, 2016
**UBS Switzerland AG / YY8811503**

UBS Switzerland AG
Bahnhofstrasse 45
Zurich 8001
Switzerland

## Global Securities Trade Finance

We confirm the shareholding value in the above fund at June 30, 2016 to be as follows:

| Share Series | Shares | Prev NAV | NAV per share | Performance | Market Value |
|---|---|---|---|---|---|
| Global Securities Trade Finance Class C Series C-1 | 6,930.000 | 1,000.000 | 997.423 | -0.26% | 6,912,138.44 |

Total Value of USD Shares:   **USD 6,912,138.44**

Please contact Brian Smith on +1 704.752.8996 if you require any further information.

# EXHIBIT 5

**From:** Jorge Montano
**To:** Komal Ramkirath; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez; Vanessa Hernandez
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-
**Date:** Tuesday, May 31, 2016 9:44:10 AM
**Attachments:** image001.png

Komal,
I will perform the transfer to the Class C account and look into the "Internal Transfer" availability on the online banking profile. The funds will be placed on hold until we receive the Due Diligence review that Apex has performed on the investor of the funds.

Thank you for choosing City National Bank

Jorge Montano |Customer Support |City National Bank of New Jersey
900 Broad Street, Newark, NJ 07102 | T: 973-624-0865 ext. 0046 | F: 973-643-4028
Online Banking Dir: 855-816-2627 | E: jmontano@citynatbank.com | W: www.citynatbank.com



**From:** Komal Ramkirath [mailto:kramkirath@gsadvisors.net]
**Sent:** Tuesday, May 31, 2016 9:25 AM
**To:** Jorge Montano; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez; Vanessa Hernandez
**Subject:** Re: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Jorge,

It appears the $7mm is now available in the GSTSF operating account, can you please confirm?

If it is, can I now internally transfer it into the GSTF Class C account, this needs to be done asap today in order to not affect the monthly end financials of the other classes, this is urgent. Do I need to set up a template?

If not still availavble, can you at least have it posted to the GSTF Class C account and out of the regular operating account, as CHB is only awaiting the due diligence on our Administrator (Apex) and not the investor so there should be no risk there.

If I do need to set up a template for the internal tra, please give me a call, I just tried calling but got your voicemail.

Thanks,
Komal

Komal Ramkirath
Global Securities Advisors, LLC
**Phone:** 212.905.4945
kramkirath@gsadvisors.net

**From:** Jorge Montano <jmontano@citynatbank.com>
**Sent:** Friday, May 27, 2016 8:42 AM
**To:** Komal Ramkirath; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez; Vanessa Hernandez
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Komal,
That's correct. Compliance needs to see the DD on Apex.

Thank you for choosing City National Bank

Jorge Montano |Customer Support |City National Bank of New Jersey
900 Broad Street, Newark, NJ 07102 | T: 973-624-0865 ext. 0046 | F: 973-643-4028
Online Banking Dir: 855-816-2627 | E: jmontano@citynatbank.com | W: www.citynatbank.com



**From:** Komal Ramkirath [mailto:kramkirath@gsadvisors.net]
**Sent:** Friday, May 27, 2016 8:39 AM
**To:** Jorge Montano; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez; Vanessa Hernandez
**Subject:** Re: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Jorge,

Just so I understand correctly, CHB is running due diligence on Apex, our fund Administrator?

You are not referring to the due diligence & subscription docs Apex was to send you yesterday, which they did?

Komal Ramkirath
Global Securities Advisors, LLC
**Phone:** 212.905.4945
kramkirath@gsadvisors.net

**From:** Jorge Montano <jmontano@citynatbank.com>
**Sent:** Friday, May 27, 2016 8:34 AM
**To:** Komal Ramkirath; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez; Vanessa Hernandez
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Komal,
David and Mavis are still awaiting the Due Diligence on Apex. Once that is sent to them we will release the hold and transfer the funds to the Class C account.

Thank you for choosing City National Bank

Jorge Montano |Customer Support |City National Bank of New Jersey
900 Broad Street, Newark, NJ 07102 | T: 973-624-0865 ext. 0046 | F: 973-643-4028
Online Banking Dir: 855-816-2627 | E: jmontano@citynatbank.com | W: www.citynatbank.com



**From:** Komal Ramkirath [mailto:kramkirath@gsadvisors.net]
**Sent:** Friday, May 27, 2016 8:27 AM

**To:** Jorge Montano; David Monegro; Mavis Bennett
**Cc:** Gustavo Hernandez
**Subject:** Re: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Jorge,

Please advise on the status of the hold on the $7mm that came in yesterday and the limit approval on the new Class C account.

