UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18 CR 20685 WILLIAMS/TORRES

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

       Defendant,

and

OLYMPIA DE CASTRO,

       Third Party Petitioner,

597 HIBISCUS LANE REVOCABLE TRUST,

       Third Party Petitioner.

_____/

**OLYMPIA DE CASTRO'S AND 597 HIBISCUS LANE REVOCABLE TRUST'S REPLY IN SUPPORT OF THEIR OBJECTIONS TO REPORT AND RECOMMENDATION**

Petitioners Olympia De Castro and 597 Hibiscus Lane Revocable Trust file this Reply in support of their Objections to the Report and Recommendation ("R&R") granting the Government's motion to dismiss.   Because Petitioners established they have a legal right vested in Petitioners rather than the defendant, the Objections should be sustained.

> **I.      Petitioners Alleged Facts In Their Petition To Support A Claim For Which Relief Can Be Granted.**

Contrary to the Government's claim, the Petitioners asserted grounds for recovery in their Petition pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c).   D.E.

261, at 2.    Similarly, they set forth facts and the relief they sought, including:

· 	Because Petitioners hold all legal right, title, and interest in the home, the property cannot be forfeited.    *Id*. at 1-2.

· 	The home should be excluded from any forfeiture order entered against Gustavo Hernandez Frieri.    *Id*. at 2.

· 	Ms. De Castro disagreed with the Government's alleged claim to her home, but was prohibited from intervening and objecting to assert her interest in her home until after the preliminary order of forfeiture was entered.    *Id*. at 3.

· 	Following the marital settlement agreement and the defendant's resignation as Trustee of the Trust, Ms. De Castro alone held title to the home and managed and paid for the home.    *Id.* at 4.

· 	Hernandez Frieri declared in multiple ways that he did not own the home which the Government was trying to seize as a substitute asset.    *Id.* at 5.

· 	Because Ms. De Castro has the legal right, title, interest, custody and control of her home, she objected to the preliminary order of forfeiture and requested that the Court amend the Order accordingly.    *Id.* at 6-7.

· 	The home is not "property of the defendant" and the forfeiture order is invalid.    *Id*. at 8.

· 	Instead, Ms. De Castro holds legal title to the home.    *Id.* at 9.

· 	The Government cannot take Ms. De Castro's interest because her interest vested before the Government's.    *Id..*

· 	Because Hernandez-Frieri has no interest in the home, the property cannot be forfeited.    *Id*. at 10.

· 	Hernandez-Frieri could never singularly revoke the Trust to take the home and Ms. De Castro would never agree to an amendment or revocation which would subject her home to seizure by the Government.    *Id.* at 11, and

· 	Ms. De Castro requested that the Court exclude her "innocent" home from the forfeiture order.    *Id.*

Thus, Petitioners' request for an ancillary hearing and amendment of the order of forfeiture

to exclude their family home should not be dismissed for failure to state a claim.[1]

***

To the extent the Court believes that Petitioners did not sufficiently request relief and provide enough facts in support of their claim, Petitioners move to amend their Petition.

***

## II.    Petitioners' Objections Support Their Interest In 597 Hibiscus Lane.

### A.    Gustavo Hernandez Frieri's legal and equitable interest in the Trust did not entitle him to anything of monetary value.

The Government seems confused when it repeatedly states that the defendant had a "nothing" interest in the Trust.    D.E. 357, at 3 and 10.    Petitioners never asserted that Gustavo Hernandez Frieri had a "nothing" interest.    D.E. 347, at 8 and 10.    Pursuant to the terms of the Trust, the defendant had an interest in the trust asset.    Because the trust asset was used as a family home which did not generate income, though, his interest did not have a monetary value to third-party creditors. When the 597 Hibiscus Lane Revocable Trust ("Trust") was created in 2013, the defendant held a legal and equitable interest in the Trust and trust asset.    As a settlor, he retained powers over the trust asset.    As a Trustee, he had a legal interest in the trust asset in his capacity as trustee and title-holder.    And as a beneficiary, he had a right to occupy the home and to benefit from any income the trust asset may have generated to maintain an accustomed standard of living, health care claims, education, and other similar needs.    D.E. 262-1, at 4 (Section 5.1 of the Trust).

