EXHIBIT V

A-125—Residential contract of sale. 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of June **5** , 2020 ("Execution Date")        BETWEEN

**314 Hicks Residence Trust by Edwin Jager, Trustee**
Address: **314 Hicks Street, Brooklyn, NY 11201**
Social Security Number/ Fed. I.D. No(s):                                        hereinafter called "Seller" and

~~DC 2019 Irrevocable Trust~~ by Allison Domeneghetti as Trustee
*[handwritten: 314 Hicks LLC]*
Address: **237 Old Army Road, Scarsdale, NY 10583**
Social Security Number/ Fed. I.D. No(s):                                        hereinafter called "Purchaser".

## The parties hereby agree as follows:

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: **314 Hicks Street**
                        **Brooklyn, NY 11201**
Tax Map Designation:
**Block 260, Lot 57**
Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, ~~door mirrors~~, switch plates and door hardware, venetian blinds, window treatments, shades, screens, ~~awnings~~, storm windows, storm doors, window boxes, mail box, TV aerials, ~~weather-vane~~, ~~flagpole~~; pumps, shrubbery, fencing, ~~outdoor statuary~~, ~~tool shed~~, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, ~~built-in microwave oven~~, refrigerators , freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins. *not excluded below (strike out inapplicable items).* front gate

*[handwritten: carpet runners, built in microwave, curtains, drapes, all equipment in house including AV & security system, Apple TVs, sonos speaker on parlour floor, bathroom mirrors   *to the extent located in the Premises as of the Execution Date and to the extent applicable, in the condition in Paragraph 16(e) herein.]*

Excluded from this sale are furniture and household furnishings and

**staged furniture and mirrors**

3. **Purchase Price.** The purchase price is    $5,900,000.00
payable as follows:
    (a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
                                                                    $590,000.00
    (b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:                                $
    (c) by a purchase money note and mortgage from Purchaser to Seller:                                                              $
    (d) balance at Closing in accordance with paragraph 7:
                                                                    $5,310,000.00

4. **Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
    (a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of              percent per annum, in monthly installments of $          which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
    (b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

5. **Purchase Money Mortgage.** (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $

for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than              per cent per annum and the total debt service thereunder shall not be greater than $

per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. **Downpayment in Escrow. (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at**

### Signature Bank, N.A. 261 Madison Avenue NY, NY

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within

such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against of all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney or title company is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 1,000.00:

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00              ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.*) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before    30    days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ 793,125              for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home,

2

payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any

other state; foreign banking corporation licensed by the Superintendent of Banks of New York State or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

(f) exceptions set forth on Schedule B annexed hereto

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.                               of Closing

(b) (*Delete if inapplicable*) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and except for the STAR tax exemption

(v) Seller has been known by no other name for the past ten years. except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of

repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16.2without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as: **any reputable title company licensed to do business in the State of New York**

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract and the **standard printed exceptions**.

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain and Sale Deed with Covenants against Grantor's Acts**

deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b). If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. **Closing Date and Place.** Closing shall take place at the office of: Seller's counsel 900 Third Avenue, New York, NY 10022

at          10          o'clock on **or about June 12, 2020**
or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of
**via escrow/ virtual closing through purchaser's title company**

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a ONE       family dwelling at the date of Closing.

(c) The delivery to Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if

any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are none or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed. (ii) fuel; ~~(iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.~~

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.                     10

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than ~~30~~days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installment, ~~and the parties shall adjust the installment for the period in which the closing occurs.~~

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to payor discharge, Seller may use any portion of the cash balance of the purchase price to payor discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

4

*Shall be Customary... in the State of New York* *Shall be Seller*

**21. The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, ~~if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser.~~ Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects. Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending ~~beyond the date upon which Purchaser's mortgage commitment, if any, shall expire),~~ and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without our abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder. Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance, ~~but excluding damages except in the event of Seller's willfull default (but under no circumstances will Purchaser be entitled to consequential damages, loss of profit or the like):~~

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

— or delivery confirmed by the courier by email

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than:

<br>

Leslie J. Garfield & Co.: Ravi Kantha

<br>

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall

not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity

Continued on Rider attached hereto and made a part hereof.

