UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

vs.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

    **Defendant.**
                              /

IN RE:

OLYMPIA DE CASTRO,

    **Third-Party Petitioner.**
                              /

## MOTION TO COMPEL DISCOVERY RESPONSES

The United States of America, through the undersigned Assistant United States Attorneys, respectfully moves to compel discovery responses from Third-Party Petitioner, Olympia De Castro, who has claimed forfeited property—approximately $900,000 (plus interest) from the sale of real property in Dania Beach.[1] In her incomplete responses to the Government's interrogatories and requests for production, De Castro resisted discovery based on a purported Joint Defense Agreement ("JDA") and her now-dissolved marriage to Defendant Gustavo Adolfo Hernandez Frieri. First, although De Castro purports to have entered into a JDA with the Defendant, she has refused to provide the Government with *any* details on that purported agreement, including the start date or the purported shared common legal interest that would define the scope of any agreement. Second, De Castro has asserted a marital privilege through February 2020, when her

---

[1] Your Honor's standing Order Setting Discovery Procedures provides that parties are not to file discovery motions, but rather place disputes on the Friday calendar. The Government contacted chambers on May 27, 2021, to place this dispute on the June 4 calendar. Chambers advised that Your Honor would prefer the Government to file a motion.

divorce from Defendant was final. Eleventh Circuit precedent, however, provides that communications no longer are privileged after the parties file for divorce, which was here in May 2019. Third, although De Castro is withholding documents on privilege grounds, she refuses to produce any privilege log or provide the Government with the information required by Rule 26(b)(5), L.R. 26.1(e)(2)(B), and Your Honor's standing Order. Finally, De Castro refuses to produce an unredacted version of a financial affidavit that was modified after it was notarized. The affidavit was produced in discovery and referred to in De Castro's interrogatory answers, but no explanation has yet been provided to the Government on why it was modified or produced in such manner to the Government. For the reasons set forth below, the Court should order De Castro to produce the requested discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2018, a federal grand jury returned an Indictment charging the Defendant and others in Count 1 with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B), among other counts. (*See* ECF No. 19.) On November 26, 2019, the Court accepted the Defendant's guilty plea to Count 1. (*See* ECF Nos. 162; ECF No. 163.) On February 4, 2020, the Court entered a Preliminary Order of Forfeiture against the Defendant, imposing a $12,330,000 forfeiture money judgment. (*See* ECF No. 175 at 2-3.)

On January 11, 2021, the Court entered the Third Preliminary Order of Forfeiture, which forfeited approximately $900,000 (plus interest) from the sale of real property (the "Subject Assets") (*see* ECF No. 280), which is the subject property of this ancillary forfeiture proceeding.

On February 10, 2021, De Castro timely filed a notice of claim and verified petition ("Petition"), asserting ownership of the Subject Assets. (*See* ECF No. 296.) The same date, Devine Goodman & Rasco ("DGR")—De Castro's counsel—also filed a claim (since withdrawn) to the Subject Assets. (ECF No. 297.) Along with its petition, DGR filed its engagement letter with De

Castro, which identifies her as the client "c/o Gustavo Hernandez" (the Defendant) along with Defendant's email. (ECF No. 297-1.)

The Government responded to the Petition on March 8, 2021. (ECF No. 323.) The Government's position is that De Castro is a nominal owner of the forfeited property, is not "other than the defendant" under 21 U.S.C. § 853(n)(2), and does not hold a superior interest under 21 U.S.C. § 853(n)(6)(A). (*Id.* at 9-15.)

After De Castro insisted on discovery,[2] the Government also served discovery requests on April 13, 2021, including interrogatories ("Rogs") and requests for production ("RFPs"). (Exs.1-2.) Based on DGR's engagement letter, the Government requested *inter alia* documents that included or were sent to the Defendant. (Ex. 1 at RFPs 2-4; Ex. 2 at Rogs 2-3.)

De Castro responded to some of the Government's RFPs and Rogs on May 13, 2021. (Ex. 3.) De Castro requested, and the Government agreed, to an extension on her remaining responses until May 26, 2021.

