UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

vs.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

      **Defendant.**

                                                /

**UNITED STATES' RESPONSE TO DEFENDANT HERNANDEZ FRIERI'S MOTION TO SUPPLEMENT APPELLATE RECORD**

The United States of America (the "United States" or the "Government"), through the undersigned Assistant United States Attorneys, respectfully responds to Defendant Gustavo Adolfo Hernandez Frieri's (the "Defendant") *Motion for Leave to File Redacted Copies of a Representative Sample of the Withheld Documents Itemized on De Castro's Amended Privilege Log [ECF#459-1], over which Hernandez Asserted [ECF#444], but the Court Rejected [EC#499], a Joint Defense Privilege.* (ECF No. 513.) While as a general matter the Government does not oppose supplementing the record, Defendant's proposed emails are immaterial to the question before the Eleventh Circuit concerning the joint-defense privilege, namely whether Defendant and De Castro share a common legal interest.

Defendant seeks to supplement the record with "a representative sample of the withheld documents already itemized on De Castro's amended privilege log provided to the Government and the Court [ECF#459-1], over which Hernandez asserted [ECF#444], but the Court rejected [ECF#499], a joint defense privilege." (ECF No. 513 at 4.) Defendant does not, however, contend that these documents were omitted from the record by error or accident. *See* Fed. R. App. 10(e) ("If anything material to either party is omitted from or misstated in the record by error or accident,

the omission or misstatement may be corrected and a supplemental record may be certified and forwarded …"). He thus cannot supplement the record under Fed. R. App. 10(e). *United States v. Smith*, 493 F.2d 906 (5th Cir. 1974)[1] (Fed. R. App. 10(e) exists to ensure the record considered by the court of appeals accurately reflects what actually happened at the district-court level and not to introduce new evidence in the court of appeals that never was before the district court); *accord Bertram v. HSBC Mortg. Servs., Inc.*, 2016 WL 10932724, at *2 (S.D. Fla. Oct. 19, 2016) ("To correct or modify the record on appeal, a party must show the evidence sought to be included is 'material' and was omitted from the record 'by error or accident.'").[2]

Instead, Defendant seeks to travel under the Court's inherent powers, citing to three Eleventh Circuit cases. (ECF No. 513 at 5.) A district court, however, "do[es] not have the same inherent equitable powers as circuit courts have to supplement a record on appeal." *Lester v. Portfolio Recovery Assocs.*, LLC, 324 F. Supp. 3d 1227, 1233 (N.D. Ala. 2018) (citing cases).

In the Eleventh Circuit, that Court's inherent power to supplement the record is not exercised often. *See Shahar v. Bowers*, 120 F.3d 211, 212 (11th Cir. 1997) ("Although we have inherent equitable power to supplement the record with information not reviewed by the district court, '[s]uch authority is rarely exercised.'"). When asked to invoke its inherent powers to

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[2] The court in *Bertram* was acting as an appellate court, deciding a bankruptcy appeal, and was analyzing Fed. R. Bankr. P. 8009. 2016 WL 10932724. The court observed that Fed. R. Bankr. P. 8009 "[a]dopt[ed] nearly word-for-word the text of the analogous rule in the Federal Rules of Appellate Procedure," Fed. R. App. P. 10(e), and which Bankruptcy Rule "also provides for correcting the record where 'anything material to either party is omitted from or misstated in the record by error or accident....'" *Id.* at *1. Acting as an appellate court, the district court there enjoyed inherent power to supplement the record on an appeal it was deciding. *Id.* at 2. Here, the Eleventh Circuit is the appellate court and the court with the inherent power to supplement the appellate record. *Lester*, 324 F. Supp. 3d at 1233.

supplement the record, that Court focuses on the importance of the proffered materials to the question before it. *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) ("A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues.").[3]

Here, none of the "representative sample" proffered by Defendant go to the question of whether De Castro and Defendant articulated any common legal interest sufficient to support a joint-defense agreement and/or the common-interest doctrine. (*See* Order Granting Motion to Compel at 6-11 (rejecting assertion of joint-defense/common interest because De Castro and Defendant[4] never articulated a valid common legal interest), ECF No. 468.) Thus, these emails are not material to the question on appeal, though they will be affected by the decision on appeal.

