UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

    Defendant,

and

OLYMPIA DE CASTRO,

    Third Party Petitioner,

597 HIBISCUS LANE REVOCABLE TRUST,

    Third Party Petitioner.

_____/

**PETITIONERS' REPLY TO GOVERNMENT'S RESPONSE
TO FED. R. CIV. P. 59 MOTION TO ALTER OR AMEND JUDGMENT**

    Third Party Petitioners, Olympia De Castro and 597 Hibiscus Lane Revocable Trust, through undersigned counsel, hereby reply to the Government's response (DE 566) to Petitioners' motion to alter or amend (DE 562) and state:

    **1.    The Government's arguments are refuted by the record and rest on a misreading of Eleventh Circuit precedent that protects individual rights.**

    The Government, in its response, insists that the Court ignore the merits of the motion to alter judgment and asks that the Court simply approve the Government's recasting of the case law which uniformly recognizes that even where a husband and wife have equal interests in a marital home, the wife's half-interest must be recognized in ancillary proceedings. Precedent cited below shows not only that ex-wives have standing under 21 U.S.C. § 853(n), but that their claims are valid and must be legally recognized, even if the property at issue was tainted or involved in the

commission of an offense.  And it is undisputed that the property in this case is ***untainted***.

The Government advocates for a misleading and inaccurate reading of Eleventh Circuit cases relevant to forfeiture of homes jointly owned by spouses and the relevant "[f]acts [s]upporting [a] [s]eparate [o]ne-[h]alf [i]nterest" in the property. Gov't Resp. 3.  Taking a renewed look at each case cited by the Government shows how wrong the Government is:

| Government contention as to case | Reality about the case |
|---|---|
| *United States v. Jimerson*, 5 F.3d 1453 (11th Cir. 1993):<br><br>The Government claims the judgment of forfeiture affirmed by the court of appeals in *Jimerson* trumped the defendant's wife's interest in the property as tenant by entireties. Gov't Resp. 3. | "Louis Jimerson forfeited *his interest* in the family residence to the United States because he *used that property to facilitate the commission of the drug offense* for which he was convicted. The *judgment of forfeiture did not affect Mary Lou's interest in the residence*.  Rather, *she continues to hold an indivisible one-half interest in the entire residence property*."<br><br>*United States v. Jimerson*, 5 F.3d 1453, 1454 (11th Cir. 1993) (emphasis added).<br><br>*Jimerson*, even though it is a tainted-property case in which the home was directly involved in the crime—wholly unlike the untainted property in our case—stands for the proposition that the only thing that can be forfeited is the defendant's interest in the home, *not the entire house*, because the wife has a half-interest. |

| **Government contention as to the case** | **Reality about the case** |
|---|---|
| *United States v. Fleet*, 498 F.3d 1225 (11th Cir. 2007):<br><br>The Government claims *Fleet* bars an innocent spouse from claiming an interest in forfeited jointly owned property.  Gov't Resp. 3. | "Fleet contends that *his interest* in the home he owns jointly with his wife may not be forfeited as a substitute asset."  "The fact that the *innocent spouse*, even though she *retains her property interest*, may be adversely affected by the forfeiture of her guilty mate's interest is no bar to *forfeiture of his interest*."<br><br>*United States v. Fleet*, 498 F.3d 1225, 1227, 1232 (11th Cir. 2007) (emphasis added).<br><br>*Fleet* makes it crystal clear that if the facts show equal one-half interests in property, only the defendant's separate half is subject to forfeiture, and not the innocent spouse's one-half interest. *Fleet*, like *Jimerson*, shows that the finding by the Magistrate Judge that the *facts* showed a one-half innocent interest for the wife (Petitioner De Castro) compels the conclusion that it is manifestly erroneous to deem the wife without standing in ancillary proceedings. |

| Government contention as to the case | Reality about the case |
|---|---|
| *United States v. Kennedy*, 201 F.3d 1324 (11th Cir. 2000):<br><br>The Government claims *Kennedy* changes the standing requirements for a wife in an ancillary petition to claim property interests as to a jointly owned home. Gov't Resp. 4. | *Kennedy* holds, in agreement with *Jimerson*, that even in a case involving tainted property (unlike the untainted property in our case) only "a *particular defendant's interest* in the property" may be forfeited, and the wife's one-half interest through a tenancy by the entireties is not subject to forfeiture and thus remains property of the wife. The *Kennedy* court applied the relation-back doctrine for *tainted* property to disregard transactions occurring after the property was involved in or traceable to the crime, but did so only as to the *defendant's* one-half interest.<br><br>*United States v. Kennedy*, 201 F.3d 1324, 1329, 1330 (11th Cir. 2000). |

