LOAN AGREEMENT

dated as of

August 31, 2016

among

GSM Colombia SAS

as Borrower

and

GLOBAL SECURITIES TRADE FINANCE
as Lender



LOAN AGREEMENT dated as of August 31, 2016 (the "Agreement") among: (i) GSM Colombia SAS], a corporation duly incorporated and validly existing under the laws of the Republic of Colombia (the "Borrower"); and (ii) Global Securities Trade Finance, a financial entity duly incorporated and validly existing under the laws of the Cayman Islands (the "Lender" and, together with the Borrower, the "Parties").

## ARTICLE I
### DEFINITIONS

As used in this Agreement, the following capitalized terms have the meanings attributed in this Section, unless otherwise specifically provided herein. The titles, Articles and Sections are included for reference and convenience purposes, but they do not limit, define or describe the scope and intention of the Agreement and they are not considered as part of it. The technical and scientific terms that are not expressly defined herein must have the meanings given by the respective technique or science. The terms that are not technical or scientific, but are not expressly defined herein must be understood by common sense, according to the generalized use given to them. The definitions of terms herein shall apply to both the singular and plural forms of the terms defined.

As used in this Agreement the following terms have the meanings specified below:

(a) "Agreement" as mentioned in the first paragraph of this document, shall mean this loan agreement.

(b) "Anniversary Fee" means 1.0% of the total amount of the Facility, payable on Effective Date

(c) "Borrower" has the meaning specified in the first paragraph of this Agreement.

(d) "Business Day" means any day, other than Saturday or Sunday, on which banks in Colombia or New York City are authorized or required by law to remain open.

(e) "Closing Date" means the execution date of this Agreement.

(f) "Default Rate" shall have the meaning specified in Section 2.04(a) of this Agreement.

(g) "Dollars" or "USD$" refers to Dollars of the United States of America.

(h) "Event of Default" means any event specified as such in Article IV below.

1

(i) "Interest Payment Date" means the Maturity Day.

(j) "Loan" means the loan made by the Lender to the Borrower pursuant to this Agreement.

(k) "Material Adverse Effect" means (a) a material adverse change in, or a material adverse effect upon, the business, structure, shareholder composition or financial condition of the Borrower; (b) a material impairment of the ability of the Borrower to make payments under the Loan when due; or (c) a material adverse effect upon the legality, validity, binding effect or enforceability against the Borrower of any of their obligations under the Loan and/or this Agreement.

(l) "Maturity Date" means the date corresponding to 360 days after the disbursement date of the Loan or, if such date is not a Business Day, the Maturity Date shall be the next succeeding Business Day unless such next succeeding Business Day falls in another calendar month, case in which such Maturity Date shall be the immediate preceding Business Day.

(m) "Note" has the meaning specified in Section 2.02(a) (ii) of this Agreement.

(n) "Parties" has the meaning specified in the first paragraph of this Agreement.

(o) "Principal" has the meaning specified in Section 2.01 (i) of this Agreement.

(p) "Payment Date" means the Maturity Date.

(q) "Renewal Fee" means 1.0% of the total amount of the Facility, payable on Effective Date

(r) "Structuring Fee" has the meaning specified in Section 2.04 (h) of this Agreement.

(s) "Tax Deductions" has the meaning set forth in Section 2.05 of this Agreement.

## ARTICLE II
### CONDITIONS OF THE FACILITY

SECTION 2.01 *The Loan.* (i) Subject to the terms of this Agreement, the Lender shall grant to the Borrower a Loan in an aggregate principal amount of two million Dollars USD$2,000,000.00 (the "Principal").

(ii) Amounts borrowed as Loan that are repaid or prepaid may not be reborrowed.

2

(iii) The Principal will be disbursed on the Closing Date, meaning August 31, 2016.

(iii) Loan must be made to the following account (unless otherwise notified by the Lender):

| Banco Intermediario<br>Ciudad<br>Código Swift<br>ABA Routing<br>Chips | CITIBANK N.A.<br>NEW YORK – USA |
|---|---|
| Banco Pagador<br>Código Swift<br>Cuenta<br>Direccion | BANCO DE OCCIDENTE<br><br>Medellin, Colombia |
| Beneficiario<br>Número de Cuenta<br>Dirección<br>Teléfono | GSM COLOMBIA S.A.S.<br><br>Bogotá D.C., Colombia<br>Tel. |

SECTION 2.02 *Conditions Precedent*. The Lender's obligation to make the Loan under this Agreement shall be subject to the fulfillment of the following condition precedent prior to the disbursement, to the entire satisfaction of the Lender:

(a) The Lender shall have received the following documents, each of which shall be in form and substance satisfactory to the Lender:

(i) Executed Agreement. This Agreement, duly executed and delivered by the Parties hereto; and

(ii) Note. The Note, duly executed and delivered by the Borrower substantially in the form of Schedule 1 (the "Note"), delivered to the Lender for its benefit on or before the Closing Date, appropriately completed and in a way satisfactory to the Lender.