As we discussed on the call, we need to transfer the $7mm into the new account asap, so that we do not affect the financials of the share class (the regular operating account).

Thanks,
Komal


Komal Ramkirath
Global Securities Advisors, LLC
Phone: 212.905.4945
kramkirath@gsadvisors.net

---

**From:** Jorge Montano <jmontano@citynatbank.com>
**Sent:** Thursday, May 26, 2016 4:00 PM
**To:** Assa Ulli; David Monegro
**Cc:** Komal Ramkirath; Christian Lyles
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Thank you Assa.

Thank you for choosing City National Bank

Jorge Montano | Customer Support | City National Bank of New Jersey
900 Broad Street, Newark, NJ 07102 | T: 973-624-0865 ext. 0046 | F: 973-643-4028
Online Banking Dir: 855-816-2627 | E: jmontano@citynatbank.com | W: www.citynatbank.com



---

**From:** Assa Ulli [mailto:assau@apexfunds.us]
**Sent:** Thursday, May 26, 2016 3:56 PM
**To:** Jorge Montano; David Monegro
**Cc:** Komal Ramkirath; Christian Lyles
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi,

As discussed, please find attached subscription documents listing the source of the funds and the Work Check performed on the Investor coming into the fund (UBS Switzerland AG / YY8811503)

Thanks.


Assa Ulli
**Apex Fund Services**
15720 Brixham Hill Avenue, Suite 206,
Charlotte, NC 28277

Tel:       +1 704 752 9996
Direct:   +1 704 927 5411
Fax       +1 704 752 8997

Follow us on Twitter



www.apexfundservices.com

HEDGE FUNDS
Service Provider
Rankings 2015
Ranked #1
Best Fund Administrator
(Half) 4 Provider

Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman Islands | China | Dubai | Guernsey | Hong Kong | India | Ireland | Isle of Man | Japan | Jersey | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | USA

This e-mail and any files transmitted with it are confidential and may be privileged; they are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient of the individual responsible for delivering the e-mail to the intended recipient, then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify us. The views or opinions expressed in this e-mail are solely those of the author and do not necessarily represent those of the company or its associated companies.

WARNING: from time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of these instructions.

Please consider the environment before printing this email

---

**From:** Komal Ramkirath [mailto:kramkirath@gsadvisors.net]
**Sent:** Thursday, May 26, 2016 12:31 PM
**To:** Jorge Montano; David Monegro
**Cc:** Gustavo Hernandez; Assa Ulli
**Subject:** Re: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325969505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Jorge,

The USD 7mm received is for the new GSTF Class C account we have opened (but awaiting the limits approval). We were not sure the account would be opened and active in time so we gave them the regular GSTF operating account information. As soon as you give me the ok (approved limits for transfers), I will internally transfer the $7mm into the GSTF Class C account.

We have already provided CNB with the details of this new investor and where/what the funds will be invested in (see your prior emails on this subject). Also, as Assa is in cc:, assa can you please provide CNB with copies of Apex's AML/diligence info.

Regards,
Komal

---

**From:** Jorge Montano <jmontano@citynatbank.com>

**Sent:** Thursday, May 26, 2016 12:20 PM
**To:** Komal Ramkirath; David Monegro
**Subject:** RE: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325960505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Komal,

Compliance is asking for more details on the incoming wire. See Daviii's request below in highlight.

Thank you for choosing City National Bank

Jorge Montano |Customer Support |City National Bank of New Jersey
900 Broad Street, Newark, NJ 07102 | T: 973-624-0865 ext. 0046 | F: 973-643-4028
Online Banking Dir: 855-816-2627 | E: jmontano@citynatbank.com | W: www.citynatbank.com

 CityNational
BANK

**From:** David Monegro
**Sent:** Thursday, May 26, 2016 12:16 PM
**To:** Jorge Montano
**Cc:** Paul Maisch; Jagrut Shah
**Subject:** RE: (FYI Sir) 7 Million INCOMING WIRE FOR GLOBAL SECURITIES
**Importance:** High

Who is the new investor?  We need full disclosure (we need ID's for the new investor).  Is it 1 investor or multiple investors that make up the $7mm?

What is the new investor, investing in?

We need Global's due diligence information for this transaction.