---

[1]  The Government alleges that "it is only in the Objections that Petitioners clarify that they are not pursuing a claim as a bona fide purchaser." (D.E. 357, at 9) It is quite clear from the facts and language of the Petition that Olympia De Castro never asserted that she bought 597 Hibiscus Lane from the defendant.

Thus, he had an interest.    Some of those interests, though, were limited.    For example, although the defendant was a settlor, he could only exercise his power to revoke or amend the trust by acting jointly and in complete agreement with the co-settlor, Ms. De Castro.[2]    *Id*. at 1 and 4.    As a co-Trustee, the Trust required a majority agreement (meaning both Trustees) among the Trustees to act; neither had the power unilaterally to act on behalf of both.    *Id*. at 4.    As a beneficiary, his interest was limited by how the home was held and whether it generated income – which in this case it did not.    *Id*.

Olympia De Castro, too, did not and does not have a "nothing" interest in the trust asset. Rather, according to the terms of the trust, she has a clearly defined interest in the trust asset which is recognized by Florida trust law.    The R&R then was correct in finding that Ms. De Castro has a legal interest in the home.    As settlor, Trustee, and Beneficiary, she has legal and equitable interests in the Trust – which upon the creation of the Trust were defined by the terms of the trust with regard to the co-settlor and co-Trustee.    Over time, as the defendant's interests dissipated (through his resignation as Trustee[3] and later renunciation of settlor and beneficiary rights), Ms.

---

[2] Petitioners use the word settlor to mirror the term used in the R&R.    The Trust uses the term Grantor.    The two words have the same meaning for purposes of the Trust and these pleadings.
    The Government alleges that according to the "plain text" of the trust instrument, Grantor (Settlor) does not mean the defendant and Ms. De Castro acting together.    D.E. 357, at 16, fn. 7. The plain text of the Trust document, however, is clear and quite specific – "OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI as Co-Grantors ("**Grantor**")."    D.E. 262-1, at 1 (bold added).    The Trust included this language for a purpose – because it intended that the De Castro and Hernandez Frieri act as one when exercising the rights of a "**Grantor**."    The Government cannot ignore language that was specifically included merely because the language defeats the Government's claim.
[3] The R&R correctly noted that "[n]either party takes issue with [the defendant's] resignation" as Trustee.    D.E. 316, at 17, fn. 5.

De Castro maintained her interests.   Presently, "[a]s a settlor, trustee, and beneficiary of the 597 Hibiscus Lane Revocable Trust, Olympia De Castro holds the entire legal interest in the trust assets in her capacity as trustee, and as a beneficiary she has an enforceable equitable interest in the trust assets."   D.E. 356, at 3 (Declaration of Florida trust expert Bruce Stone). As the individual with a present legal interest, De Castro has legal and equitable interests vested in her "rather than the defendant" at the time the government's interest in the substitute, untainted property arose.   21 U.S.C. § 853(n)(6)(A).   Therefore, the order of forfeiture should be amended.

### B.   The Defendant's prior Trustee resignation and the Marital Settlement Agreement altered Hernandez Frieri's interests in the Trust.

The Government takes issue with the marital settlement agreement as an amendment of the Trust because Trust modification further defeats its right to seize the family home of Ms. De Castro and her three minor children.[4]   Without any basis, the Government assumes that the changes made in the marital settlement agreement were a "mistake."   D.E. 357, at 17.   This assumption ignores the language of the agreement and the acceptance of the changes by the Florida circuit court.