(i)   If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

In Witness Whereof, this contract has been duly executed by the parties hereto.

_____ as trustee

**314 Hicks Residence Trust**                    Seller

_____
                                                Seller

Attorney for Seller:
Caryn Ettinger-O'Brien, Esq.
Address: Tannenbaum Helpern Syracuse & Hirschtritt LLP
            900 Third Avenue, New York, NY 10022
Tel.: 212-702-3159                Fax: 212-371-1084

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.
Tannenbaum, Helpern, Syracuse & Hirschtritt, LLP

By: _____
Name: Caryn Ettinger-O'Brien
Title: Counsel

_____          Purchaser
DC 2019 Irrevocable Trust
314 Hicks LLC
     Allison Domeneghetti          MGP.
                                    Purchaser

Attorney for Purchaser
Jill Levy Reiter, Esq.
Address: 251 Fifth Avenue, 4th Floor
            New York, NY 10016
Tel.: 212-574-6979                Fax:

Title Number: HLS-K-18625

Schedule A

Revised: 05/13/2013
Page    1

All That certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows;

BEGINNING at a point formed at the northwesterly corner of Hicks and State Street:

RUNNING THENCE northerly along the northwesterly side of Hicks Street 24 Feet 5 Inches more or less to the middle of a party wall;

THENCE westerly and part of the distance through the middle line of said party wall and parallel with State Street, 76 feet 8 3/4 inches;

THENCE southerly parallel with Hicks Street, 24 Feet 5 Inches to the northerly side of State Street:

AND THENCE easterly along the northerly side of State Street, 76 feet 8 3/4 inches to the northwesterly corner of State and Hicks Street, the point of BEGINNING.

The above description is based on a Survey made by Boro Land Surveying, PC dated 5/13/2013.



Title Number: HLS-K-18625
Owner's Policy
Schedule B

Policy Number: 5011436-0045239E

The following are expressly excluded from coverage of Policy, and the Company will not pay loss or damage costs, attorneys' fees, or expenses which arise by reason of:

1.  Rights of tenants or persons in possession.

2.  Notice of Designation in Record Liber 295 page 271

3.  Tax Search discloses Meter Number 2432 which has been read to the date indicated thereon. Policy will except subsequent water meter readings from the date of last actual reading.

4.  Zoning Lot Description and Ownership Statement in CRFN 2008000347553

5.  Zoning Lot Certification in CRFN 2008000347552

6.  Survey exceptions set forth herein

7.  ~~Mortgage made by Edwin Jager, as Trustee of 314 Hicks Residence Trust to "MER"S as nominee for Luxury Mortgage Corp. in the amount of $3,500,000.00, dated 10/11/2013 and to be duly recorded in the Kings County Register's Office.~~

8.  ~~Mortgage made by Edwin Jager, as Trustee of 314 Hicks Residence Trust to Northeast Alliance Federal Credit Union in the amount of $400,000.00, dated 10/11/2013 and to be duly recorded in the Kings County Register's Office.~~

Date of Report: 08/15/2013

Title Number: HLS-K-18625
Survey Reading

Policy Number: 5011436-0045239E                                      Page    1

Survey made by Boro Land Surveying, PC dated May 11, 2013 shows:
a 3 story building, yard and the following:

1. Encroachments onto and/or projections over subject premises from premises
adjoining on the west:
-stucco up to 0 feet 2 inches
-roof cap 0 feet 2 1/2 inches
FOR MORTGAGE POLICY ONLY: Policy insures that same will not prevent the
use of the improvements on subject premises.

2. Variations between walls, slate, fences, retaining walls, walls and record lines
of title.

3. Encroachments onto subject premises from premises adjoining on the north:
-pier 0 feet 9 1/2 inches
-base 1 foot 11 1/4 inches
FOR MORTGAGE POLICY ONLY: Policy insures that same will not prevent the
use of the improvements on subject premises.

4. One story building adjoining on the north encroaches onto subject premises by
up to 0 feet 4 3/4 inches.
FOR MORTGAGE POLICY ONLY: Policy insures that same will not prevent the
use of the improvements on subject premises.