On May 13, 2021, among other documents, De Castro produced a heavily redacted financial affidavit, purportedly from her divorce proceedings. (Ex. 4.) On May 13, 2021, the Government inquired as to whether this document had been doctored after the fact, because it was executed in December 2019 but referred to a 2020 lawsuit. (*Id.* at 10-11.) The Government also requested an unredacted and file-stamped version of the affidavit. De Castro has refused to produce the unredacted affidavit, asserting it is "not relevant," and says the affidavit never was "filed." Although De Castro has promised an explanation for several weeks, as of writing none has been proffered.

---

[2] The discovery requested by De Castro included the depositions of three individuals, Daniel Holtz, Jorge Mora, and Keven Danow, which already have occurred. The Government agreed to these depositions over a short timeframe in order to schedule a hearing date in May/June 2021, and emphasized that reciprocal discovery would need to be produced to meet such a schedule.

On May 26, 2021, De Castro objected to the remaining discovery requests seeking documents and communications between her, Defendant, and DGR on privilege grounds, asserting a JDA and that the marital privilege protected communications with Defendant through February 2020, when her divorce was final. (Exs. 5-6.) De Castro did not provide details on the purported JDA and did not account for the fact that she filed for divorce in May 2019. She did not serve a privilege log or otherwise identify such things as the nature and subject matter of the withheld documents, or the sender/receiver of communications.

The parties met and conferred twice by phone, on May 26 and 27, 2021. The Government requested information on the purported JDA so that it could assess its validity and scope.

Counsel for De Castro, however, specifically refused to identify (i) the purported common legal interest; (ii) when the purported JDA began; (iii) when the purported JDA ended; (iv) the purported JDA's parties; and (v) whether the purported JDA is in writing. Rather, counsel for De Castro said he would provide this information only to the Court *ex parte*. The Government also suggested that Eleventh Circuit precedent provides that any marital privilege ended in May 2019, when De Castro filed for divorce. The Government further requested a privilege log in accordance with the rules and the Court's standing Order, and counsel for De Castro refused, unless specifically ordered by the Court. And counsel for De Castro refused to produce an unredacted version of the financial affidavit, stating it is irrelevant. The parties are at an impasse.

Discovery currently is scheduled to end on June 4, 2021, and a hearing on De Castro's Petition is scheduled for June 14, 2021. Due to the discovery issues that are the subject of this motion and the Government's current unavailability on June 14, the parties agreed to extend the deadlines and a motion requesting the same is pending before the Court. (ECF No. 417.)

## ARGUMENT

This ancillary forfeiture proceeding is governed by Federal Rule of Criminal Procedure

4

32.2. Under Criminal Rule 32.2(c)(1)(B), discovery is not automatic in ancillary forfeiture proceedings, but where the Court authorizes it, the Federal Rules of Civil Procedure apply. Although it was De Castro who insisted she needed discovery and has taken three depositions since filing her Petition, she now refuses to comply with basic discovery obligations.

1. *De Castro fails to meet her burden to assert privilege.*

De Castro asserts privilege over certain documents based on a purported JDA and based on marital privilege. She fails to proffer facts sufficient to meet her burden to establish a JDA, and seeks to extend the marital privilege a year beyond its scope.

      **a. De Castro does not proffer any facts necessary to meet her burden to establish a JDA.**

Defendant is not represented by DGR and is not party to this ancillary proceeding. De Castro's position is Defendant does not own the Subject Assets. (ECF No. 296 at 1.) Thus, the Government believes Defendant's communications with her and DGR properly are sought; he is a third party who breaks any privilege. De Castro admits she shared documents that may otherwise be privileged with a third party—the Defendant—but refuses to produce them because of a purported JDA. (*E.g.*, Ex. 5 at Rog 2.) What's more, De Castro refuses to provide *any* information to the Government to allow it to assess her claim of protection under a JDA. Accordingly, she has not met her burden, and should be compelled to provide all responsive documents.

The joint-defense or common-interest doctrine[3] is not itself a privilege, but is an exception to the rule that disclosure of privileged materials waives privilege. *Del Monte Int'l GMBH v. Ticofrut, S.A.*, 2017 WL 1709784, at *7 (S.D. Fla. May 2, 2017). The doctrine "applies only 'when the parties have a shared interest in actual or potential litigation against a common adversary, and

---

[3] Courts refer to the same doctrine as "joint defense" or "common interest": "Trial courts in this circuit 'recognize the joint-defense agreement under the common-interest doctrine and apply it to the same range of communications that are protected under the attorney-client privilege.'" *Spencer v. Taco Bell, Corp.*, 2013 WL 12156093, at *2 (M.D. Fla. Apr. 23, 2013).