Relatedly, Defendant includes a May 5, 2021 email from Michael Pasano (Defendant's other criminal-defense counsel) to Guy Rasco (De Castro's counsel in one of the three ancillary forfeiture proceedings), with the message "Fyi per JDA." (ECF No. 513-1 at 31.) Defendant includes this email presumably in efforts to bolster his claim that the attorneys were proceeding under an (erroneous) belief there was a valid joint defense agreement. The May 5, 2021 email was sent, however, months after the Government questioned the validity of any "joint defense" (which was raised and questioned by the Government for the first time in March 2021, and the

---

[3] The Eleventh Circuit in *CSX* permitted CSX to supplement the record with evidence it participated in an insurance fund because "[t]he existence or non-existence of insurance, then, was pivotal to the district court's resolution of this case." *CSX Transp.*, 235 F.3d at 1330. The proposed emails here are not "pivotal" to either Magistrate Judge Torres's Order or this Court's affirmance because they do not address any purported common legal interest.

[4] When issuing his Order compelling discovery, Magistrate Judge Torres expressly, "grant[ed] 444 Defendant's Motion to Adopt and Present Additional Arguments in Opposition to the Motion to Compel. The Court considered Defendant's arguments in the disposition of the Government's Motion." (Paperless Order, ECF No. 470.)

3

Government's position was well known by April 2021), making the included reference to the JDA not probative.

Further, while Defendant identifies the documents he wishes to file as a "representative sample of the withheld documents," and "the subject ("res") of this dispute" (ECF No. 513 at 4-5), in reality they are nine curated email chains. De Castro's privilege log, alone, identifies over 100 email chains withheld on the basis of the purported JDA in the ancillary proceeding over the approximately $900,000 (plus interest). And these emails do not include separate documents withheld by Defendant in the ancillary proceeding over the townhouse located at 314 Hicks Street, Brooklyn, New York. Allowing Defendant to supplement the record with this small, culled group of emails—all of which could have been submitted during the course of briefing—is inappropriate. *Accord Bertram*, 2016 WL 10932724, at *2 (to supplement record, party must show documents are material and omitted by error or accident). If Defendant wishes to supplement the record and file the "res" of the dispute, as he purports, and if he is permitted to do so, he should be required file all documents that he and De Castro withheld.

Lastly, in the selected emails, Defendant appears to provide his personal thoughts on hearings and depositions. It is not apparent that this content would otherwise be privileged. (*See, e.g.*, ECF No. 513-1 at 1, 11-12, 31-34.) In any deposition, the Government could ask for Defendant's thoughts on the "A. Domeneghetti hearing" or "Holtz's deposition," as were included in certain emails. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney … the Government was free to question the employees who communicated with Thomas and outside counsel."); *Slep-Tone Ent. Corp. v. Johnson*, 518 F.

App'x 815, 821 (11th Cir. 2013) (underlying basis for why plaintiff filed lawsuit not protected).[5] Also, any attorney can solicit a potential witness for his or her thoughts on another witness' testimony. This feedback does not create a common-legal interest or JDA just because an attorney is part of the communication.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: /s/ Nalina Sombuntham and Joshua Paster
Joshua Paster, Court ID No. A5502616
Nalina Sombuntham, Fla. Bar No. 96139
Assistant United States Attorneys
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9224 / (305) 961-9342
Facsimile: (305) 536-4089
joshua.paster@usdoj.gov
nalina.sombuntham@usdoj.gov
*Counsel for United States of America*

---

[5] If Defendant told his attorney (without any third party) his personal thoughts on hearings and depositions, those communications would be privileged. The thoughts themselves, however, remain subject to discovery from Defendant. *Upjohn*, 449 U.S. at 395–96. Here, of course, the communications are not privileged because they were forwarded to/included third parties without a valid JDA and the common-interest doctrine did not apply.