| **Government contention as to the case** | **Reality about the cases** |
|---|---|
| *United States v. Soreide*, 461 F.3d 1351 (11th Cir. 2006):<br><br>The Government claims that the "innocent owner defense" under *civil* forfeiture—which the *Soreide* court correctly found inapplicable to criminal forfeiture—was somehow raised by Petitioners or is somehow relevant to this case. Gov't Resp. 4. | *Soreide* does not involve a jointly-owned home. The wife in *Soreide* was never a joint owner of the property the husband owned. And the *Soreide* court did not "reach the merits" of the petitioner's claim of superior interest at all, because—unlike the Petitioners in our case—the petitioner in *Soreide never* made a timely claim that "she held interests in those properties that were superior to the interests of [the defendant] at the time of the acts giving rise to forfeiture." Instead, her timely petition alleged only facts concerning status as a bona fide purchaser for value, an interest for which she had no genuine *factual* support. The petitioner in *Soreide* later tried to change her *factual* allegations, after her *factually-insufficient* petition failed, but her attempt to allege new *facts* was untimely.<br><br>*United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006).<br><br>*Soreide* does not diminish the manifest error of the Magistrate Judge's conclusion of lack of standing in our case—where the controlling authority of *Jimerson*, *Fleet*, and *Kennedy* show that a finding of equal spousal interests does not warrant forfeiture of the non-defendant spouse's interest. Nor does it support the Government's thesis that more is required of a petitioner than fact pleading showing a cognizable interest. |

The Government's arguments run counter to the function of ancillary proceedings to protect the rights of innocent parties. As the Eleventh Circuit held less than one week ago, "resolution of the ***extent*** of [the criminal defendant's ***and*** the petitioners'] ownership interests in the" relevant real estate "is deferred until the section 853(n) ancillary proceeding. *See* 21 U.S.C § 853(n); Fed. R. Crim. P. 32.2(b)(2)(A), (c)." *United States v. Javat*, No. 20-13310, 2022 WL 703940, at *6 (11th Cir. Mar. 9, 2022). The Eleventh Circuit's citation of § 853(n) matches that of the Petition in this case. Because, as the Eleventh Circuit explained in *Javat*, "there was no 'issue of ownership' for the district court to resolve before ordering preliminary forfeiture of the" real estate as to the defendant in the criminal proceedings, *id.*, there was no basis for the Magistrate Judge in the ancillary proceeding in the present case to simply assume that the defendant had any ownership interest that could foreclose the interest and standing of the Petitioners, where their claims—unlike any claim of interest by or for the defendant—was supported by legal title as well as occupancy, maintenance, and control of the property.

    **2.    The Government ignores, and thus fails to respond to, the primary question raised by motion: does parity of interests in property among the defendant and the Petitioners deprive the Petitioners of a claim under § 853(n)?**

To echo Clara of Wendy's restaurant fame, "Where's the beef" of the Government's non-existent merits response to the motion to alter judgment? The Government makes no merits argument, other than to glancingly distort non-precedential, inapposite cases in which the Government ***did not*** receive the windfall benefit that the Magistrate Judge's recommendation would afford.[1] The Magistrate Judge ruled that when a husband and wife have equal interests in untainted property, the Government, by obtaining forfeiture of the husband's interest, may also forfeit the wife's interest. Gov't Resp. 316. Petitioners, in their objections to the Report, challenged ***both*** (a) the finding that any former naked-title interest of the defendant was equal to the interests of the Petitioners and (b) the finding that even if the defendant's interest were equal, such an interest deprived Petitioners of standing to pursue their claims. *See* DE 347 at 5, 11.

The Government, knowing that it cannot dispute either of the objections—in that no case has ever held that among two purported title holders (with title predating every possible relation-back date), the one who actually controls, lives in, maintains, and pays for the property lacks

---

[1] Petitioners seek reconsideration or clarification of this Court's Order adopting the Magistrate Judge's Report. Hence, Petitioners make reference to the Report itself.

standing—makes no merits argument other than to restate a convoluted paragraph from its response to the objections. Gov't Resp. 4 (again misstating the holdings of *Kennedy* and *Jimerson*).

The Government, revealingly, claims that the mere existence of "[p]ages of briefing," Gov't Resp. 4, makes it impossible for a manifestly erroneous decision to occur. But it was in fact the many inapposite pages of briefing by the Government—which included the wholly unprecedented notion that a claimant to property cannot be awarded part of the property if, at the hearing, it proves only part ownership—that led to the manifest error. Petitioners have not amended the facts underlying their standing. That they claim an interest in the entire house, including because of control, maintenance, residency, and other key facts of true ownership, in no way diminishes their standing to have less than full relief if the Magistrate Judge's mistaken equal-interest finding were to prevail. It is the Government that has wrongly amended its forfeiture claim in these proceedings to assert a claim beyond any interest of the defendant. That effort by the Government, that the Court should not permit, is not only manifestly improper and unjust, but also a jurisdictional defect. *Kennedy*, 201 F.3d at 1329 ("The criminal forfeiture provisions of section 853 authorize the government to seek forfeiture of *a defendant's interest* in subject property.") (citing *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir.1996)).[2]

### 3. The Government fails to acknowledge its confession of error in *Duran*, which reversed a district court's failure to examine for validity a marital settlement to determine whether it superseded pre-existing property titles of record.