3

(b)     There shall not have occurred since the Closing Date any event or circumstance that has had or could reasonably be expected to have a Material Adverse Effect on the financial, economic or political situation in the Republic of Colombia which in the opinion of the Lender would affect the repayment of Loan and/or the disbursements to be made pursuant to this Agreement.

In the event that any of the conditions precedent set forth under this Section are not duly and timely satisfied by the Borrower, the Lender may, at its sole discretion, waive such condition precedent and disburse the Loan on the respective disbursement date.

SECTION 2.03 *Repayment of the Loan.* The Borrower shall repay the total principal amount of the Loan on the Payment Date. Repayment must be made to the following account (unless otherwise notified by the Lender):

| | |
|---|---|
| Bank Name: | City National Bank |
| Swift Code: | |
| ABA #: | |
| Account Name: | Global Securities Trade Finance - CLASS C |
| Account #: | 6054 |

SECTION 2.04 *Interest Rate.* The Borrower shall pay to the Lender interest on the unpaid USD$ Principal amount of the Loan, from the period from - and including - the disbursement date to - but excluding - the Payment Date, at a rate per annum of 12% per annum in Colombian Pesos (the "Interest Rate").

(c)     The Borrower shall pay to the Lender interest on the Loan at a rate equivalent to 2% per annum in excess of the Interest Rate in Colombian Pesos per annum (the "Default Rate") at any time during the existence and / or continuance of an Event of Default.

(d)     Late Interest will be calculated at 2% per annum in excess of the Interest Rate

(e)     Accrued interest on the Loan shall be payable on the Interest Payment Date; provided that interest payable at the Default Rate shall also be payable on demand by the Lender. The payment of interest shall be made in accordance with the calculations provided to it by the Lender and previously sent to the Borrower.

(f)     Interest on the Loan shall be computed on the basis of a quarterly in arrears (including the first day but excluding the Interest Payment Date).

(g)     The default interests specified in clause (c) above shall, to the extent permitted by applicable law, continue to accrue until paid, after as well as before any bankruptcy, insolvency, reorganization, liquidation, dissolution, arrangement or winding up, or composition or readjustment of debts of the Borrower.

4

(h)     The Borrower shall pay a Structuring Fee on the Drawdown Date equal to 1.0% of the Facility Amount (the "Structuring Fee"). The Structuring shall be paid to such account as the Lender shall inform the Borrower.

SECTION 2.05 *Taxes.* Any and all payments by the Borrower to the Lender under this Agreement and/or with respect to the Loan shall be made free and clear of and without deduction or withholdings for any taxes. If any amount to be paid to Lender hereunder is subject to any deductions or withholdings for any present or future taxes, levies, imposts, duties, fees, charges, or liabilities imposed by any competent governmental authority (including but not limited to income withholding taxes) (hereinafter "Tax Deductions"), then:

(i)     the sum payable shall be increased as necessary so that after making all required deductions and / or withholdings, the Lender receives an amount equal to the sum it would have received if no such deductions had been made;

(ii)     Borrower shall make such deductions and withholdings and provide evidence to the Lender of the payment of any required withholding taxes to any applicable taxing authority at the request of the Lender; and

(iii)     Borrower shall timely pay the full amount deducted or withheld to the relevant governmental authority in accordance with applicable law.

Borrower agrees to indemnify and hold harmless the Lender for the full amount of any applicable taxes paid by the Borrower and any liability (including penalties, interest, additions to tax and expenses) arising therefrom or with respect thereto, whether or not such taxes were correctly or legally asserted.