**From:** Komal Ramkirath [mailto:kramkirath@gsadvisors.net]
**Sent:** Thursday, May 26, 2016 8:55 AM
**To:** Jorge Montano; David Monegro
**Subject:** Fw: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325960505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Jorge,

The custodian for the new investor who will be sending the funds into the new GSTF Class C account is UBS Switzerland AG, andin addition to our administrators KYC & AML, UBS has their own AML policies & procedures, see attached UBS's Anti-Money Laundering Compliance Confirmation.

I hopes this helps with the limits approval.

Also, a heads up, our Administrator (APEX Fund Admin) might contact you regarding some SWIFTY question the Custodian (UBS) had. His name is Assa, just in case.

Thanks,
Komal

Komal Ramkirath
Global Securities Advisors, LLC
Phone: 212.905.4945
kramkirath@gsadvisors.net

**From:** Assa Uili <assau@apexfunds.us>
**Sent:** Wednesday, May 25, 2016 12:47 PM
**To:** Komal Ramkirath
**Cc:** Christian Lyles
**Subject:** FW: ***VERY URGENT*** Request Payment Instructions for ISIN XD0325960505 | USD | Global Securities Trade Finance USD Main Instrument USD Ptg shs -C-

Hi Komal,

I ran through our due-diligence of the investor, all looks good to receive funds. The only exception is confirming that the origins of the funds did come from their bank account. I can not confirm that until the money moves. I believe UBS the investor is waiting on us to confirm that they should wire the money. In addition to this they have a few more points (listed below) they need us to confirm, I believe you would have more information on these items since this is a new class. Below are the points to be confirmed back to UBS:

**receipt of our subscription for next official Trade Date available for all clients**
What is the subscription/dealing date for this Investor? (requested in the sub docs)
**the latest day you require the cleared funds**
**the Swift Message Type for cleared funds (MT103/MT202)**
**If you require original forms by courier**
Thanks,

Assa Uili
**Apex Fund Services**
15720 Brixham Hill Avenue, Suite 206,
Charlotte, NC 28277

Tel      +1 704 752 8996
Direct   +1 704 927 5411
Fax      +1 704 752 8997

 Follow us on Twitter.

 APEX

www.apexfundservices.com

HEDGE FUNDS
Service Provider
Rankings 2015
Ranked #1
Best Fund Administrator
(£10-£50 Provider)

Abu Dhabi | Australia | Bahrain | Bermuda | Canada | Cayman Islands | China |Dubai | Guernsey | Hong Kong |India | Ireland | Isle of Man | Japan | Jersey | Luxembourg | Malta | Mauritius | Russia | Singapore | Switzerland | United Kingdom | Uruguay | USA

This e-mail and any files transmitted with it are confidential and may be privileged, they are intended solely for the use of the individual entity to whom they are addressed. If you are not the intended recipient of the individual responsible for delivering the e-mail to the intended recipient then please be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, then please immediately notify. The views or opinions expressed in this e-mail are solely that of the author and do not necessarily represent those of the company or its associated companies.

WARNING: From time to time, our spam scanners eliminate legitimate e-mails. If your e-mail contains important instructions, please ensure that we acknowledge receipt of those instructions.

🌲 Please consider the environment before printing this email

# EXHIBIT 6

## SUBSCRIPTION AGREEMENT
## FOR NON-U.S. PERSONS

Global Securities Trade Finance
c/o Apex Fund Services (Charlotte) LLC
15720 Brixham Hill Avenue, Suite 206
Charlotte, NC 28277
Tel: +1 704 752 8996
Fax: +1 704 752 8997

Dear Sirs:

The undersigned (the "Subscriber") hereby acknowledges receipt of the Confidential Explanatory Memorandum, as amended from time to time (the "Memorandum") of Global Securities Trade Finance, an exempted company incorporated under the laws of the Cayman Islands (the "Fund"). Terms not defined herein will be as defined in the Memorandum.

1.   Having reviewed the Memorandum, the Subscriber hereby agrees with the Fund, subject to the Fund's provisional acceptance, to subscribe for as many of the Fund's non-voting participating shares (the "Shares"), as may be purchased for U.S.$5,000,000 on 27 Feb 2017 (the "Purchase Date") at the Offering Price (as described in the Memorandum) as of the opening of business on the Purchase Date.