Undeniably, the marital settlement addressed the Trust – "[t]he parties serve as co-settlers of a trust which holds title for the [home]," – and altered the terms of the original Trust – " [t]he trust is exclusively for the benefit of the children," "Husband commits to resign as co-settlor,"

_____

[4]  Despite Petitioners "adopti[ng] all the arguments raised in their Petition and Response to the Government's motion to dismiss" (D.E. 347, at 1) and assuming "[f]or purposes of these Objections" that the defendant did not resign as a co-settlor (*id*. at 6), the Government tries to frame Petitioner's Objections as an abandonment of all their previous arguments and an assumption that the Defendant did not resign as a co-settlor.   D.E. 357, at 15.   This is incorrect. However, whether the Court views the defendant's abandonment of his co-settlor rights as a resignation or renunciation, the effect is the same.

"Wife shall be entitled to have sole possession of the [home]."   D.E. 262-6, at 10.   In addition, there is no dispute that the agreement was signed by both the defendant and Ms. De Castro, witnessed, and accepted by the Eleventh Judicial Circuit Court in the dissolution of marriage proceedings.   There was nothing else required to amend the Trust.   The Government's unhappiness that the agreement does not call itself an "amendment" is arguing form over substance.   What matters is that the terms of the Trust were changed.   Florida statute defines the "terms of a trust" as "the manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding."   Fla. Stat. § 736.0103(21).   Thus, the settlor's intent is not limited to the four corners of the original trust document.   Rather, it can be the expression of intent as evidenced in other forms, such as a marital settlement agreement.   *Id.*; Fla. Jur 2d Trusts § 36.

The settlor's intent[5] as expressed in this marital settlement agreement stated that the defendant committed to resign as co-settlor.   The only logical reading of these terms is an announcement of the defendant's resignation or renunciation of the rights and powers of a settlor. There is no other plausible interpretation.   Similarly, the language in the agreement that the Trust would be exclusively for the benefit of the children with Ms. De Castro receiving sole possession changed the "terms of the trust" with regard to the defendant's beneficial interest.   As originally written, the Trust provided that Hernandez Frieri was a beneficiary with the right to occupy and receive income if generated by the trust asset.   Subsequent to the execution of the marital

---

[5] Settlor means both De Castro and Hernandez Frieri who both signed the agreement.

settlement agreement, the defendant no longer had the rights of a settlor and no longer had a right to occupy the home (unless invited as a guest) or benefit from the trust asset. The "terms of the trust" were changed – Hernandez Frieri gave up those rights, as well as previously giving up his role as Trustee, and the change of the "terms of the trust" and the relinquishment of rights was approved by the court which had jurisdiction over the trust. Fla. Stat. § 736.0201(2) ("The court may intervene in the administration of a trust to the extent the court's jurisdiction is invoked by an interested person or as provided by law."). This was the intent as "established by other evidence that [was] admissible in a judicial proceeding" and should be accepted by this Court. Fla. Stat. § 736.0103(21). This amendment left Ms. De Castro, as "settlor, trustee, and beneficiary of the 597 Hibiscus Lane Revocable Trust … hold[ing] the entire legal interest in the trust assets in her capacity as trustee, and as beneficiary [with] an enforceable equitable interest in the trust assets." D.E. 356, at 3 (Declaration of Florida trust expert Bruce Stone). These are interests which are vested in her "rather than the defendant." 21 U.S.C. § 853(n)(6)(A). Accordingly, she requests that the forfeiture order be amended.