5. Party wall straddles part of northerly record line.
FOR MORTGAGE POLICY ONLY: Policy excepts and insures the right to use
and maintain same as a party wall for as long as it stands.

6. Chimney on building on subject premises carried to roof of building adjoining
on the north.

7. Encroachments onto and/or projections over Hicks Street:
-iron fence 4 feet 3 1/2 inches on street
-low ret. wall 5 feet 0 1/2 inches on street
-iron railing 5 feet 7 1/4 inches on street
-planter wall 0 feet 9 inches on street
-steps 5 feet 9 inches
FOR MORTGAGE POLICY ONLY: Policy affirmatively insures against monetary
loss or damage occasioned by the enforced removal of same.

8. Encroachments onto and/or projections over State Street:
-roof cornice 0 feet 9 inches
-window sills 0 feet 2 inches
-window cornice 0 feet 2 inches

Title Number: HLS-K-18625
Survey Reading

Policy Number: 5011436-0045239E

Page    2

-plaque 0 feet 0 1/2 inches
FOR MORTGAGE POLICY ONLY: Policy affirmatively insures against monetary
loss or damage occasioned by the enforced removal of same.

## SELLER'S RIDER TO HOUSE CONTRACT OF SALE

Seller:        314 Residence Trust by Edwin Jager Trustee

Purchaser:     319 Hicks LLC
               ~~DC 2019 Irrevocable Trust~~ by Allison Domeneghetti as Trustee

Premises:      314 Hicks Street, Brooklyn, NY 11201

29. If this Rider conflicts in any way with the printed form Contract of Sale, this Rider shall control. As used in this Rider, the term "Contract" shall mean said printed form of Contract of Sale, as amended by this Rider.

30. The acceptance of a deed by the Purchaser shall be deemed full compliance by the Seller with all of the provisions of this Contract of Sale on the part of the Seller to be performed, and discharge of every representation, agreement and obligation on the part of Seller except as to those matters specifically provided herein to survive the closing.

31. Within two (2) days of the date hereof Purchaser agrees to order a title report on the premises and furnish the Seller with a copy of the report and notice of any objections to title contained in such report within five (5) days after receipt of same. The Seller shall be afforded a reasonable opportunity to remove all objections to title, including violations, notice of which is served by the Purchaser upon the Seller, subject however to the provisions of Paragraph 32 hereof.

32. Nothing contained in this Contract shall require the Seller to incur any expense or commence litigation, nor shall Seller be required to bring any proceedings, nor request or obtain any variance, to legalize the Premises or other improvements thereto, in order to render the Seller's title marketable. Purchaser shall have the option of (i) taking title to the Premises notwithstanding and without any abatement of the purchase price, or (ii) cancelling the Contract and having the down payment returned to the Purchaser, in full.

33. If the premises be subject to any liens such as transfer, inheritance, estate, franchise, license or other similar taxes, the amount of which has not been finally fixed, the same shall not be deemed an objection to title, provided that any title company in good standing will, at the time of the closing of title hereunder, issue or bind itself to issue its policy which will insure the Purchaser against collection of said taxes from the premises.

34. The premises are sold and conveyed subject to any covenants, restrictions, easements and agreements, contained in former deeds or other instruments of record insofar as the same are not violated by present structures or use. In the event the foregoing are violated, same shall not be deemed objections to title provided a title company will insure that (i) the present structures may remain in their present location as long as same shall stand and/or (ii) said violation(s) will not cause a reversion or forfeiture of title.

35. The premises are sold and conveyed subject to rights of utility companies, if any.

36. The premises are sold and conveyed subject to the state of facts shown that certain survey made by Boro Land Surveying, PC dated 5/13/2013, or on an updated survey or personal inspection provided same does not interfere with the use of the premises as a residential dwelling.

37. The premises are sold and conveyed subject to minor encroachments (of less than one foot) of retaining walls, hedges and fences and variations between tax lot diagrams and record lines and retaining walls, hedges and fences.

38. Seller shall not be obligated to repair any minor damage such as insignificant small holes or other immaterial damage to the walls, ceilings, floors or doors, caused by the removal of Seller's personal property from the Unit. In the event the Stagers chip any of the paint in connection with the removal of their property, Seller will touch up those specific areas, but in no event shall Seller be required to repaint or touch of the paint of the entire Premises.