5

the nature of their common interest is **legal**, and not solely commercial.'" *Id.* (emphasis in original) (citation omitted). "A shared interest in the outcome of litigation, or the fact that an opponent is a common adversary, is insufficient to justify successful invocation of the common interest doctrine." *Id.* (citation omitted). While there need not be a writing, there must be an agreement. *Id.* at *8.

De Castro bears the "heavy" burden to establish that the common-interest doctrine applies, and all necessary elements have been met. *Id.* at *7 (citing *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011)); *Spencer*, 2013 WL 12156093, at *2. "A failure of proof as to any element causes the claim of privilege to fail." *Bridgewater*, 286 F.R.D. at 639. De Castro's burden "is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Id.* The reason for this heavy burden is "privileges are 'not lightly created nor expansively construed, for they are in derogation of the search for truth.'" *Del Monte*, 2017 WL 1709784, at *7 (citations omitted).

Here, De Castro relies wholly on *ipse dixit* assertions. (*See* Exs. 5-6.) She has refused to provide the United States (i) the purported common legal interest between her and the Defendant; (ii) when the purported JDA began; (iii) when the purported JDA ended (or is ongoing); (iv) the purported JDA's parties; and (v) whether the purported JDA is in writing. When the Government asked specifically for this information during the parties' meet and confers, De Castro's counsel flatly refused to provide it, saying he would provide this information only if under specific order to do so or only to the Court *in camera*. That is unreasonable and contrary to the law.

De Castro is obligated to make a *prima facie* showing that any privilege applies. To meet her burden, she must introduce evidence to allow the Government an opportunity challenge the sufficiency of her privilege claim. *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp.

6

2d 1284, 1293 (S.D. Fla. 2012) (party claiming privilege "must" *inter alia* "identify the evidence that establishes that each element of the privilege applies"); *Latell v. Santander Bank*, 2016 WL 7206161, at *1 (M.D. Fla. Jan. 27, 2016) (to establish privilege, the party asserting privilege shall "file with the Court, **and provide to opposing counsel**, revised privilege logs and any affidavits, sworn statements, or other evidence necessary to establish all factors of the claimed privilege.") (emphasis added); *Yellow Pages Photos, Inc. v. Yellow Book USA, Inc.*, 2009 WL 10670232, at *3 n.1 (M.D. Fla. June 24, 2009) ("The court encourages the parties to make a reasonable effort to exchange such evidence [here, an affidavit in support of privilege] when conferring rather than waiting until a motion has been filed to disclose such evidence to the opposing party."). Such information allows the Government to assess De Castro's privilege claim, in accordance with Fed. R. Civ. P. 26(b)(5). By failing to provide any information regarding the JDA, De Castro has not met her burden to establish a privilege applies. *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (party failed to establish privilege applied because it failed to present the information required by Fed. R. Civ. P. 26(b)(5)(A)); *Campero USA*, 916 F. Supp. 2d at 1293 (outlining process a party must undertake to assert privilege properly).

De Castro's proposed solution of *in camera* review does not satisfy the applicable Rules. Rather than endeavoring to meet her heavy burden and comply with her obligations under the Rules and caselaw, De Castro suggests unnecessarily burdening the Court. That is not proper. Before asking the Court to go *in camera*, De Castro must first make "a sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection. *In camera* review should not replace effective adversarial testing of the claimed privileges and protection." *U.S. ex rel. Burns v. Fam. Prac. Assocs. of San Diego*, 162 F.R.D. 624, 627 (S.D. Cal. 1995). "It should go without saying that the court should never be required to undertake *in camera* review unless the parties have first properly asserted privilege/protection, then provided sufficient factual

information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265-67 (D. Md. 2008).

To the extent De Castro has not waived any privilege, *see infra*, the Court should order her to provide the Government with the information required by Fed. R. Civ. P. 26(b)(5)(A) and L.R. 26.1(e)(2), including (i) the purported common legal interest between her and the Defendant; (ii) when the purported JDA began; (iii) when the purported JDA ended (or is ongoing); (iv) the purported JDA's parties; and (v) whether the purported JDA is in writing.