The Government, in asserting that *Duran* is of "questionable" application here and that federal courts need not heed Florida law and court judgments regarding marital settlements, Gov't Resp. 5, fails to acknowledge that the Government **confessed error** in *Duran*, and that the law is clear that whatever property rights exist for either spouse is solely a matter of Florida, not federal law. *See Fleet*, 498 F.3d at 1231("state law defines the property interests a defendant has"). The process that must be engaged in, according to *Duran*, is to first determine what property rights were effected by the marital settlement. Only then, as the court explained in *Fleet*, does "federal law determine[ ] *whether* those property interests are forfeitable for the commission of a federal crime." *Id.* (citing *United States v. Kennedy*, 201 F.3d 1324, 1334 (11th Cir. 2000)).

Not only did the Government confess error in *Duran*, but even now it cannot cite any case

---

[2] In *Lester*, the court explained that "where the property subject to forfeiture is not connected in any way to the guilty spouse's criminal activities, but rather is 'substitute property,' it is even clearer that only the property of the defendant … is subject to forfeiture." 85 F.3d at 1415.

7

in which has previously sought to support on appeal a district court's failure to give consideration to a valid marital settlement to engage in the two-step process for determining the validity of the property rights affected by the settlement, and then analyzing how federal law addresses those rights. As the Government admitted in its confession of error brief in *Duran*: "To determine whether a judgment debtor has a "substantial non-exempt interest" in a property upon which the United States seeks to levy, the district court must necessarily consider what interest any other individuals have in that property. 2012 WL 3638346 at *9.

The Government notes that *Duran* is not an intervening decision, but that does not diminish the manifest error of failing to consider the state-law validity of the marital settlement's assignment of property rights, particularly where the Government improperly seeks to go outside the petition to suggest facts that tar Petitioners with an implication of impropriety of the divorce. Gov't Resp. 6. The Government wrestles impotently with precedent in denying that state law controls the validity of divorce proceedings and the resulting property rights from settlement. Whether the relation-back doctrine applies to pre-forfeiture marital settlements, and whether, because the Petitioner trust was never revocable unilaterally by the defendant, he could still be said to have given up property in the settlement are merits questions as to the *scope* of relief in an ancillary hearing; they do not deprive Petitioners of standing. And while *Duran* is not an intervening decision, what has intervened is the Government's failure to admit it confessed error in *Duran*, an approach at odds with the Government's victory-by-injustice motto in this case.

4. **The Government's misplaced claim that the objections filed by the Petitioners did not fully cover the actual findings and recommendations of the Magistrate Judge is refuted by the record.**

The party contesting a Magistrate Judge's Report must identify the *"proposed findings or recommendations* to which objection is made." 28 U.S.C. § 636. Petitioner complied with that requirement. The statute, contrary to the Government's novel interpretation, does not require objections to dicta or other comments by the Magistrate Judge, but rather only the proposed findings and recommendations. Although the Report in this case lacked any designation of findings and its sole recommendation was dismissal (albeit *without* stating if the dismissal should be with or without prejudice), Petitioners objected to anything that could be reasonably viewed as a finding, while distinguishing matters of comment (including as to factual contentions by the Government outside the four corners of the petition). *See* DE 347 at 10 n. 8 (addressing Magistrate Judge's comments on, but lack of findings regarding, the marital settlement's validity).

In their objections, Petitioners contended that the facts alleged in their petition had to be taken as true, and that doing so required rejecting the Report's findings. DE 347 at 2. The Petitioners plainly objected to every relevant adverse finding, but noted that the Magistrate Judge had, in finding the Petitioners' interest to be equal to the defendant's, effectively admitted that Petitioners have standing based on the facts they alleged in their petition. Even if there had been any gap at all in the comprehensive objections filed by Petitioner, "[t]here is an exception if applying waiver would defeat the ends of justice." *United States v. Charles*, 476 F.3d 492, 496 (7th Cir. 2007) (internal citation omitted); *see Thomas v. Arn*, 474 U.S. 140, 146 (1985) (§ 636 waiver rule is not "jurisdictional"). Given the absence of any formal statement of findings in the Report, there is no basis for the Government now to claim that Petitioners failed to argue that the Government's fact-bound attacks on Petitioners' standing—which ignore that the petition's factual claims must be taken as true—was premature and must await a hearing or summary judgment.