SECTION 2.06 *Optional Prepayments.* The Borrower may prepay the Loan in whole or in part at any time prior to the Maturity Date, provided that the Borrower gives the Lender prior written notice of any such prepayment as provided in this Agreement (and, upon the date specified in such notice, the prepayment amount shall become due and payable hereunder). Prepayments shall not cause the Borrower to pay any penalties, fees or any other additional amount.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

The Borrower represents and warrants to the Lender that, as of both the date of this Agreement and the Borrowing Date:

(a)     *Trust existence of Borrower and power.* The Borrower (i) is a company duly organized, validly existing in good standing under the laws of the Republic of Colombia; (ii) has all requisite corporate power and all material governmental approvals necessary to own or lease its properties and carry on its business as now being or as proposed to be conducted, except where failure to have such governmental

5

approvals (in the aggregate) is not reasonably likely to have a material adverse effect; (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary; (iv) has full power, authority and legal right to make and perform its obligations hereunder to which it is a party and to borrow the Loan hereunder; and (v) the Borrower is not considered to be "in dissolution" nor in liquidation under and pursuant its applicable law.

(b) *Corporate Authorization; No Contravention.* The execution, delivery and performance by the Borrower of this Agreement and the consummation of the transaction, have been duly authorized by all necessary corporate or other action (including any necessary shareholder action), and do not contravene: (i) the by-laws *(estatutos sociales)* or any shareholder or voting agreement; (ii) any applicable law, decree, judgment, award, injunction or similar legal restriction in effect, except to the extent that any contravention thereof is not reasonably likely to have a material adverse effect; or (iii) any document or other contractual restriction binding upon or affecting it or any of its properties, except to the extent that any contravention thereof is not reasonably likely to have a material adverse effect.

(c) *Binding Effect.* This Agreement and the Note have been duly executed and delivered and contains legal, valid and binding obligations of the Borrower, enforceable in accordance with its terms, in each case except as may be limited by bankruptcy, *concurso mercantil*, insolvency or similar laws affecting the enforcement of creditors' rights generally.

(d) *Pari Passu.* The payment obligations of the Borrower hereunder are and will at all times be unconditional general obligations of it, and rank and will at all times rank at least *pari passu* with all other present and future unsubordinated debt of the Borrower, except as may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and as may be limited by equitable principles of general applicability.

(e) *Litigation.* There is no litigation, investigation, arbitration or other proceeding pending or, to the best knowledge of the Borrower threatened against him or its property before any arbitrator or governmental authority having jurisdiction with respect thereto that: (i) individually or in the aggregate, has had or, if adversely determined, could reasonably be expected to have a material adverse effect, (ii) purports to materially and adversely affect any transaction contemplated hereby or (iii) purports to materially and adversely affect the legality, validity, binding effect or enforceability of this Agreement.

(f) *No Additional Governmental Authorization.* Except for the filing of the Loan with the Colombian Central Bank (obligation which will be complied by the Borrower prior to the disbursement date), no approval, consent, exemption, authorization, registration or other action by, or notice to, or filing with, any Colombian authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, the Borrower of this Agreement.

6

(g) *No default.* No default or Event of Default exists or would result from the incurring of any obligations by the Borrower. As of the Closing Date, the Borrower is not in default under or with respect to any contractual obligation in any respect which, individually with all such defaults, could reasonably be expected to have a Material Adverse Effect, or that would, if such default had occurred after the Closing Date, create an Event of Default.

(h) *Taxes.* The Borrower have filed all material tax returns and reports required to be filed under the laws of the Republic of Colombia, and have paid all material taxes, assessments, fees and other governmental charges levied or imposed upon its properties, income or assets otherwise due and payable, except those which are being contested in good faith by appropriate proceedings and for which adequate reserves have been provided in accordance with applicable accounting rules.

(i) *Commercial acts.* The Borrower's obligations under this Agreement and the Notes are commercial in nature and are subject to civil and commercial law, and the execution and performance of this Agreement and the Note constitute private and commercial acts and not governmental or public acts and the Borrower is subject to legal action in respect of the Loan.

## ARTICLE IV
## EVENTS OF DEFAULT

SECTION 4.01 Each of the following events is herein called an "Event of Default":

(a) *Non payment.* Any scheduled payment of the Principal or interest, fees or any other amount payable hereunder or under any Note is not paid in full when and where due and the Borrower fails to correct such action within five (5) Business Days;

(b) *Representation or warranty.* Any representation, warranty or certification made or deemed made herein (or in any modification or supplement hereto) by the Borrower, shall prove to have been inaccurate in any material respect as of the time made;

(c) *Observance of obligations.* The Borrower remains in default for a period of ten (10) days or more in the observance or performance of any of its other obligations under this Agreement (other than as provided in Sections (a) or (b) above);