2.   The Subscriber agrees that it will make full payment in the amount of its subscription in accordance with the payment instructions attached hereto in time sufficient to be received by the Fund at least one business day prior to the Purchase Date.  The Subscriber agrees that any Shares of the Fund hereby subscribed for will be held subject to the terms and conditions of the Memorandum, the Memorandum and Articles of Association of the Fund, as amended from time to time, and this Agreement and recognizes that the Fund will protect and indemnify its officers, directors and other representatives against liability to the extent set forth in the Articles of Association.

3.   The Subscriber agrees to indemnify and hold harmless the Fund, Global Securities Advisors LLC (the "Investment Manager"), Global Securities Advisors GP, LLC, Apex Fund Services (Charlotte) LLC (the "Administrator") and their respective directors, members, partners, shareholders, officers, employees, agents and affiliates from and against any and all losses, liabilities, damages, penalties, costs, fees and expenses (including legal fees and disbursements) that may result, directly or indirectly, from any inaccuracy in or breach of any representation, warranty, covenant or agreement set forth in this Subscription Agreement or in any other document delivered by the Subscriber to the Fund, or from the Subscriber's assertion of its proper authorization to act.

4.   (a) In consideration of the Fund's acceptance of the aforesaid offer and recognizing its reliance thereon, the Subscriber agrees, represents and warrants to the Fund that the Subscriber:

(i)   is not (or, if the Shares purchased under this Subscription Agreement (the "Agreement") are being acquired by the Subscriber as nominee or custodian for another person or entity, such person or entity is not) a natural person resident in, or a corporation or partnership or other entity organized or incorporated in or under the laws of, the United States of America, its territories or possessions (hereinafter collectively referred to as a "United States person");

(ii)   is not an entity 50% or more of the beneficial interests in which are owned, directly or indirectly, by United States persons;

(iii)   in the case of an entity which has less than 50% of its beneficial interest owned by U.S. persons, was not formed for the purpose of investing in the Fund (e.g., in the case of a Subscriber which is an investment fund, the investment in the Fund does not constitute more than 40% of the Subscriber's net assets) and it will promptly notify the Fund if this is not the case;

1

(iv)     in the case of a trust, does not have any beneficiaries or trustees that are United States persons;

(v)     will not transfer directly or indirectly any of the Subscriber's Shares or any interest therein (including without limitation any right to receive dividends or other distributions) to a United States person or to any other person or entity unless (A) the proposed transferee has made representations and warranties similar to those contained herein (including without limitation those relating to the U.S. Securities Act of 1933, as amended (the "Act")) and such representations and warranties have been approved by the Fund, (B) such Shares are registered pursuant to the provisions of the Act or an exemption from registration is available, and (C) the Fund has consented to such transfer;

(vi)     will not, if the Shares purchased under this Agreement are being acquired by the Subscriber as nominee or custodian for another person or entity, permit the beneficial owners of such Shares to transfer any beneficial interest in the Shares, directly or indirectly, to any person or entity unless the representations made by the Subscriber in this Agreement will continue to be true;

(vii)     did not acquire (except as specifically authorized by the Fund) and will not transfer any of its Shares within the United States of America, its territories or possessions (hereinafter collectively referred to as the "United States");

(viii)     did not engage (except as specifically authorized by the Fund) and will not engage in any activity relating to the sale of the Shares of the Fund in the United States;

(ix)     is acquiring the Shares solely for its own account for investment (or, if the Subscriber is acting as a nominee or custodian for another person or entity, the Shares are being acquired for that person or entity) and not with a view to distribution or resale;

(x)     the Subscriber (i) has the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund; (ii) is aware of the risks inherent in investing in securities and the method by which the assets of the Fund are held and/or traded, and (iii) can bear the risk of loss of its entire investment; and

(xi)     is not a member of the public in the Cayman Islands.

(b) The Subscriber agrees to supply the Fund with such other facts, including the nationality and residence of relatives, as from time to time are deemed necessary or desirable in order to avoid the loss of a contemplated tax benefit to the Fund or any of its respective shareholders and in order to ascertain that no violation by the Fund shall occur of any securities laws of the United States or any other relevant jurisdiction, including the Act, the U.S. Investment Company Act of 1940, as amended (the "1940 Act"), and the U.S. Investment Advisers Act of 1940, as amended.

5.   Benefit Plan Investor Status

In order for the Fund to accurately monitor its Benefit Plan Investor participation, please review the following definitions and make the appropriate representations by checking all applicable boxes following the definition.