### C. No conditions of Hernandez Frieri's bond were violated.

Although the R&R did not address the matter of a potential fraudulent transfer, the Government tries to insert it as an issue in its Response. D.E. 357, at 17. The Government, however, misunderstands the effect of the trust modification by the marital settlement agreement. Hernandez Frieri's actions of giving up his rights as a settlor and beneficiary did not cause a property transfer or cause the Government to lose something which it could have taken prior to the execution of the marital settlement agreement. No transfer took place. The defendant did not possess anything of monetary value prior to the marital settlement agreement and did not give up

anything of economic or monetary value by signing the divorce agreement.    Given that the only trust asset was the homesteaded, marital residence, the defendant, by signing the divorce agreement, did not transfer anything that would have monetary value to third-parties.    *See supra* at 3; *see also* D.E.347, at 8-10.    The beneficial interest of the defendant in the trust was purely and uniquely personal in nature: he could not transfer to a third party the innately personal right to occupy the residence, nor could he give a third party the right to be maintained in the third party's accustomed standard of living, health care claims, education, and other similar needs.    Whatever rights or powers he possessed as a settlor or beneficiary was nothing that a creditor could attach or take.    It is the same as if a wife held title to her home with her husband having a life estate in the house.    If the husband were to die, his life estate interest would be extinguished.    Nothing would change, however, with regard to the home upon the cessation of the husband's interest.    The wife would still hold the title to the home and retain her legal interest, but no transfer would occur. The same is true here.    Upon the cessation of the defendant's interest in the Trust, no transfer occurred and nothing changed with regard to the home.    Ms. De Castro maintains the legal and equitable interests she has had since 2013.

Equally, the Government is incorrect in falsely accusing Ms. De Castro of misbehavior in its quest to seize the untainted home and roof from over the heads of three small children and their innocent mother.    Ms. De Castro did nothing wrong.    The Government desperately writes Ms. De Castro was complicit in the defendant violating his bond conditions and that she "actively participated in such transgressions."    D.E. 357, at 3.    By signing the marital settlement agreement, however, she did not "sell, pledge, mortgage, hypothecate, encumber, etc. any property" the defendant owned.    D.E. 103 at 2 (Bond paperwork).    Nor did she participate in the

selling, mortgaging, hypothecating, or encumbering of any property the defendant owned.   She, in fact, as the Government knows, refused to offer her home as security on the defendant's bond and refused to co-sign the bond.   D.E. 101, at 4 (Bond Hearing transcript).   Instead, by signing the marital settlement agreement, Ms. De Castro divorced a man who committed crimes without her knowledge and upended the lives of her and her children.   Furthermore, she believed that the amendment to the terms of the trust resulting from the signing of the marital settlement agreement ended the defendant's responsibilities with the Trust – responsibilities which he would not be able to act on or fulfill as an inmate in prison.   She did not act to hide an asset or deprive the Government of something to which they were entitled.

Moreover, even if the Court makes the finding that somehow a transfer occurred, there is zero evidence that Ms. De Castro can be held responsible for the *defendant* failing to comply with *his* bond conditions.   Though she attended the defendant's bond hearing, there is no proof Ms. De Castro heard or understood the Magistrate Court's discussion about property and investments.[6] Instead, what is clear is that no Court ever instructed or ordered Ms. De Castro what she could or could not do regarding her home.   The Magistrate Court declined to question or speak to Ms. De Castro.   Equally, Ms. De Castro did not sign anything, receive any document, or see any paper which prohibited her from amending the Trust.   The Government has cited no case and can make no credible argument that Ms. De Castro was an "active participant" in undermining the defendant's bond conditions.   This shameless attempt to scare Ms. De Castro should be fully rejected.

---

[6] The defendant's bond hearing was a very emotional event for Ms. De Castro and her family and the first time she had seen the defendant in the United States in nine months.

III.   **Whether Or Not The Defendant Gave Up His Rights As a Settlor or Beneficiary, Ms. De Castro Holds An Interest in Her Home That Is Not Vested In The Defendant; Thus, The Home Cannot Be Forfeited.**