39. All adjustments of taxes and water rates shall be made as of the day immediately preceding the date of closing set forth above and shall be computed by the calendar year and day method (365 or 366 days).

40. It is agreed that Seller shall pay the New York City Real Property Transfer Tax and the New York State Real Estate Transfer Tax (except for the "Mansion Tax") at closing, by certified, bank or attorney's escrow check, or by wire transfer of immediately available federal funds and Purchaser shall pay the New York State "Mansion Tax" at Closing by certified, bank, or attorney's escrow check or by wire transfer of immediately available federal funds. Purchaser and Seller agree to duly complete a New York State Board of Equalization and Assessment Real Property Transfer Report at closing, and to deliver same to the title company together with the deed.

41. Supplementing and modifying Paragraph 6, it is agreed that:

   A. Escrowee may rely and shall be protected in acting or refraining from acting upon any written notice, instruction or request furnished to it here under and believed by it to be genuine and to have been signed or presented by the proper party or parties.

   B. Escrowee may consult with counsel of its own choice and shall have full and complete authorization and protection for any action taken or suffered by it hereunder in accordance with the opinion of such counsel.

   C. If conflicting demands are made or notices are served upon Escrowee with respect to the Downpayment, or if Escrowee shall hold a good faith belief that the rights of a claimant to the Downpayment are not absolutely clear, the parties hereto agree that Escrowee shall be entitled to refuse to comply with any such claim or demand and to withhold and stop all further proceedings in the performance of this Contract so long as such disagreement shall continue. In so doing, Escrowee shall not be or become liable for damages or interest to either of the parties hereto or to any other person for its failure to comply with such conflicting or adverse demands or notices. Escrowee shall be entitled to continue to so refrain and so refuse to act until (i) the rights of the adverse claimants have been finally adjudicated in a court having and assuming

jurisdiction of the parties and/or the Downpayment or (ii) all differences shall have been adjusted by mutual agreement of the parties, and Escrowee shall have been notified thereof in writing signed by both of said parties. In the alternative, Escrowee may, but shall not be obligated to, file a suit in interpleader for a declaratory judgment for the purpose of having the respective rights of the claimants adjudicated, and/or may deposit with a court of competent jurisdiction the Downpayment held hereunder, in which event Seller and Purchaser, jointly and severally, agree to pay all costs, expenses and attorneys' fees incurred by Escrowee in connection therewith. In the event that Escrowee shall deposit the Downpayment with such court, Escrowee shall be fully released and discharged from any and all duties and obligations thereunder.

D. Escrowee shall not be bound by any modifications of this contract which affects its rights or obligations under this contract unless it consents to such modification in writing. In the event that there is a dispute as to payment of the Downpayment and as a result, Escrowee incurs any cost or expense, including reasonable attorneys fees, Escrowee shall be entitled to payment of such costs and expenses out of the Downpayment before any other party is entitled to payment of any portion of the Downpayment.

E. The Downpayment shall be deposited by Escrowee in an non-interest bearing account at Signature Bank, N.A. (the "Depository Bank"). Seller and Purchaser consent to the deposit of the Downpayment at the Depository Bank, and acknowledge that the amount thereof exceeds the maximum amount for deposits that are insured by the Federal Deposit Insurance Corporation. Escrowee shall not be liable for any loss resulting from, or in any manner arising out of, the deposit of the Downpayment in the Depository Bank, including, without limitation, the failure, refusal or inability of the Depository Bank to pay the Downpayment, or any portion thereof, or any interest earned thereon, as directed by the Escrowee, including without limitation, any such failure, refusal or inability resulting from the failure, insolvency or suspension of the Depository Bank as a banking institution or otherwise.

F. Purchaser and Seller acknowledge and agree that Seller's attorney, despite the fact that it is acting as Escrowee hereunder, may represent Seller in any dispute arising under the Contract of Sale.