### b. De Castro's marital privilege ended when she filed for divorce in May 2019.

De Castro also is withholding documents based on a marital privilege she claims extends through February 2020, the date her divorce from the Defendant became final. (Ex. 5 at Rog. 2; Ex. 6 at RFP 2.) Under Eleventh Circuit law, however, any marital privilege terminated on May 22, 2019, when she filed for divorce (ECF No. 262 ¶ 6). *United States v. Singleton*, 260 F.3d 1295, 1300 (11th Cir. 2001).

In *Singleton*, after observing that "[t]he unanimous rulings of other circuit courts … have held that marital communications made while the parties are legally married but permanently separated are not privileged," the Eleventh Circuit held "the [marital communication] privilege is not available when the parties are permanently separated; that is, living separately with no reasonable expectation of reconciliation." *Singleton*, 260 F.3d at 1300-01 & n.2 ("[M]arital communication privilege is not available in cases of permanent separation prior to divorce"). As the Eleventh Circuit observed, "there is no reasonable basis for asserting the privilege when the marriage is 'moribund.'" *Id.* Following a permanent separation, "the reasonableness of the expectation of the spouse who asserts the privilege that the communication will be kept confidential is diminished." *Id.* And the Eleventh Circuit observed that there is "less societal

interest in protecting the marital relationship of permanently separated spouses ….'" *Id.* (citation omitted). To determine whether there was a permanent separation, the Eleventh Circuit directs courts to consider, among other factors, whether the couple was cohabitating, if not, how long were they separated for, and had either spouse filed for divorce. *Id.* at 1301.

While the facts are unique because Defendant was ordered to reside with De Castro at 597 Hibiscus Lane while on pre-trial release, De Castro's own sworn statements establish that, under *Singleton*'s factors, Defendant and De Castro were permanently separated by May 22, 2019, when De Castro filed for divorce. Any marital privilege also ended on that day.

De Castro decided to divorce the Defendant before May 22, 2019. She testified that she "made up [her] mind to get divorced" before Defendant was extradited back to the United States and living in Italy (Ex. 7 at 52:22-53:13), which happened in early May 2019 (ECF Nos. 93, 95). After Defendant obtained bond, De Castro served him with divorce papers, and later, under oath, testified that she allowed Defendant to stay in the home "so he could be with the children." (Ex. 7 at 53:19-22.) Although they continue to live under the same roof, De Castro affirmed they were no longer together. (ECF No. 262 at 10 n.1 ("[W]hile Ms. De Castro [] allowed [Defendant] to reside at her home until his sentencing for the sake of their children, the parents are no longer a couple ….").) Thus, she cannot reasonably argue they were not permanently separated in May 2019, which led to the finalization of their divorce in February 2020. (Ex. 7 at 36:6-11.) And as of May 22, 2019, there was no reasonable expectation that their communications would remain confidential, and society had no interest in in protecting that moribund relationship.

### c. De Castro's refusal to provide a privilege log waives any privilege.

Even if De Castro had met her burden to establish a privilege applies (she has not), she waived privilege by refusing to produce a privilege log. De Castro did not produce any privilege log along with her objections to the Government's Rogs and RFPs. During the parties' meet and

9

confers, the Government inquired about when a log would be produced, and De Castro's counsel said he would not produce any privilege log unless specifically ordered to do so by the Court. This violates Rule 26(b)(5), L.R. 26.1(e)(2)(B), and Your Honor's standing Order.

Local Rule 26.1(e)(2)(C) "requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege …."[4]; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). Although De Castro's responses to the Government's RFPs do not state she is withholding any documents, *see* Fed. R. Civ. P. 34(b)(2)(C), during the parties' meet and confers, her counsel confirmed that she is withholding documents based on the purported privilege. By refusing to provide a privilege log, she has waived privilege. *See, e.g.*, *Arroyo v. Infinity Indem. Ins. Co.*, 2015 WL 11233078, at *3 (S.D. Fla. Aug. 21, 2015) ("Courts have frequently gone so far as to find that a party's failure to provide a privilege log can result in waiver of the claimed privilege as it relates to the documents withheld."); *McNamee v. Clemens*, 2013 WL 6572899, at *2 (E.D.N.Y. Sept. 18, 2013) ("[T]he starting position is that the privilege log must be served with the objections [to discovery requests] ... and that the failure to do so may result in waiver of the privilege claims.").