Any prejudicially adverse speculation by the Magistrate Judge was, admittedly, not the basis for its recommendation, which rested instead on the invalid premise that the defendant's interest was equal to that of the titleholder Petitioners and that a claimant with parity of interest to that of the defendant lacks standing. Despite the Government's attempt to recast the Magistrate Judge's Report, the objections preserved all relevant claims of error. In fact, the Government, contradictorily, concedes that Petitioners properly preserved objections to the core legal disputes in this case. *See* Gov't Resp. 1 (claiming "Petitioners do nothing more than seek to relitigate their claim(s) to real property"). Given that the Government, just two weeks ago, represented to the Court that Petitioners "have already amended and reple[d] their claim(s)," DE 553 at 2 n. 1, the Government's new claim that there was an order denying leave to amend rings hollow and is devoid of record support. Really, the only rulings by the Magistrate Judge that matter are the objected-to rulings that the interests of defendant and Petitioners were equal and that there was no standing for anyone other than the man of the house. The objections were properly and correctly asserted.

**5.    The Government's assertions in support of a final order of forfeiture, to the effect that Petitioners had lost standing to participate in this case, are now seen as clearly unfounded.**

The Government pointedly and repeatedly refers to Petitioners as "the Dismissed Petitioners." Gov't Resp. 1–8. However, the law is unclear as to whether, in order to effectuate a dismissal in this context, the Court must issue a separate order of dismissal, in addition to the memorandum order adopting the Magistrate Judge's Report. Ancillary proceedings take on, for the

most part, the character of civil litigation. Because no separate order of dismissal[3] has yet been entered or docketed by the Clerk, Petitioners have sought relief both in the Fed. R. Civ. P. 59 motion and in their opposition to the Government's motion for final forfeiture order. The relief Petitioners seek includes (as an alternative) that a separate dismissal order provide for dismissal without prejudice to correction of any pleading defect in Petitioners' standing or citation of 21 U.S.C. § 853.

Importantly, the Government has backtracked from its recent filing in which it insisted that the case was over and that Petitioners had no further standing to participate. *See* DE 553. Whether the memorandum decision adopting the Magistrate Judge's Report is deemed a final dismissal order or not, this Court has jurisdiction to prevent the manifest injustice that would result from the Government's effort to evade the force and effect of Eleventh Circuit precedent concerning standing and particularly the interest of a spouse who holds, at the very least, a one-half interest in the property. This Rule 59 motion is filed to assure that no matter how the Government seeks to treat the prior Order, whether as final or non-final, the Court maintains jurisdiction to prevent the manifest error of finding that the Petitioners lack standing to even pursue their claim or that by seeking full relief, they waived partial relief. To the extent the Government claims, absent citation of precedent, that there is a need for the petition to claim to assert, in the alternative, an interest in less than the whole of the property, any dismissal order should be without prejudice.

WHEREFORE, Petitioners Olympia De Castro and 597 Hibiscus Lane Revocable Trust move, pursuant to Fed. R. Civ. P. 59, to alter or amend this Court's order (DE 534) adopting the Magistrate Judge's Report recommending that an order of dismissal be entered and, alternatively, move to reopen the case to permit the consideration of evidence either in summary judgment or hearing proceedings and to grant a hearing to address relevant evidence and argument and to enter an order specifying that the dismissal is without prejudice to further amendment of the petition consistent with the common core of operative facts on which the petition was originally filed.

---

[3] *See Bailey v. Potter*, 478 F.3d 409, 412 (D.C. Cir. 2007) ("Because the district court did not issue [a separate] order pursuant to Rule 58(a) dismissing the complaint, it continued to have jurisdiction over Bailey's case.") (citing *Shaffer v. Veneman*, 325 F.3d 370, 374 (D.C. Cir. 2003); *Reed v. United States*, 891 F.2d 878, 880 (11th Cir. 1990); *see also Kent v. Baker*, 815 F.2d 1395, 1397 (11th Cir. 1987) (dismissal ruling not final absent separate document making it the final order on the complaint; "Rule 58 eliminates these uncertainties by requiring that there be a judgment set out on a separate document—*distinct from any opinion or memorandum*—which provides the basis for entry of judgment.") (internal citations omitted; emphasis added).

Respectfully submitted,

MARKUS/MOSS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:    /s/ A. Margot Moss
       A. Margot Moss
       Florida Bar Number 091870
       mmoss@markuslaw.com

       /s/ David Oscar Markus
       David Oscar Markus
       Florida Bar Number 119318
       dmarkus@markuslaw.com