(d) *Monetary Judgments.* One or more judgment(s), order(s), decree(s), award(s), settlement(s) and/or agreement(s) to settle (including any relating to any arbitration) is/are rendered against the Borrower in an amount exceeding USD$2,000,000 (or its equivalent in any other currency) in the aggregate and shall remain unsatisfied, undischarged and in effect for a period of sixty (60) or more calendar days without a stay of execution, unless the same is either: (i) adequately bonded or covered by insurance where the surety or

7

the insurer, as the case may be, has admitted liability in respect of such judgment(s), order(s), decree(s), award(s), settlement(s) and/or agreement(s) to settle or (ii) is being contested by appropriate proceedings properly instituted and diligently conducted and, in either case, such process is not being executed against any property of the Borrower;

(e) *Non-monetary Judgments*. Any non-monetary judgment, order, decree, award, settlement or agreement to settle (including any relating to any arbitration) is rendered against or agreed by the Borrower that (in the aggregate) has had or could reasonably be expected to have a material adverse effect, and a stay of execution thereof shall not be obtained within forty-five (45) days from the date of entry or agreement thereof;

(f) *Loss of property*. Any governmental authority having jurisdiction with respect thereto shall condemn, nationalize, seize or otherwise expropriate any substantial portion of the property or the capital stock of the Borrower and such action is not reversed within a period of sixty (60) days;

(g) *Loss of Licenses or permits*. Any governmental or other authorization, consent, license, permit, concession, approval (including any foreign exchange approval) or authorization that is necessary or appropriate under Colombian applicable laws for the execution, delivery or performance by the Borrower of any material obligation hereunder, in order for this Agreement to be valid, enforceable and admissible in evidence shall not be obtained or shall be withdrawn or shall cease to be in full force and effect or shall be modified in a manner that, in each case, could reasonably be expected to have a material adverse effect; and

(h) *Governmental decisions*. Any restriction or requirement not in effect on the date of this Agreement is imposed, whether by legislative enactment, decree, regulation, order or otherwise that limits the availability or the transfer of foreign exchange by the Borrower in a manner that would reasonably be expected to materially adversely affect the payment of the Borrower's obligations hereunder, or

(i) *Change of Control*. A Change of Control shall occur that has not been consented to by the Lender.

If any Event of Default has occurred and is continuing, the Loan, together with accrued interest thereon and any fees and all other obligations accrued hereunder and under the Note shall immediately become due and payable.

ARTICLE V
OBLIGATIONS OF BORROWER

8

SECTION 5.01 So long as the Loan is unpaid or unsatisfied, unless the Lender waives compliance in writing:

(a) *Financial Statements.* The Borrower shall deliver to the Lender, in form and detail satisfactory to the Lender, as soon as available, but not later than sixty (60) calendar days after the end of each December 31st of each year, a copy of the audited financial statements of the Borrower as at the end of such fiscal year.

(b) *Notices.* The Borrower shall notify the Lender promptly upon becoming aware thereof: (i) of the occurrence of any Event of Default; and (ii) of any event that has had or could reasonably be expected to have a Material Adverse Effect, including (a) breach or non-performance of, or any default under, a contractual obligation of the Borrower; (ii) any litigation, investigation or other proceeding between the Borrower and any authority or third party; (iii) the commencement of, or any material development in, any litigation or proceeding affecting the Borrower. Each notice under this Section 5.01 (b) shall be accompanied by a written statement by the legal representative of the Borrower setting forth details of the occurrence referred to therein, and stating what action the Borrower proposes to take with respect thereto and at what time.

(c) *Preservation of Corporate Existence.* The Borrower shall: (i) preserve and maintain in full force and effect its corporate existence and good standing under the laws of the Republic of Colombia; and (ii) preserve and maintain in full force and effect all governmental rights, privileges, qualifications, permits and licenses necessary or desirable in the normal conduct of its business.

(d) *Compliance with Laws.* The Borrower shall comply in all material respects with all applicable requirements of Law of any authority having jurisdiction over them or their business except where noncompliance therewith could not reasonably be expected to have a Material Adverse Effect.

(e) *Inspection of Property and Books and Records.* The Borrower shall maintain proper books of record and account, in which full, true and correct entries in conformity with applicable accounting regulation consistently applied shall be made of all financial transactions and matters involving their assets and business. The Borrower shall permit representatives of the Lender to visit and inspect any of their properties, to examine their respective corporate or trust, financial and operating records, and to discuss their affairs, finances and accounts with their respective directors, officers, and independent public accountants, all at the expense of the Borrower and at such reasonable times during normal business hours and as often as may be reasonably desired, upon reasonable advance notice to the Borrower.