A "Benefit Plan Investor" is (i) any employee benefit plan subject to the fiduciary responsibility provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) any individual retirement plan or account subject to the prohibited transaction rules of Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") or (iii) any entity whose underlying assets include "plan assets" (as defined by ERISA and the regulations thereunder) by reason of a plan's investment in the entity.

2

The Subscriber represents that it is (please check all applicable boxes):

A. ☒ not a Benefit Plan Investor; or

B. ☐ a Benefit Plan Investor that is:

    1. ☐ subject to Part 4 of Title I of ERISA;

    2. ☐ subject to Section 4975 of the Code (that has not checked B1);

    3. ☐ an entity whose underlying assets include "plan assets".  The Subscriber also represents that the percentage of its "plan assets" compared to the value of its total assets or included in its general account is not more than:

        ☐ 10% *    ☐ 20%    ☐ 30%    ☐ 40%
        ☐ 50%    ☐ 60%    ☐ 70%    ☐ 80%
        ☐ 90%    ☐ 100%;

        (* applicable to entities with multiple classes, one of which exceeds the 25% threshold for Benefit Plan Investors and to U.S. insurance company general accounts)

    4. ☐ a group trust, a bank common or collective trust or an insurance company separate account.

    The Subscriber further agrees (i) to notify the Investment Manager 30 days prior to this representation (or any part thereof) no longer being true or likely to become untrue and (ii) to provide the Investment Manager upon request such information as may be required to confirm and/or refine the representations provided above.

    6.  Any Subscriber that is investing the assets of a benefit plan or account and the person executing this Agreement on behalf of such Subscriber acknowledge that it is intended that the Fund will not hold "plan assets" subject to Title I of ERISA or Section 4975 of the Code (i.e., less than 25% of each class of the Fund's equity interests will be held by Benefit Plan Investors).  Accordingly, the Subscriber acknowledges that the Fund and Global Securities Trade Finance Master Fund Ltd. (the "Master Fund") have the authority to require the retirement or redemption of all or some of the Shares held by any Benefit Plan Investor if the continued holding of such Shares, in the opinion of the Board of Directors, could result in the Fund or the Master Fund being subject to Title I of ERISA or Section 4975 of the Code.  Further, the Subscriber and the person executing this Agreement represent and warrant to the Fund and the Investment Manager that:

    (a)  With respect to the investment in the Fund and thereby in the Master Fund, it has been determined that the purchase of Shares is consistent with the fiduciary responsibilities under applicable law, including ERISA and the Code, and that (i) the investment in the Fund is prudent, (ii) the structure, operation and incentives of the fee arrangements have been adequately disclosed, further the interests of the Subscriber and provide reasonable compensation to the Investment Manager, (iii) the Subscriber's current and anticipated liquidity needs will be met, given the limited rights to redeem or transfer the Shares, (iv) the investment will permit the Subscriber's overall portfolio to remain adequately diversified and (v) the investment and investment program described in the Offering Memorandum are permitted under the laws, rules and documents governing the Subscriber.

    (b)  The persons executing this Agreement (i) are solely responsible for the decision to invest in the Fund, (ii) in making the decision to invest in the Fund, have not relied on any advice or recommendation from the Fund, the Investment Manager, any placement agent associated with the Fund, or any of their affiliates with respect to the investment in the Fund and (iii) are qualified to make such investment decision and, to the extent deemed necessary, have consulted their own investment advisors and legal counsel regarding the investment in the Fund.

    7.  (a) If the Subscriber is an entity, the person executing this Agreement for the Subscriber represents that it has the full power and authority under the Subscriber's governing

3

instruments to do so and the Subscriber has the full power and authority under its governing instruments to acquire Shares of the Fund. If the Subscriber is acting as trustee, agent, representative or nominee for another person or entity, the Subscriber understands and acknowledges that the representations, warranties and agreements made in this Agreement are made by the Subscriber (A) with respect to the Subscriber, and (B) with respect to such other person or entity. Furthermore, the Subscriber represents and agrees that (X) it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, (Y) the execution, delivery and performance by it of this Agreement are within its powers, have been duly authorized by all necessary action on its behalf, require no action by or in respect of, or filing with, any governmental body, agency or official (except as disclosed in writing to the Fund) in order to make this investment, and does not contravene, or constitute a breach of or default under any provision of applicable law or governmental rule, regulation or policy statement or of its certificate of incorporation or other comparable organizational documents or any agreement, judgment, injunction, order, decree or other instrument binding upon it, and (Z) this Agreement constitutes a valid and binding agreement of the Subscriber and is enforceable against the Subscriber in accordance with its terms.