The R&R and Government agree that Ms. De Castro has an interest in her home.   The Government is mistaken though that, if the defendant maintains some interest in the home (despite the marital settlement agreement and Trustee resignation), the entire untainted, innocent home can be seized away from innocent third parties.   By making this claim, it continues to confuse civil *in rem* forfeiture with criminal *in personam* forfeiture.   See D.E. 347, at 3.   Further, it ignores the law regarding forfeiture of substitute assets.   The Government makes no attempt to argue that the analysis in *United States v. Lester*, 85 F.3d 1409 (9th Cir. 1996) – the primary case cited by Petitioners - was incorrect or flawed.   The Ninth Circuit in *Lester* examined whether the Government could use the "substitute property" provision in the criminal forfeiture statute to seize an innocent spouse's interest in jointly-held real property to satisfy the forfeiture obligations of the guilty spouse.   *Id.* at 1411.   The appellate court concluded that "where the property subject to forfeiture is not connected in any way to the guilty spouse's criminal activities, but rather is 'substitute property,' it is even clearer that only the property of the defendant … is subject to forfeiture."   *Id*. at 1415.   Thus, the court held that an innocent wife's vested interest in real property owned with the defendant husband was not subject to criminal forfeiture as substitute property.   *Id.*   Further, the property itself could not be forfeited.   *Id.* at 1413.

Instead of addressing a case (*United States v. Lester*) that conducted a thorough, detailed analysis of the significant differences between tainted property and substitute assets and the rights of innocent third parties, the Government attempts to distinguish the Eleventh Circuit cases which made the exact same finding as the *Lester* decision.   The Government misstates that these

Eleventh Circuit cases support its position.   They do not.

To avoid further confusion, we discuss them at greater length here.

In *United States v. Jimerson*, 5 F.3d 1453 (11th Cir. 1993), the court did not perform the in-depth analysis as the *Lester* court did, but still concluded that the innocent spouse's one-half interest in property was not criminally forfeitable.   In *Jimerson*, the husband and wife owned a home.   The husband used the home to facilitate the commission of the federal offense, rendering it tainted property.   The court held that the wife could not take back the *entire* home.   By holding the home as tenants by the entirety, the spouses had identical interests so that her interest in the tainted home was not superior to the Government's interest.   At the same time, however, the Government also could not forfeit the *entire* home.   The court stated that "[t]he judgment of forfeiture did not affect [the innocent spouse's] interest in the residence.   Rather, <u>she continues to hold an indivisible one-half interest in the entire residence property</u>.   Thus, the only property interest taken by the Government is the interest held by [the defendant husband]."   *Id*. at 1454 (emphasis added).

Similarly, in *United States v. Fleet*, 498 F.3d 1225 (11th Cir. 2007), the Eleventh Circuit assumed without elaboration that an innocent wife's one-half interest in property was not forfeitable.   In *Fleet*, the husband was convicted of federal offenses, including money laundering. The Government sought substitute property to satisfy part of the forfeiture judgment since the defendant did not have enough tainted assets to cover the full money judgment.   The Government sought the guilty husband's *interest* in cars and a house he owned with his wife.   The Government did not seek to forfeit the entire home.   As with *Jimerson*, the defendant owned a home with his wife as tenants by the entirety and thus had an indivisible one-half interest in the marital property.

*Id*. at 1227.   The defendant fought the forfeiture of his interest in the home claiming the homestead exemption protected his interest.   The appellate court disagreed finding that the trial court was right to forfeit his *interest* in the home.   The Eleventh Circuit noted "[t]he order did not propose to forfeit the interest of [the defendant's] wife in any of that property, only his own interest."   *Id*.   *Fleet* also briefly discussed the differences between civil *in rem* forfeiture versus criminal *in personam* forfeiture.   The court noted that the innocent spouse defense does not apply to criminal forfeiture because instead of taking the entirety of a property, criminal forfeiture only permits the taking of a defendant's *interest* in property.   Id. at 1232.   <u>An innocent spouse "retains her property interest</u>."   *Id*. (emphasis added).