42. Copies of Notices shall be sent simultaneously in the manner set forth in Paragraph 25 as follows:

If to Seller:
Tannenbaum Helpern Syracuse & Hirschtritt LLP
900 Third Avenue
New York, New York 10022
Attention: Joel S. Hirschtritt, Esq./Caryn Ettinger-O'Brien, Esq.
Email:hirschtritt@thsh.com/ ettinger@thsh.com

If to Purchaser:
Jill Levy Reiter, Esq.
251 Fifth Avenue, 4th Floor

New York, NY 10016
Email: jill@jlevyreiteresq.com

43. Purchaser acknowledges that they have the right to a summary of the heating and/or cooling bills or a complete set of said bills under Section 17-103, Chapter 555 of the laws of the State of New York, commonly known as the Truth in Heating Law. The Purchasers hereby waive their right to copies of said bills or a summary of said bills and acknowledge that they have not requested same.

44. Purchaser hereby waives the opportunity to conduct a risk assessment or inspection of the premises for the presence of lead-based paint and/or lead-based paint hazards or any other hazardous material. Purchaser and Seller shall execute the Lead Paint Disclosure form annexed hereto simultaneously with the execution of this Contract.

45. The parties hereto acknowledge the following:

   A. Seller is required to comply with the New York State Real Property Disclosure Act (the "Act") as follows: either Seller is to provide a written property disclosure statement (a "Disclosure Statement") and attach such Disclosure Statement to this Contract, or, in lieu of furnishing such Disclosure Statement, Seller is to provide a $500.00 credit to Purchaser, against the Purchase Price, at the time of closing/transfer of title as full satisfaction of Seller's obligation under the Act.

   B. A fully executed Disclosure Statement is not attached to this Contract and has not been previously provided to Purchaser. Purchaser acknowledges, agrees and understands that Seller has elected not to provide same. Seller hereby agrees to give Purchaser a $500.00 credit at the closing/transfer of title against the agreed upon Purchase Price.

46. The Purchaser represents that the Purchaser has fully and completely investigated, examined and inspected said Premises and the personal property included in this sale and is purchasing the same "AS IS" except as set for items set forth on Purchaser's Rider. The Contract as written contains all the terms of this Agreement entered into between the parties, and Purchaser acknowledges that Seller made no representations, is unwilling to make any representations, and has held out no inducements to the Purchaser other than those herein expressed. Except as herein specifically set forth, the Seller shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the said Premises and the personal property, to the physical condition, expense or operation of the Premises, or to what use the Premises can be applied. The Seller shall not be bound or liable in any manner by any verbal or written statements, representations, or information pertaining to the above Premises furnished by any person, unless same are specifically set forth herein.

47. Seller represents that at or prior to Closing, Seller shall assign to Purchaser any transferable warranties in Seller's possession and Seller will give Purchaser any manuals and

[1126046-3]

-4-

instructions as to the Premises, fixtures, appliances or personal property therein, to extent same are in Seller's possession and control.

48. Purchaser represents that this is an "all cash" transaction and will not be financing the purchase of this Unit. This is a material representation upon which the Seller is relying in entering into this Contract.

49. Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Premises between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, on mutually agreeable dates, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise) provided Purchaser and its architect, decorator or such other authorized person is accompanied by the broker during such access visits. Purchaser shall assume all risk during such access visits and Purchaser shall indemnify Seller against any losses, liabilities, damage, claims, costs or expenses for injury or damage to persons or property, including without limitation, the property of Seller, arising out of the acts or actions of Purchaser, its agents, contractor, architect, decorator, representatives or invitees. Seller shall have no obligation to repair same and may convey same to Purchaser subject to such damage. Purchaser's agreement to indemnify Seller shall survive Closing or the earlier termination of this Contract. Purchaser shall have the right to inspect the Premises at a reasonable time during the 24 hour period immediately preceding the Closing

50. Intentionally Omitted.

51. Counterparts/Electronic Signatures. This Contract may be executed and delivered by the parties individually in several separate counterparts, each of which shall be deemed an original, and all of said counterparts taken together shall be deemed to constitute one and the same instrument. This Contract may also be executed and delivered by facsimile or "PDF" email signatures; facsimile or "PDF" email signatures shall be treated as original signatures, and facsimile or "PDF" email copies of this Contract shall be treated as original copies of this Contract.