While this Court has been loath to sanction parties for late privilege logs, it should not permit De Castro wholesale to refuse to comply with the Federal, Local, and Your Honor's rules. To be clear, this is not just a timing issue. Rather, this is a flat refusal to produce *any* privilege log unless specifically ordered. This refusal leads to unnecessary motion practice, wastes judicial and party resources, and multiplies the proceedings unreasonably and vexatiously.

---

[4] The local rule has one exception for communications between a party and counsel after the action commenced, which has not been asserted by De Castro. De Castro has not indicated these sorts of documents are the only documents that exist; nor could they be since the engagement letter predates this action by a year. Moreover, the documents at issue here are documents that in the ordinary course would not be privileged because they were shared with third parties, and De Castro is resisting production under an exception to waiver. Under the circumstances, the Government submits that the exception to Local Rule 26.1(e)(2)(C) does not apply because, by definition, these are not just communications between De Castro and counsel.

### 2. *De Castro must produce an unredacted financial affidavit.*

In response to the Government's RFPs and in support of her response to Rog 4, De Castro produced a financial affidavit purportedly from her divorce proceedings. The produced affidavit was redacted heavily, and she has refused to provide an unredacted version. (Ex. 3 at 6; Ex. 4.) She also referred to the same document in support of her verified response to Rog 4, stating that, "In my financial affidavit (required by the divorce), I disclosed my exclusive ownership in 100% of the proceeds of the then pending civil suit." (Ex. 3 at 6.) An unredacted version is necessary to clear up a later addition to the affidavit, to test De Castro's veracity, and because De Castro placed her financial situation in dispute.

De Castro's affidavit was handwritten and signed before a notary on December 21, 2019. (Ex. 4 at 11.) The affidavit's unredacted portion establishes it was edited after De Castro signed it. (*Id.*) The affidavit included a typed-in "contingent asset" of a lawsuit "2020-000080-CA-24," which referred to the state civil case associated with the Subject Assets. (*Id.* at 10.) Because the lawsuit filed with a "2020" case number could not have been listed on the affidavit when signed and notarized in 2019, the Government inquired on May 13, 2021 as to whether this document had been doctored. To clarify matters, the Government requested on May 13, 2021 an unredacted and file-stamped version of the affidavit.

De Castro has refused to produce the unredacted affidavit, asserting it is "not relevant." While De Castro has yet to proffer any explanation for the edit, her counsel did inform the Government that the affidavit never was filed with the Court. It is therefore unclear why she refers to it at all in her Rog-4 answer if it was not disclosed to the divorce court and the Defendant was well aware of the lawsuit, having himself engaged DGR on De Castro's behalf. (ECF No. 297-1.) Her Rog 4 answer compels the production of the unredacted financial affidavit in order (i) to place the addition of the 2020 state lawsuit in context, and (ii) because De Castro placed her finances at

11

issue in her Petition. (ECF No. 296 at 1 ("The Government is improperly attempting to take De Castro's proceeds from the sale of her business interest, *proceeds she needs to support herself* and her three small children.") (emphasis added).)

### 3. *Request for briefing schedule.*

Under L.R. 7.1(c)(1), De Castro has 14 days to respond to this motion, and the Government has 7 days from that response to file any reply. Both undersigned Assistant U.S. Attorneys are scheduled to be out of the country without access to their computers from June 8 through June 16, 2021. To the extent De Castro takes her full 14 days to respond to the motion, there are no issues. If, however, she files her response early, the Government will be unable to prepare a reply. The Government therefore requests that its reply be due on June 23, 2021, (the day its reply would be due if De Castro timely files) regardless if De Castro files her response in less than 14 days.

### LOCAL RULES 7.1(a)(3) & 88.9 CERTIFICATION

Counsel for the Government conferred with counsel for De Castro by phone twice, on both May 26 and May 27, 2021, and made good-faith efforts to resolve the issues raised in the dispute and has been unable to do so.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By: /s/
Joshua Paster, Court ID No. A5502616
Nalina Sombuntham
Assistant United States Attorneys
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9342
Facsimile: (305) 536-4089
joshua.paster@usdoj.gov
nalina.sombuntham2@usdoj.gov
*Counsel for United States of America*