# ARTICLE VI
## MISCELLANEOUS

SECTION 6.01 *Confidentiality*. Under no circumstance, any information regarding the transactions contemplated herein shall be made available to any person, regulatory entity or to the public by Lender or Borrower, without the prior written consent of the Lender or Borrower, as the case may be. The Lender agrees that it will keep at all times the confidential information related and provided to them by Borrower, unless there is a request to disclose such information by an authority or unless disclosure is required by law or financial reporting purposes. In this case, it shall notify the Borrower before the disclosure indicating the mandatory nature of it.

SECTION 6.02 *Amendments*. Any amendment to this Agreement shall be made in writing prior mutual agreement between the Parties.

SECTION 6.03 *Assignment*. (a) The Borrower may assign its rights and obligations under this Agreement with prior notification to the Lender.

(b)     The Lender may at any time assign this Agreement to a third party with prior written the consent by the Borrower, in which case written notice of such assignment, together with payment instructions, addresses and related information with respect to the assignee, shall have been given to the Borrower by the Lender and the assignee.

SECTION 6.04 *Notices*. All notices and communications provided for herein shall be in writing and shall be deemed to have been duly notified on the date of delivery, if delivered personally, by courier or by telecopy, receipt confirmed, or seven Business Days after mailing, if sent by registered or certified mail, return receipt requested, postage prepaid, to the party to whom it is directed at the following address (or at such other address as any Party hereto shall hereafter specify by notice in writing to the other Parties hereto):

If to Lender:
Global Securities Trade Finance

Miami, Florida, 33131
U.S.A.
Tel:
Fax:
Email: _____@gsadvisors.net

If to Borrower, at the following address:

10

GSM Colombia SAS

Bogotá D.C., Colombia
Tel.
Email:            @gmail.com

SECTION 6.05 *Applicable law and Choice of Forum.* This Agreement shall be construed in accordance with the laws of the Republic of Colombia.

In case of any dispute in connection with this Agreement, other than any dispute that may be resolved through an executive judicial proceeding (*"proceso ejecutivo"*), such dispute shall be settled by one (1) arbitrator appointed jointly by the Parties, who shall act in accordance with the rules of the Conciliation and Arbitration Center of the Chamber of Commerce of Bogotá D.C. (hereinafter the "C.C.B."). If the Parties fail to reach an agreement and the arbitrator is not appointed for any reason whatsoever within twenty (20) days after the date on which a dispute was notified in writing from one party to the other, any one of the parties may request the C.C.B. to make such appointment. The place of arbitration shall be Bogotá D.C., Colombia, and the arbitrators shall decide based on law.

SECTION 6.06. *No Waiver; Cumulative Remedies.* No failure to exercise and no delay in exercising, on the part of the Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

SECTION 6.07. *Costs and Expenses.* The Borrower shall pay or reimburse the Lender within five (5) Business Days after demand for all reasonable costs and expenses (including attorney costs) incurred by Lender in connection with the enforcement, attempted enforcement, or preservation of any rights or remedies under this Agreement or in any other agreement or document in connection thereof during the existence of an Event of Default or after acceleration of the Loan.

SECTION 6.08. *Indemnity.* Whether or not the transactions contemplated hereby are consummated, the Borrower shall indemnify and hold the Lender and each of their respective officers, directors, employees, counsel, agents and attorneys-in fact (each, an "Indemnified Person") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, charges, expenses and disbursements (including the fees and disbursements of counsel to the Lenders) of any kind or nature whatsoever which may at any time (including at any time following repayment of the Loan) be imposed on, incurred by or asserted against any such person in any way relating to or arising out of this Agreement or any document contemplated by or referred to herein, or the transactions contemplated hereby, or any action taken or omitted by any such person under or in connection with any of the foregoing, including with respect to any investigation, litigation or proceeding (including any insolvency proceeding or appellate proceeding) related to or arising out of this Agreement or the Loan or the use of the proceeds thereof,

11

whether or not any Indemnified Person is a party thereto; provided, however, that the Borrower shall have no obligation hereunder to any Indemnified Person with respect to indemnified liabilities resulting from the gross negligence or willful misconduct of any Indemnified Person. The agreements in this Section 6.08 shall survive payment of the Loan.