(b) If the Subscriber is an individual, the Subscriber agrees that this Agreement constitutes a valid and binding agreement of the Subscriber and is enforceable against the Subscriber in accordance with its terms, and the Subscriber has legal competence and capacity to execute the same.

8. (a) The Subscriber agrees that on the complete or at least 90% partial redemption of its Shares in the Fund, the Subscriber will, subject to the terms of the Memorandum, (unless share certificates, if any, have not been delivered) receive 90% of the estimated Redemption Price (as defined in the Memorandum) generally within 30 days following the date of redemption.   The Subscriber acknowledges that, promptly after the Fund has determined the Net Asset Value of the Shares as of the redemption date (which in the Fund's discretion may be after the Fund's annual audit), the Fund will pay to the Subscriber the balance, if any, of the amount to which it is entitled, or the Subscriber will repay to the Fund the excess, if any, of the amount previously paid over the amount to which the Subscriber is entitled, in each case without interest thereon.

(b) The Subscriber agrees that its obligation to make the repayment in the event of an overpayment as described in Section 12 of the Memorandum will endure notwithstanding the performance by it of all other obligations under this Agreement.

9. The Subscriber agrees that a legend reading substantially as follows may be placed on each share certificate issued to the Subscriber pursuant to this Agreement and that the Fund may take all steps it may deem necessary or desirable to see that the restrictions contained herein are complied with:

"The Common Shares represented by this certificate are subject to certain restrictions which limit the transfer of these shares or any interest therein (including without limitation the right to receive dividends or other distributions) and such shares have not been registered under the U.S. Securities Act of 1933, as amended, and may be offered and sold only if an exemption from registration is available, in accordance with a Subscription Agreement dated between the shareholder and Global Securities Trade Finance, a copy of which is on file at the registered office of the Fund."

10. Set forth below are the names of persons authorized by the Subscriber to give and receive instructions between the Fund (or its Administrator) and the Subscriber, together with their respective signatures.  Such persons are the only persons so authorized until further written notice to the Administrator signed by one or more of such persons.

(please attach additional pages if needed)

(continued on next page)

4

| Names | Signatures |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

11. The Subscriber agrees that all or any funds payable to the Subscriber (including redemption proceeds) may be wire transferred to the Subscriber in accordance with the following instructions (which is the same account from which the Subscriber's investment was first remitted, unless the Fund agrees otherwise), until further written notice, signed by one or more of the individuals authorized to act on behalf of the Subscriber under Section 10 above, to the Administrator.

Bank Name:                     See attached
Bank Address:          _____
ABA or CHIPS No.: _____
Account Name:        _____
Account No.:            _____
For Further credit:    _____

12. The Subscriber hereby authorizes and instructs the Administrator and the Fund to accept and execute any instructions in respect of the Shares to which this Agreement relates given by the Subscriber in written form or by facsimile.  If instructions are given by the Subscriber by facsimile, the Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund and agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions.  The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

13. The Fund and the Administrator reserve the right to request such evidence as is necessary to verify the identity and source of funds of a prospective investor.  The Subscriber acknowledges that the Administrator and the Fund shall be held harmless and indemnified against any loss arising as a result of a delay or failure to process this application or a redemption request if any evidence required by such parties, in order to satisfy applicable anti-money laundering rules, has not been provided by the Subscriber.  In order to comply with the anti-money laundering regulations applicable to the Fund and the Administrator, the letter annexed hereto as Schedule A MUST be completed by the financial institution that will be remitting the subscription monies on behalf of the Subscriber.

14. (a)  The Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any U.S. or international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by

---

[1]    The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]    Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation.  In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.  The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws.  A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

5

the Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(b)  The Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with the Subscriber, a Prohibited Person, and (ii) to the extent the Subscriber has any beneficial owners[4], (A) it has carried out thorough due diligence to establish the identities of such beneficial owners, (B) based on such due diligence, the Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (C) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of the Subscriber's complete redemption from the Fund, and (D) it will make available such information and any additional information that the Fund may require upon request in accordance with applicable regulations.