In another case, the Eleventh Circuit considered whether an innocent wife established she was a bona fide purchaser for value in her husband's interest in their home or whether she had an interest in the home that was superior to her husband's at the time he committed the acts giving rise to the forfeiture.   *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000).   Even though the case involved tainted property, the court emphasized that the Government had only a right to seek forfeiture of the husband's *interest* in the home, not the home itself.   *Id*.   "All parties agree that the government's interest, if any, is limited to [the defendant's] one-half interest in the property.   <u>[The innocent wife's] one-half interest was never subject to forfeiture</u>...."   *Id*. (emphasis added).   The Eleventh Circuit held, though the innocent wife could not establish a claim to the husband's forfeited interest, *her* interest "remain[ed] unaffected by the [the appellate court's] decision."   *Id*. (emphasis added).

Likewise, Magistrate Judge Hoffman from the Middle District of Florida found that an innocent wife's one-half interest in a home could not be forfeited.   *United States v. Morris*, 2020

WL 2515965 (M.D. Fla. April 15, 2020).   The husband in *Morris* pleaded guilty to conspiracy to commit money laundering.   Following the husband's change of plea, the Government sought to forfeit the family's home as a substitute asset.   *Id*. at *2.   The district court entered a Preliminary Order of Forfeiture forfeiting the husband's *interest* in the home.   *Id*.   The defendant's innocent wife filed a Petition asserting her claim to a one-half interest in her home.   The wife had deeded her one-half interest of the home into a revocable trust after the Government had filed charges against her husband.   While the parties litigated the Petition, the United States represented that it did not dispute the innocent wife's one-half interest in her home and was not seeking to forfeit her interest.   *Id*. at *3.   The Magistrate Judge nonetheless performed an analysis of the wife's interest in her home.   The Magistrate Court concluded that the innocent wife had a valid one-half interest in her home.   The Report and Recommendation found that while the Government could seize the husband's interest, <u>the innocent wife's claim was valid as to her interest and it could not be forfeited</u>.   *Id*. at *7 (emphasis added).   The district court subsequently adopted the Report and Recommendation.   *United States v. Morris*, 6:18-cr-159-LRH (M.D. Fla. May 15, 2020).

These cases affirm the law that an innocent wife's vested interest in property cannot be criminally forfeited.   It makes sense that criminal forfeiture can only reach a defendant's *interest* in the subject property – not the entirety of the property itself.   "Because it seeks to penalize the defendant for his illegal activities, *in personam* forfeiture reaches only that property, or portion thereof, owned by the defendant."   *Gilbert*, 244 F.3d at 919.   Although Ms. De Castro and the defendant owned the home in trust, the terms of the trust mirrored the same control elements that would apply had the former couple owned the home as husband and wife.   On this point, the R&R agreed.   Regarding the interests of Ms. De Castro and the defendant (assuming the

defendant remained a settlor and beneficiary), the Magistrate Court found "that the interests between [the defendant] and [Ms. De Castro] are, in material respects, equal."   D.E. 316, at 28. Because "the only property [which can be] forfeited is the *interest* that belongs to the defendant," not the entire home, innocent ex-wife Ms. De Castro cannot have her interest in the property taken away. *Fleet*, 498 F.3d at 1232 (emphasis added).   Accordingly, the forfeiture order should be amended.

***

Petitioners have alleged sufficient facts to support a valid claim that Ms. De Castro and her children's home should not be forfeited.   To find otherwise renders forfeiture a punishment of innocent individuals who have committed no crime and who hold innocent, untainted property. This cannot be what Congress intended as "a component of a system of justice."   *Bennis*, 516 U.S. at 456.

WHEREFORE, Olympia De Castro and the 597 Hibiscus Lane Revocable Trust respectfully moves this Court to sustain their Objections to the Report and Recommendation.

Respectfully submitted,

**MARKUS/MOSS** PLLC
40 N.W. Third Street, PH1
Miami, Florida   33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:     /s/ A. Margot Moss
A. Margot Moss
Florida Bar Number 091870
mmoss@markuslaw.com

/s/ David Oscar Markus
David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com