52. The Parties duly executed this Rider to the Contract, with the intention of modifying or supplementing the terms of the printed Contract to which this Rider is annexed, as of the date of the printed Contract annexed thereto

SELLER:

314 Hicks Residence Trust

By: _____
Name: Edwin Jager
Title: Trustee

PURCHASER:

DC 2019 Irrevocable Trust  314 Hicks LLC

By: _____
Name: Allison Domeneghetti
Title: Trustee

[1126046-3]

-5-

PURCHASER'S RIDER TO CONTRACT OF SALE Dated June $5$, 2020
Between 314 Hicks Residence Trust by Edwin Jager, Trustee, as Seller
and DC 2019 Irrevocable Trust, by Allison Domeneghetti, Trustee, as
Purchaser
Premises: 314 Hicks Street, Brooklyn, New York

1.      In the event of any conflict or inconsistency between the provisions of this Purchaser's Rider and those set forth in the printed portion of the Contract to which this Rider is annexed or the Seller's Rider, the provisions of this Purchaser's Rider shall govern and be binding.

2       Supplementing and modifying paragraph 16 of the printed form of this Contract, the roof and basement shall be free of leaks, seepage and/or standing water at closing. Further, Seller shall have the items listed on the annexed Schedule A repaired prior to closing.

3.      At or prior to Closing, Seller, as a courtesy only and not as an obligation hereunder, shall provide the following provided same are in Seller's possession. Seller's failure or inability to deliver same shall not be a default hereunder nor shall it relieve Purchaser of its obligations hereunder or allow Purchaser to delay the Closing :

- warranty and contact information for repair calls on all items covered under warranty including mechanicals and kitchen appliances;

- completion certificates and/or certificate of occupancy confirming house passed all code inspections;
- As-Built Plans inclusive of outdoor rooftop terrace;

- alarm and camera system: software and technical specifications, contact information of service provider;.
- Sound, lighting, thermostats: technical specifications, and contact information of service provider;
- Mechanicals: technical specifications, and contact information of service provider;

- Others inclusive of garage door, dumbwaiter, electrical shades: contact information of all service providers who maintain items in and on the property;

- Landscape: contact information of service provider.

4       At closing, Seller shall deliver to Purchaser and shall assign by written instrument to Purchaser Seller's right to any warranties Seller may have regarding the property and/or appliances and fixtures contained therein.

5.      Seller represents that:

a.      to the best of Seller's knowledge, Seller has not been adjudicated a bankrupt and he has no actual knowledge of any unsatisfied liens and/or judgments against him;

b.    Seller has not been known by any other name for the past ten years;

c.    Seller is the sole owner of the Property and has sole right, power and authority to sell, convey and transfer the same in accordance with the terms of this Contract;

d.    to the best of Seller's knowledge, no actions, suits or proceedings have been instituted and are pending against Seller nor has Seller received written notice of any threatened action or proceeding by any party claiming a right of possession use, occupancy or ownership of the Premises;

e.    to the best of Seller's knowledge, no action, suits or proceedings relative to the Premises of any nature whatsoever have been instituted and/or are pending against Seller, nor has Seller received written notice of any threatened action or proceeding before any federal, state, municipal or government court, department, commission, board, bureau, agency or instrumentality;

f.    Seller has not entered into any contract for the sale of the Premises to any party other than Purchaser pursuant to this Contract and no party, other than Purchaser as provided hereunder, has any right or claim to purchase all or part of the Premises from Seller;

g.    to the best of Seller's knowledge, Seller has no knowledge of the existence of any asbestos-containing material or the existence of any lead in the Premises;

h.    Seller has not requested or applied for, and shall not request or apply for between the date hereof and the Closing, any alteration permit, building permit or demolition permit or other approval of any government or quasi-governmental authority having jurisdiction over the Premises;

i.    to the best of Seller's knowledge, the Premises have direct and legal access to a public and legally opened street and there are no underground oil tanks on the property;

j.    There is a proper water meter installed on the premises, as required by law;

k.    The obligation of Purchaser to purchase the Premises is conditioned upon the truth and accuracy of all of the aforesaid representations and warranties of Seller;

l.    In addition to delivering good title, Seller represents to the best of Seller's knowledge, that the premises is in compliance with all applicable laws, rules, regulations, ordinances, code requirements, and the like; and

m.    Seller represents to the best of Seller's knowledge, that all renovations, rehabilitations, structures, improvements, extensions and additions, as presently exist, are legal and have been completed in conformance with applicable codes, governmental regulations and all necessary permits, sign offs, work orders, certificates of completion, and/or certificates of occupancy have been obtained. At Closing, there shall be no open or non-signed off permits or work orders or the like against the Premises. It shall be a condition of Purchaser's

obligations to close under this Contract that any open permits filed with the New York City Department of Buildings shall have been signed off.