SECTION 6.09. *Severability*. The illegality or unenforceability of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

SECTION 6.10. *Schedules:*

Schedule 1-. Form of Notes to be granted by the Borrower.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

GSM Colombia SAS as Borrower

By: _____
Legal Representative


Global Securities Trade Finance, as Lender


By: _____
Gustavo Adolfo Hernandez F
Director

12

Schedule 1

**PAGARE No.**
**POR:** US$ 2.000.000
**VENCIMIENTO FINAL:** agosto 31 de 2017
**FECHA DE DESEMBOLSO:** agosto 31 de 2016

GSM Colombia SAS una compañía legalmente constituida de conformidad con las leyes de la República de Colombia, representada legalmente por Alvaro Jose Gallo, mayor de edad, identificado como aparece más adelante y tal y como se establece en el certificado de existencia y representación legal de la compañía expedido por la Cámara de Comercio de Bogota(en adelante el "Deudor"), en su calidad de deudor, declara:

**PRIMERO:** Que el Deudor ha recibido a título de mutuo oneroso de Global Securities Trade Finance, entidad debidamente constituida y existente de conformidad con las leyes de las Islas Cayman (en adelante el "Acreedor") la suma de dos millones de Dólares de los Estados Unidos de América (USD$2.000.000.oo), imputables al crédito al que se refiere el contrato de crédito con fecha de Agosto 31 de 2016, celebrado entre el Deudor y el Acreedor (en adelante el "Contrato de Crédito").

**SEGUNDO:** Que el Deudor pagará incondicionalmente a favor del Acreedor o a su orden la suma de dos millones de Dólares de los Estados Unidos de América (USD$2.000.000.oo), por concepto de capital, en un plazo de doce (11) meses contados a partir del septiembre 1 de 2016 es decir, el día 31 de Agostode 2017. La suma entregada en mutuo será pagada en una sola cuota en la fecha antes señalada.

**TERCERO:** Durante el plazo total del presente pagaré, el Deudor reconocerá y pagará, sobre el monto del capital adeudado, intereses remuneratorios a la tasa del doce por ciento (12%) efectivo anual. Los intereses serán pagaderos al vencimiento.

**CUARTO:** Si el pago de las sumas adeudadas bajo el presente pagaré no se efectuaren en las fechas previstas para el efecto, se causarán diariamente y se pagarán intereses de mora a una tasa equivalente a una y media veces el interés remuneratorio establecido en el numeral tercero anterior. Los intereses moratorios aquí mencionados se causarán y pagarán por el tiempo que dure la mora. La tolerancia del Acreedor para recibir el pago de intereses y/o de capital con atraso, no implicará prórroga ni novación de las obligaciones incorporadas en este pagaré. El Deudor pagará también, en caso de cobro extrajudicial o judicial del crédito, los gastos que demande la cobranza incluyendo los honorarios de abogados.

**QUINTO:** Los pagos que se efectúen al Acreedor para atender las obligaciones derivadas del presente pagaré, se aplicarán en el siguiente orden: impuestos, comisiones, gastos y costas judiciales y de recaudo o cobranza, si los hubiere, intereses

13

moratorios si los hubiere, intereses remuneratorios y por último a amortizaciones de capital.

**SEXTO**: El Deudor faculta al Acreedor para declarar vencido el plazo y exigir el pago inmediato de este título valor en caso de mora en el pago de cualesquiera sumas adeudadas bajo el presente pagaré, así como ante la ocurrencia de cualquier evento de incumplimiento, conforme con los términos y condiciones previstos en el Contrato de Crédito.

**SÉPTIMO:** Las obligaciones asumidas por el Deudor de acuerdo al Contrato de Crédito se hacen extensivas a cualquier novación o extensión de la fecha de vencimiento que otorgue el Acreedor, si es que hubiere. En estos periodos la obligación de pago del Deudor permanecerá sin modificación.

**OCTAVO:** El Deudor acepta incondicionalmente todo endoso o cesión que el Acreedor haga del presente Pagaré, sin que para su efectividad sean necesarias nuevas autorizaciones o aceptaciones por parte del Deudor.

**NOVENO:** Autorizamos que el pago total o parcial, tanto de los intereses como del capital de este título, se hagan constar en registros sistematizados o manuales establecidos por el Acreedor para el efecto.

**DÉCIMO:** Este pagaré se regirá por las leyes de la República de Colombia.

De conformidad con lo anterior, este pagaré se firma en la ciudad de Bogotá D.C., el día 31 de Agosto de 2016.

GSM Colombia SAS
Representante Legal

14