(c)  If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, be obligated to freeze the Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or the Subscriber's investment may immediately be involuntarily redeemed by the Fund, and the Fund may also be required to report such action and to disclose the Subscriber's identity to OFAC or other authority.  In the event that the Fund is required to take any of the foregoing actions, the Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(d)  The Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

15.  The Subscriber acknowledges and understands that if, as a result of any information or other matter which comes to his attention, any person resident in the Cayman Islands (including the Fund, its Directors and the Administrator) knows or suspects that another person is engaged in money laundering, such person is required to report such information or other matter pursuant to the Proceeds of Criminal Conduct Law (2007 Revision) of the Cayman Islands, and such report will not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

16.  The Subscriber recognizes that the Fund is restricted by law as to the number of U.S. persons that can hold Shares in the Fund, and, that in determining the number of U.S. persons holding Shares, if the Subscriber is an investment company (an "Investment Company") as defined in Section 3(a) of the 1940 Act or an Investment Company that is exempt from registration pursuant to Section 3(c)(1) or Section 3(c)(7) of the 1940 Act (a "3(c)(1) or 3(c)(7) Company"), it will be necessary to count the beneficial owners of the Subscriber that are U.S. persons if it owns 10% or more of the Shares in the Fund.  Accordingly, the Subscriber agrees (A) to notify the Fund prior to subscribing for Shares if it is an Investment Company, a 3(c)(1) Company or a 3(c)(7) Company, (B) to take whatever action, if any, is requested by the Fund to have its holdings of Shares be less than 10% of the total issued Shares in the Fund and (C) that the Fund may at any time require the Subscriber to redeem so many of its Shares as is necessary to keep such interest below 10%.

---

[3]  Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate.  A post office box or electronic address would not be considered a physical presence.  A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]  Beneficial owners will include, but not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund-of-funds; (v) the grantor of a revocable or grantor trust; (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity.  If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners.  If the Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

6

17. The Subscriber recognizes that non-public information concerning the Subscriber set forth in this Agreement or otherwise disclosed by the Subscriber to the Fund, or other agents of the Fund (such as the Subscriber's name, address, social security number, assets and income) (collectively, the "Information") (i) may be disclosed to the Fund's Administrator, Investment Manager, attorneys, accountants and auditors in furtherance of the Fund's business and to other service providers such as brokers who may have a need for the Information in connection with providing services to the Fund, (ii) to third party service providers or financial institutions who may be providing marketing services to the Fund provided that such persons must agree to protect the confidentiality of the Information and use the Information only for the purposes of providing services to the Fund and (iii) as otherwise required or permitted by law.  The Fund and Investment Manager restrict access to the Information to their employees who need to know the Information to provide services to the Fund, and maintain physical, electronic and procedural safeguards that comply with U.S. federal standards to guard the Information.

18. By executing this Agreement, the Subscriber specifically agrees that it will keep confidential and will not disclose to third parties (other than its tax or other financial advisors under like conditions of confidentiality) any and all Information regarding the Fund, including Fund performance.

19. The Subscriber hereby acknowledges and agrees that the Administrator may relocate any documentation, records or other property of the Fund in the custody of the Administrator (including, without limitation, the statutory records and registers of the Fund and records verifying the identity of Shareholders and transactions effected) from the Cayman Islands to another offshore jurisdiction without seeking the prior approval of the Fund, the Investment Manager or any Shareholder if, in the opinion of the Administrator, such relocation is necessary in order to prevent or mitigate loss or damage to such documentation, records or other property of the Fund or to enable the continuation of any of the services provided by the Administrator to the Fund.

20. The Subscriber agrees that (a) the statements, representations, warranties or covenants made hereunder will be deemed to be reaffirmed by it at any time it purchases or otherwise acquires additional Shares of the Fund and such purchase or acquisition will be evidence of such reaffirmation and (b) if any of the statements, representations, warranties or covenants made herein become untrue or inaccurate, the undersigned shall immediately notify the Fund.

21. (a)     This Agreement shall be binding upon the Subscriber and its successors and permitted assigns and shall inure to the benefit of the Fund's successors and assigns.  This Agreement shall survive the acceptance of the subscription and if the Subscriber consists of more than one person, shall be the joint and several obligation of each person.

(b)     If any provision hereof shall be found invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent and its invalidity or in-operability shall not affect any other provision hereof.

22. Electronic Delivery of Reports and Other Communications.   The Fund, the Investment Manager and/or the Administrator acting on their behalf, may provide investors (and/or their designated agents) statements, reports and other communications relating to the Fund and/or the investor's investment in the Fund, including NAV information, subscription and redemption activity, annual and other updates of the Fund's consumer privacy policies and procedures ("Fund Information"), in electronic form, such as E-mail, in lieu of or in addition to sending such communications as hard copies via fax or mail. E-mail messages are not secure and may contain computer viruses or other defects, may not be accurately replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient.  The Fund, the Investment Manager and the Administrator make no warranties in relation to these matters.  The Administrator reserves the right to intercept, monitor and retain E-mail messages to and from its systems as permitted by applicable law.  If an investor has any doubts about the authenticity of an E-mail purportedly sent by the Fund, the Investment Manager or the Administrator, the investor is required to contact the purported sender immediately.