6.      Each party shall execute, acknowledge and deliver to the other party such documents as may be reasonably requested in order to comply with IRC§ 6045 (e), insofar as the same requires reporting of information with respect to real estate transactions. The parties designate the Seller as the attorney responsible for reporting the information as required by law pursuant to IRC§ 6045 (e). The provision of this paragraph shall survive closing.

7.      Intentionally Omitted.

8.      Intentionally Omitted.

9.      If there are any inconsistencies between the printed portion of the contract and the standard form jointly prepared by the Real Property Section of the New York Bar Association, the New York Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association, (11/00) the terms of the standard form shall control.

10.     Supplementing Paragraph 10, the parties acknowledge and agree that there are two open elevator violations at the Premises, annexed hereto as **Exhibit 2**. The parties further agree that Seller shall issue a credit in the amount of $3,000 to Purchaser at Closing on account of such violations and Seller shall have no obligation to cure and remove such violations. In additional, the Seller shall have the 2020 Annual Elevator Inspection completed "Satisfactory" and filed.

11.     The respective attorneys for the parties hereto shall have the right to extend any period of time herein so long as same shall be in writing in accordance with the terms of notice of this Contract.

12      Seller shall pay the New York City Real Property Transfer Tax and the New York State Transfer tax and Purchaser shall pay the "Mansion Tax" at Closing and each party responsible for paying the tax shall hold the other free, harmless and indemnified of and from same, including reasonable attorney's fees and disbursements. This paragraph shall survive Closing.

13.     Any errors or omissions in computing closing adjustments at the time of closing shall thereafter be corrected. Further, any unintentional misstatements of funds due following closing, including but not limited to common charges, real estate taxes, shall be corrected and Purchaser or Seller shall thereafter be responsible for those corrected amounts. This paragraph shall survive closing for one (1) year.

14.     Seller shall repair any damage resulting from the removal of personal property from the Premises (except minor holes resulting from the removal of wall decorations/paintings/mirrors) and shall replace any lighting fixtures that are permitted to be removed from the Premises in accordance with the Contract, with standard lighting.

15.     If either party brings an action or legal proceeding for damages or arising out of an alleged breach of this Contract, then the prevailing party in any such action or proceeding shall also be entitled to recover from the other party as part of such action or proceeding or in any separate

action brought for that purpose, such prevailing party's reasonable attorney's fees and costs. This paragraph shall survive Closing or the earlier termination (cancelation of this Contract).

16. Notwithstanding anything to the contrary contained herein, Purchaser shall have the one time right of assignment to an entity controlled by the beneficial owner of Purchaser, immediate family members of the beneficial owner of Purchaser (i.e., spouse, children, trusts for the benefit of such persons or entities wholly owned and controlled by such persons.).

## SIGNATURE PAGE OF RIDER TO 314 HICKS CONTRACT

SELLER:

314 Hicks Residence Trust

By:
Name: Edwin Jager
Title: Trustee.

PURCHASER.

DC 2019 Irrevocable Trust   314 Hicks LLC

By:
Name: Allison Domenegheth
Trustee: MER.