7

Please check the appropriate box:

☑ Subscriber hereby agrees to receive Fund Information in electronic form in lieu of or in addition to separate mailing of paper copies.

☐ Subscriber declines to receive Fund Information in electronic form in lieu of or in addition to separate mailing of paper copies.

23. At least 48 hours prior to executing this Agreement, the Subscriber received a current copy of Part II of the Form ADV of the Investment Manager.

24. This Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands.

8

Dated: February 27, 2017
_____, ____

Very truly yours,

DELTEC BANK & TRUST LIMITED
_____
Print Subscriber's Name

☐ Subscriber is a Controlled Person[5]

_____
Signature of Subscriber or Authorized Signatory

Aisha Johnson        Angela Stubbs
_____
Print name of Subscriber or Authorized Signatory

Address of Subscriber:

DELTEC HOUSE, LYFORD CAY
_____
P.O.BOX N 3229
_____
NASSAU, BAHAMAS

Telephone number of Subscriber:
+ 242 302 4100
_____

Facsimile number of Subscriber:
+ 242 362 4623
_____

E-mail address of Subscriber:
fundstatements@deltecbank.com
_____

Name and Address of Bank
Wiring Instructions:
See attached
_____
_____
_____

Name and Number of Account at bank being debited:

_____
_____
_____

The foregoing offer is hereby accepted subject to the Memorandum, the conditions set forth and the decision of the Directors of the Fund to issue the Shares

Additional copies of correspondence from The Fund should be sent to:
[] clientservices@deltecbank.com
_____
_____

Global Securities Trade Finance

By: _____
   Name:
   Title:

_____

[5]   A "Controlled Person" is (i) any person (including an entity) with investment authority or responsibility over the Fund's assets or (ii) any person controlling, controlled by or under common control with a person described in (i).

9

<u>SCHEDULE C</u>

## The Source of Funds Declaration

To:     (Institution's name and location)

<u>Deltec Bank & Trust Ltd</u>  Time:  <u>2:50pm</u>
<u>Deltec House, Lyford Cay</u> Date:  <u>February 27, 2017</u>
<u>P.O.Box N-3229 Nassau, Bahamas</u>

1)  I, <u>Deltec Bank & Trust Limited</u> understand that I am making this declaration for my own protection as well as for the protection of the investment institution and the administrator.

2)  I declare that the funds totaling <u>USD 5 MILLION</u>, which are used to purchase shares / units / interest in <u>Global Securities Trade Finance</u> (name of investment institution) represent funds obtained by the undersigned from the following source:

<u>INVESTMENT</u>

3)  Consent is hereby given to this investment institution or administrator to disclose this transaction to those institutions which are legally entitled to receive the information contained here in.

<u>DELTEC BANK &  TRUST LIMITED</u>
Customer's name

<u>DELTEC HOUSE, LYFORD CAY, P.O.BOX N-3229</u>
Customer's address

Signature
Aisha Johnson     Angela Stubbs

Formatted: Font: 8 pt

13



DELTEC BANK & TRUST LIMITED

GLOBAL SECURITIES TRADE FINANCE
c/o APEX FUND SERVICES (CHARLOTTE) LLC
15720 BRIXHAM HILL AVENUE, SUITE 206
CHARLOTTE, NC 28277

28th February, 2017

**Re: Anti-Money Laundering and Client Identification Representations**

Dear Sirs:

Deltec Bank & Trust Limited (Deltec) is a Private Bank and Trust Company organized under the laws of The Bahamas and regulated by The Central Bank of The Bahamas and the Securities Commission of the Bahamas.

Deltec is investing as a nominee on behalf of our clients and we have implemented know your client (KYC) and anti-money laundering (AML) policies and procedures which are in full compliance with Bahamian Regulations; these policies and procedures have been completed and are in order in regard to the client/s for whom we are investing.

Notwithstanding any disclosures included in the subscription documents, we must advise you that client beneficial owner information can only be provided with the client's specific consent, or in compliance with Bahamian regulations.

Regards,

Jeunesse Osadebay-Bullard
Head of Compliance