## Punch List Items Exhibit 1

ROOF:

- Cap for W&D exhausted/vent to be replaced (*in process*)
- PVC direct vent missing gooseneck (*in process*)
- ~~Patched area of roof with cracked flashing to be fixed~~
- ~~Parapet flashing seam needs caulk~~
- ~~Gasket to be replaced around Skylight~~
- ~~Fallen piece of metal flashing~~
- ~~Skylight flashing installed to prevent water intrusion~~
- Remove wires / loose cables (see image 2) *(done)*

KIDS FLOOR: (4th)

- ~~W&D exhaust pipe to be replaced *(in process)*~~
- Hook lock in one of the bathrooms to be take it out *(done)*
- ~~Stain/dirt on the blinds/curtains~~
- ~~Door back bedroom need to be cleaned/painted~~
- ~~Touch up painted needed~~
- Front bedroom closet light to be replaced (done)
- ~~Cracking noted at skylight wall attached with the metal grate (skylight)~~
- Drain in one of the bathtubs need to be adjusted, water comes out low from the tab *(in process)*
- Rear right bedroom deadbolt does not latch (*done*)

MASTER FLOOR: (3rd)

- Bathtub disconnected drain linkage (in process)

- Bathtub defective shower diverter (in process)

- Leaking shower head (in process)

- Master bedroom door handle is loose (done)

- ~~Stain in the office desk top~~

- Master Bedroom closet light to be replaced (done)

- ~~Touch up painting needed~~

- ~~Wall need to be re-painted in front of the main closet (lights replaced and patch/painted around it)~~

DINING ENTERTAIMENT FLOOR: (2nd)

- ~~Touch up painting needed~~

KITCHEN FLOOR: (1st)

- Rear door to the exterior handle is loose *(done)*

- ~~Dishwasher missing a button~~

- Exterior light in the rear yard to be replaced (*done*)

- ~~Touch up painting needed~~

- Outdoor grill not connected to the gas line (*Note: purchaser asked for this to be removed from list per broker*)

BASEMENT:

- Couple of dry wall holes need to be fixed (see image 1) *(in process)*

- Boiler room neon light to be replaced *(done)*

- Corroded pipe fitting at water heater (check for leak?) *(in process)*

- The heating system on the 1st fl. and basement levels were not functional *(fixed/done)*

- The split system air conditioner system(s) were not tested due to 45 degree outside temperature. We must be able to test this at final walk through or escrow must be held. (*Serviced 5/10 – all ok, drier vent was inspected as well and does not need to be replaced*)

Image 1:



Image 2:



Exhibit 2

## NYC Department of Buildings

DOB Violation Display for 103114EVCAT104326

Premises: 314 HICKS STREET BROOKLYN

BIN: 3413985  Block: 260  Lot: 57

| | | | |
|---|---|---|---|
| Issue Date: | 10/31/2014 | Violation Category: | V - DOB VIOLATION - ACTIVE |
| Violation Type: | EVCAT1 - ELEVATOR ANNUAL INSPECTION / TEST | | |
| Violation Number: | 04326 | Device No.: | 3D5091 |
| OATH/ECB No.: | | | |
| Infraction Codes: | | | |
| Description: | VIOLATION ISSUED TO ELEVATOR-FAILURE TO FILE CATEGORY 1 2013 INSPECTION/TEST | | |

Disposition:

Code:                                                    Date:

Inspector:

Comments:

## NYC Department of Buildings

DOB Violation Display for 091517EVCAT104447

Premises: 314 HICKS STREET BROOKLYN

BIN: 3413985    Block: 260   Lot: 57

| | | | |
|---|---|---|---|
| Issue Date: | 09/15/2017 | Violation Category: | V - DOB VIOLATION - ACTIVE |
| Violation Type: | EVCAT1 - ELEVATOR ANNUAL INSPECTION / TEST | | |
| Violation Number: | 04447 | Device No.: | 3D5091 |
| OATH/ECB No.: | | | |
| Infraction Codes: | | | |
| Description: | VIOLATION ISSUED TO ELEVATOR-FAILURE TO FILE CATEGORY 1 2016 INSPECTION/TEST | | |

Disposition:

Code:                                                                    Date:

Inspector:

Comments:

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   _____

   (ii) __X__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

   (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

   _____

   (ii) __X__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

(c) _____ Purchaser has received copies of all information listed above.

(d) __X__ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.

(e) Purchaser has (check (i) or (ii) below):

   (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

   (ii) __X__ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller 314 Hicks Residence Trust | Date 6/4/20 | Seller | Date |
| Purchaser DC 2019 Irrevocable Trust | Date 6/4/20 | Purchaser Allison Domenghetti | Date 6/4/20 |
| Agent | Date | Agent | Date |